IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERPRISES, INC., a Utah corporation; GARTH GREEN, an individual; and MICHAEL GREEN, an individual,<br><br>            Plaintiffs,<br><br>v.<br><br>RANDALL HARWARD, an individual; RICHARD HARWARD, an individual; HARWARD IRRIGATION SYSTEMS, INC., a Utah corporation; GRASS VALLEY HOLDINGS, L.P.; RICHARD N. REESE, an individual; STANDARD PLUMBING SUPPLY COMPANY, INC., a Utah corporation; DOES 1-10; and ROE CORPORATIONS 1-X;<br><br>            Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [55] MOTION FOR PARTIAL SUMMARY JUDGMENT;**<br><br>**FINDING MOOT [58] MOTION UNDER RULE 56(D);**<br><br>**AND**<br><br>**FINDING MOOT  [60] AND [136] MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:15-cv-00556-DN<br><br>District Judge David Nuffer |

Plaintiffs Garth O. Green Enterprises d/b/a Southwest Plumbing Supply Company; Garth Green; and Michael Green (collectively "Southwest") assert three causes of action against Defendants Richard Reese and Standard Plumbing Supply Company, Inc. (collectively "Standard Plumbing"):

- "Intentional Interference with Performance of Contract against Richard Reese and Standard" (Sixth Cause of Action)
- "Intentional Interference with Prospective Economic Relations against Richard Reese and Standard" (Seventh Cause of Action)
- "Unfair Competition against Richard Reese, Standard, Harward Irrigation, Grass Valley, Randall Harward, and Richard Harward" (Eighth Cause of Action).[1]

---

[1] Amended Complaint at 26-30, ¶¶ 155-174 (Sixth through Eighth Causes of Action), docket no. 48, filed Apr. 29, 2016 (filed in state court Sep. 8, 2014).

Standard Plumbing moved for summary judgment on each of these causes of action ("55 Motion").[2] This motion is based on arguments that Southwest lacks evidence to support Southwest's claims for intentional interference and unfair competition. Southwest opposed the 55 Motion ("55 Opposition").[3] Standard Plumbing filed a reply in support of the 55 Motion ("55 Reply").[4]

Standard Plumbing also filed a separate motion renewing its motion for summary judgment with respect to Southwest's Sixth and Seventh Causes of Action for Intentional Interference ("60 Motion").[5] This motion is based on a Utah Supreme Court case, *Eldridge v. Johndrow*,[6] which held that improper means must be established to support a claim of intentional interference. Southwest opposed the 60 Motion ("60 Opposition").[7] Standard Plumbing filed a reply in support of the 60 Motion ("60 Reply").[8]

After this case was removed to federal court, Standard Plumbing also filed a motion for summary judgment on Southwest's Eighth Cause of Action for Unfair Competition ("136 Motion").[9] This motion was based on waiver. Southwest opposed the 136 Motion ("136

---

[2] Motion for Summary Judgment ("55 Motion"), docket no. 55, filed Apr. 29, 2016 (filed in state court Oct. 2, 2014).

[3] Memorandum in Opposition to Motion for Summary Judgment ("55 Opposition"), docket no. 55-2, filed Apr. 29, 2016 (filed in state court Oct. 30, 2014).

[4] Reply Memorandum in Support of Motion for Summary Judgment ("55 Reply"), docket no. 55-3, filed Apr. 29, 2016 (filed in state court Nov. 6, 2014).

[5] Renewed Motion for Summary Judgment or, Alternatively, Motion to Reconsider ("60 Motion"), docket no. 60, filed Apr. 29, 2016 (filed in state court Feb. 18, 2015).

[6] *Eldridge v. Johndrow*, 345 P.3d 553 (Utah 2015).

[7] Plaintiffs' Opposition to Renewed Motion for Summary Judgment or, Alternatively, Motion to Reconsider ("60 Opposition"), docket no. 60-2, filed Apr. 29, 2016 (filed in state court Mar. 4, 2015).

[8] Reply Memorandum in Support of Renewed Motion for Summary Judgment or, Alternatively, Motion to Reconsider ("60 Reply"), docket no. 60-3, filed Apr. 29, 2016 (filed in state court Mar. 11, 2015).

[9] Standard Plumbing Supply Company, Inc. and Richard N. Reese's Alternative Motion for Partial Summary Judgment and Memorandum in Support thereof ("136 Motion"), docket no. 136, filed Sep. 30, 2016.

Opposition").[10] Standard Plumbing filed a reply in support of the 136 Motion ("136 Reply").[11] A sur-reply was filed by Southwest ("136 Sur-Reply").[12]

For the reasons below, the 55 Motion is construed as a motion to dismiss and is GRANTED. The 60 Motion and 136 Motion are MOOT. And the 58 Motion, in which Standard sought to defer the 55 Motion for necessary discovery, is also MOOT since the 55 Motion is construed as a motion to dismiss.

### 55 MOTION IS CONSTRUED AS MOTION TO DISMISS UNDER RULE 12

One of the issues raised in the 55 Opposition is whether the 55 Motion was filed under Rule 12 or Rule 56 of the Utah Rules of Civil Procedure.[13] The 55 Motion is titled "Motion for Summary Judgment" and cites Rules 12(b)(6) and 56.[14] It also attaches affidavits and deposition transcripts. Rule 12(d) provides that if matters outside the pleadings are presented "and not excluded by the court," the motion "must be treated as one for summary judgment under Rule 56."[15]

It appears that Standard Plumbing's counsel intended the motion to be considered as a Rule 12 motion, and has been using that argument to avoid additional discovery. In an email exchange between counsel, Standard Plumbing's attorney said that the motion was "filed under

---

[10] Opposition Memorandum to Defendants Standard Plumbing Supply Company, Inc. and Richard N. Reese's Alternative Motion for Partial Summary Judgment and Memorandum in Support Thereof ("136 Opposition"), docket no. 140, filed Oct. 31, 2016.

[11] Standard Plumbing Supply Company, Inc. and Richard N. Reese's Reply Memorandum in Further Support of Their Alternative Motion for Partial Summary Judgment ("136 Reply"), docket no. 142, filed Nov. 17, 2016.

[12] Sur-Reply Memorandum in Opposition to Defendants Standard Plumbing Supply Company, Inc. and Richard N. Reese's Alternative Motion for Partial Summary Judgment ("136 Sur-Reply"), docket no. 149, filed Dec. 14, 2016; *see* Order Granting in Part and Denying in Part Ex Parte Motion to File Sur-Reply Memorandum to Defendants Standard Plumbing Supply Company, Inc. and Richard N. Reese's Reply Memorandum in Support of Their Alternative Motion for Partial Summary Judgment, docket no. 147, entered Nov. 30, 2016 (allowing sur-reply).

[13] 55 Opposition at i (citing Utah Rules of Civil Procedure as operative rules at time of filing).

[14] 55 Motion at 2 ("This Motion is made pursuant to Utah Rules of Civil Procedure 12(b)(6) and 56.").

[15] Fed. R. Civ. P. 12(d).

Rule 12" and would therefore "oppose any attempts at discovery of the Standard defendants until the Rule 12 motion is decided.[16] Accordingly, the 55 Motion is construed as a Rule 12 motion to dismiss and the material outside the pleadings is excluded from consideration.[17] As Southwest's 55 Opposition points out, "the submission of documents outside the pleadings by itself is not a basis for conversion to summary judgment; to effect a rule 12(b) conversion, the court must have relied on those documents for its decision."[18] Therefore, because of the problems associated with considering the 55 Motion as a summary judgment motion, and the lack of developed undisputed facts, the 55 Motion will be construed as a motion to dismiss, assuming all facts in the Amended Complaint as true.[19]

## 58 MOTION IS MOOT

Southwest has also filed a motion under Rule 56(d)[20] ("58 Motion") asking that the 55 Motion be denied or deferred until necessary discovery can be completed.[21] Southwest argues it has not had an adequate opportunity to engage in discovery in order to properly respond to the 55 Motion. Standard Plumbing has allegedly rebuffed efforts for additional discovery by taking the

---

[16] Emails from James Burton, attorney for Standard Plumbing, to Marcus Mumford, attorney for Southwest (Oct. 27, 2014, 6:54 p.m. and Oct. 27, 2014, 6:41 p.m.) ("Oct. 27, 2014 Emails"), Ex. 1 to 55 Opposition, docket no. 55-2, filed Apr. 29, 2016 (filed in state court Oct. 30, 2014).

[17] Motions for summary judgment may be filed in the early stages of litigation, Fed. R. Civ. P. 56(b) ("[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery."), but one of the requirements for summary judgment is that there are no disputed facts. Here, there are significant disputes of fact, along with objectionable hearsay testimony. *E.g.*, 55 Motion ¶ 8 (offering hearsay statement from Randall Harward). Thus, Standard Plumbing has not established undisputed material facts. Standard Plumbing's early motion for summary judgment, then, is subject to construal as a motion to dismiss. *See Clements v. Sanofi-Aventis US, Inc.*, 111 F.Supp.3d 586, 591, 595 (D.N.J. June 11, 2015) (treating early motion for summary judgment filed in state court as motion to dismiss in federal court); *Dolan v. Nicoll*, 2005 WL 1657029 at *1 (D.N.J. July 13, 2005) ("Defendant [] filed a summary judgment motion, which this Court treats as a motion to dismiss.").

[18] 55 Opposition at iii (quoting *Oakwood Village LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1231-32 (Utah 2004)).

[19] Fed. R. Civ. P. 56(d); Utah R. Civ. P. 56(d).

[20] At the time Southwest filed its motion, this rule was numbered as Rule 56(f).

[21] Memorandum in Support of Plaintiffs' Rule 56(f) Motion to Refuse or Continue the Court's Ruling on the Standard Parties' Motion for Summary Judgment ("58 Motion") at 9, docket no. 58-1, filed Apr. 29, 2016 (filed in state court Oct. 28, 2014) ("Plaintiffs have not been afforded the opportunity to conduct discovery to which they are entitled . . . .").

position that the 55 Motion was filed under Rule 12 and is not required to engage in discovery until resolution of the motion.[22]

The 58 Motion is MOOT because the 55 Motion is construed as a motion to dismiss. Because matters outside the pleadings are not considered, discovery is unnecessary.

## MOTION TO DISMISS STANDARD

Defendants are entitled to dismissal under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim for which relief may be granted.[23] When considering a motion to dismiss for failure to state a claim, the thrust of all well-pleaded facts in the complaint is presumed, but a court need not consider conclusory allegations.[24] Nor are the complaint's legal conclusions and opinions accepted, even if couched as facts.[25]

Satisfying the basic pleading requirements of the federal rules "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[26] "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[27] "[N]aked assertions devoid of further factual enhancement,"[28] do not state a claim sufficiently to survive a motion to dismiss.

---

[22] Oct. 27, 2014 Emails.

[23] See *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[24] See *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[25] See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly* , 550 U.S. at 555).

[27] *Iqbal*, 556 U.S. at 678.

[28] *Id.*

## FACTUAL ALLEGATIONS

The Amended Complaint makes the following allegations, which are accepted as true:

As Sprinkler World, Harward Irrigation operated five irrigation supply stores in Utah.[29] They were located in (1) Springville, (2) Orem, (3) Lehi, (4) Sandy, and (5) Roosevelt.[30] Southwest also operates irrigation supply stores and has its principal place of business in Cedar City, Utah.[31]

In or about October 2012, Harward Irrigation and Southwest (through their principals) began negotiating a possible purchase by Southwest of certain assets of Harward Irrigation.[32] They discussed the possibility that Southwest would purchase all of the inventory of Harward Irrigation, certain personal property of Harward Irrigation, and certain intellectual property of Harward Irrigation.[33] Southwest would lease the five branch locations of Harward Irrigations[34] and continue to operate the five retail branches of Harward Irrigation in Springville, Orem, Lehi, Sandy, and Roosevelt.[35]

The parties continued to negotiate the purchase of the assets of Harward Irrigation and on December 24, 2012, Randall Harward communicated an offer to Southwest for the purchase of the Harward Irrigation assets.[36] Southwest declined the December 24, 2012 offer.[37]

---

[29] Amended Complaint ¶ 24.

[30] *Id.*

[31] *Id.* ¶ 25.

[32] *Id.* ¶ 26.

[33] *Id.* ¶ 27.

[34] *Id.* ¶ 28.

[35] *Id.* ¶ 27.

[36] *Id.* ¶ 44.

[37] *Id.* ¶ 45.

The parties continued to negotiate the purchase of the assets of Harward Irrigation and on December 26, 2012, Randall Harward communicated another offer to Southwest for the purchase of the Harward Assets.[38] Southwest declined the December 26, 2012 offer.[39]

On or about December 31, 2012, Southwest made a written final offer to purchase the assets of Harward Irrigation and sent the offer to Randall Harward via email.[40] The December 31, 2012 written offer indicated it was a "Final Offer" and stated that to accept, Harward would need to respond by January 2, 2013 with a "yes."[41] The December 31, 2012 "Final Offer" expressly included Harward Irrigation's trademarks.[42]

On January 2, at 12:38 p.m., Randall Harward, on behalf of Harward Irrigation and Grass Valley responded to the "Final Offer" of Southwest by email stating: "The answer is yes. We are looking forward to working with you."[43] Later on January 2, 2013, Richard Harward contacted Mike Green, the President of Southwest, to ensure that Mr. Green received the written acceptance email and to verbally communicate that the offer was accepted.[44]

The parties anticipated that the offer made by Southwest and accepted by Harward Irrigation would be formalized in a written agreement that each party would sign including closing documents such as assignments, the licensing agreement, and the leases.[45]

Southwest retained an attorney to reduce the terms of the "Final Offer" to an Asset Purchase Agreement[46] and delivered the written Asset Purchase Agreement, together with

---

[38] *Id.* ¶ 46.

[39] *Id.* ¶ 47.

[40] *Id.* ¶ 49.

[41] *Id.* ¶ 50.

[42] *Id.* ¶ 51.

[43] *Id.* ¶ 54.

[44] *Id.* ¶ 55.

[45] *Id.* ¶ 63.

closing documents to Harward Irrigation on January 7, 2013.[47] Harward Irrigation confirmed that they received the Asset Purchase Agreement and closing documents that same day.[48]

After reviewing the Asset Purchase Agreement together with leases, the licensing agreement, and other closing documents, Richard Harward called Mike Green late on January 7, 2013 and said that Harward Irrigation and its principals had been reviewing the documents and that there might be a few "little" changes, "nothing big, and nothing to be worried about."[49] On January 7 and 8, Harward Irrigation, Southwest, and their principals continued to work on details of the transaction.[50]

On or about January 8, 2013, Harward Irrigation made modifications to the Asset Purchase Agreement and requested additional time to collect and retain 100% of the collected amount from certain accounts receivable.[51] On January 8, 2013, Grass Valley asked for an increase to the lease amounts by 2%.[52] Southwest agreed to the increase, but stated that the transaction would have to close on January 9, 2013 for the agreement on increased rent to remain in force.[53] The parties agreed to meet in Springville, Utah on the morning of January 9 to close the transaction.[54]

---

[46] *Id.* ¶ 67.

[47] *Id.* ¶ 68.

[48] *Id.* ¶ 69.

[49] *Id.* ¶ 72.

[50] *Id.* ¶ 73.

[51] *Id.* ¶ 74.

[52] *Id.* ¶ 75.

[53] *Id.*

[54] *Id.* ¶ 77.

On the morning of January 9, Richard Harward told Southwest that another company had made an offer to purchase Harward Irrigation.[55] Richard Harward and Calvin Harward would not disclose who the other company was or how much the offer was for.[56] Richard Harward and Calvin Harward insisted that they would not continue with the transaction with Southwest until they had explored the other offer.[57] Based on Richard Harward's and Calvin Harward's explicit representations that Harward Irrigation and Grass Valley would not complete the transaction with Southwest, Southwest left the meeting and returned home.[58]

Prior to January 9, 2013, Richard Reese, as principal of Standard Plumbing, came to know that the Harwards, Harward Irrigation, and Grass Valley had accepted Southwest's offer and agreed to sell to Southwest, and with that knowledge, took actions to interfere with their agreement with Southwest and to induce the Harwards to breach that agreement and to enter into an agreement with Standard Plumbing.[59] The offer was made "for the purpose of inducing" Harward Irrigation and Grass Valley to breach their agreement with Southwest, to deprive Southwest of the benefits of their agreement with Harward Irrigation and Grass Valley, to keep

---

[55] *Id.* ¶ 93.

[56] *Id.* ¶¶ 97-98.

[57] *Id.* ¶ 104.

[58] *Id.* ¶ 105.

[59] *Id.* ¶ 111. Although this is allegation includes a conclusory characterization or inference about Standard Plumbing's purpose, it will be allowed and will be presumed as true. However, accepting this allegation as true does not change the outcome of this order because (a) the allegation only describes an alleged improper *purpose*, not improper means, and (b) taking "actions," without more specificity, does not indicate any improper means. "In the rough and tumble of the marketplace, competitors inevitably damage one another in the struggle for personal advantage. The law offers no remedy for these damages—even if intentional—because they are an inevitable by-product of competition." *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 307 (Utah 1982) (*Leigh Furniture* was overruled by *Eldridge*, but *Eldridge* upheld the concept that "if juries were allowed to find improper purposes too easily, it would result in tort liability for much legitimate 'competitive commercial activity.'" *Eldridge*, 345 P.3d at 555).

Southwest from extending its reach further into Standard's market share, and to harm the Greens and Southwest, who Richard Reese had long considered rivals in the industry.[60]

Based on their understanding of what the Harwards had expressed that they needed to pursue further negotiations with Richard Reese and Standard, and their knowledge concerning the contents of writings between the Harwards and Southwest, Richard Reese and Standard revised their offer and presented it on the morning of January 9, based further on their knowledge that Southwest expected to close their agreement with Harward Irrigation and Grass Valley before noon that day.[61]

Richard Reese and Standard revised and re-presented their offer and entered into further discussions with Harward Irrigation and Grass Valley on the morning of January 9, for the purpose of getting Harward Irrigation and Grass Valley to breach their agreement with Southwest before the meeting scheduled between Harward Irrigation, Grass Valley, and Southwest that morning.[62]

Richard Harward, Randall Harward, and Harward Irrigation and Grass Valley further encouraged the actions of Richard Reese and Standard by communicating excuses to draw out their interaction with Southwest, including but not limited to communicating pretextual excuses

---

[60] Amended Complaint ¶ 114. Although this is allegation includes a conclusory characterization or inference about Standard Plumbing's purpose, it will be allowed and will be presumed as true. However, accepting this allegation as true does not change the outcome of this order because (a) the allegation only describes an alleged improper *purpose*, not improper means, and (b) taking "actions," without more specificity, does not indicate any improper means. "In the rough and tumble of the marketplace, competitors inevitably damage one another in the struggle for personal advantage. The law offers no remedy for these damages—even if intentional—because they are an inevitable by-product of competition." *Leigh Furniture*, 657 P.2d at 307.

[61] Amended Complaint ¶ 117.

[62] *Id.* ¶ 118. Although this is allegation includes a conclusory characterization or inference about Standard Plumbing's purpose, it will be allowed and will be presumed as true. However, accepting this allegation as true does not change the outcome of this order because (a) the allegation only describes an alleged improper *purpose*, not improper means, and (b) taking "actions," without more specificity, does not indicate any improper means. "In the rough and tumble of the marketplace, competitors inevitably damage one another in the struggle for personal advantage. The law offers no remedy for these damages—even if intentional—because they are an inevitable by-product of competition." *Leigh Furniture*, 657 P.2d at 307.

concerning the time needed to review the papers prepared by Southwest with their attorney and the unavailability of their attorney in that time period, which were false.[63]

Thereafter, Richard Reese reached out to taunt Garth Green and Mike Green by telling them they were "too late" and by taunting them after the deposition of Richard Reese by asking "did I say anything wrong?" which Southwest interpreted as a statement showing unlawful and/or fraudulent intent to deprive Southwest of the benefit of its transaction with Harward Irrigation and Grass Valley.[64]

## DISCUSSION

The Amended Complaint asserts three causes of action against Standard Plumbing.[65] The first is Intentional Interference with Performance of Contract, the second is Intentional Interference with Prospective Economic Relations, and the third is Unfair Competition.[66] The intentional interference claims will be discussed first, followed by discussion of the unfair competition claim.

### Intentional Interference

In *St. Benedict's Development Company v. St. Benedict's Hospital*,[67] the Utah Supreme Court combined the two intentional interference claims noted above into a single tort of "intentional interference with economic relations."[68] This cause of action "protects both existing contractual relationships and prospective relationships of economic advantage not yet reduced to

---

[63] Amended Complaint ¶ 120.

[64] *Id.* ¶ 122.

[65] *Id.* at 26-30, ¶¶ 155-174 (Sixth through Eighth Causes of Action).

[66] *Id.*

[67] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194 (Utah 1991).

[68] *Id.* at 200.

a formal contract."[69] Thus, the intentional interference claims that Southwest asserts against Standard Plumbing will be analyzed as a single claim for intentional interference with economic relations.

To prevail on a claim for intentional interference with economic relations, "[a] plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations; (2) . . . by improper means; (3) causing injury to the plaintiff."[70] A recent Utah Supreme Court case eliminated an "improper purpose" alternative in the second element.[71] Thus, to establish its claim for intentional interference with economic relations, Southwest must show that: (1) Standard Plumbing intentionally interfered with Southwest's existing or potential economic relations; (2) by improper means; (3) causing injury to Southwest.

The tort of intentional interference with economic relations does not bar ordinary market competition. "In the rough and tumble of the marketplace, competitors inevitably damage one another in the struggle for personal advantage. The law offers no remedy for these damages—even if intentional—because they are an inevitable by-product of competition."[72] Thus, to be actionable, the interference must be "wrongful by some measure beyond the fact of the interference itself."[73] "Improper means include 'violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.'"[74] Thus,

---

[69] *Id.*

[70] *Id.*

[71] *Eldridge*, 345 P.3d at 555; *see* 60 Motion at 2 ("The basis for Standard Plumbing's renewed Motion for Summary Judgment is the recent Utah Supreme Court opinion in *Eldridge v. Johndrow*, . . . wherein the Utah Supreme Court abandoned the 'improper purpose' prong of a claim for intentional interference liability.").

[72] *Leigh Furniture*, 657 P.2d at 307.

[73] *Mumford v. ITT Commercial Fin. Corp.*, 858 P.2d 1041, 1043 (Utah App. 1993).

[74] *St. Benedict's*, 811 P.2d at 201.

a party asserting intentional interference must show more than merely a breach of contract; the party must show tortious, independently actionable conduct.[75]

Southwest has failed to allege any improper means. Instead, Southwest has stated that Richard Reese and Standard Plumbing made their offer to Harward Irrigation "for the purpose of inducing" Harward Irrigation and Grass Valley to breach their agreement with Southwest, to deprive Southwest of the benefits of their agreement with Harward Irrigation and Grass Valley, to keep Southwest from extending its reach further into Standard's market share, and to harm the Greens and Southwest, who Richard Reese had long considered rivals in the industry.[76] These are not improper means. "The law offers no remedy for these damages—even if intentional—because they are an inevitable by-product of competition."[77]

Southwest also asserts that, with notice of the Harward-Southwest agreement, Richard Reese and Standard revised their offer and presented it on the morning of January 9, based further on their knowledge that Southwest expected to close their agreement with Harward Irrigation and Grass Valley before noon that day.[78] Again, this is not improper means because competition is acceptable in the marketplace.

Southwest further alleges that Richard Harward, Randall Harward, and Harward Irrigation and Grass Valley further encouraged the actions of Richard Reese and Standard by communicating excuses to draw out their interaction with Southwest, including but not limited to communicating pretextual excuses concerning the time needed to review the papers prepared by Southwest with their attorney and the unavailability of their attorney in that time period, which

---

[75] *DP-Tek, Inc. v. AT&T Glob. Info. Sols. Co.*, 100 F.3d 828, 835 (10th Cir. 1996).

[76] Amended Complaint ¶ 114.

[77] *Leigh Furniture*, 657 P.2d at 307.

[78] Amended Complaint ¶ 117.

were false.[79] But this describes the conduct of *the Harwards*, not of Richard Reese or Standard Plumbing. There is no allegation that Richard Reese or Standard Plumbing caused the Harwards to engage in misrepresentation or engaged in misrepresentation themselves. Thus, these allegations do not state improper means as to Standard Plumbing.

Finally, Southwest alleges that Richard Reese reached out to "taunt" Garth Green and Mike Green by telling them they were "too late" to close on the deal.[80] Richard Reese also allegedly "taunted" the Greens by asking "did I say anything wrong?" after a deposition "with an intonation that further indicated his unlawful and/or fraudulent intent to deprive Southwest of the benefit of its transaction with Harward Irrigation and Grass Valley."[81] The "indication of an intonation" is a conclusion or inference that can be disregarded.[82] But even if the statement is considered to have been made, mproper means are not shown. "Improper means include 'violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.'"[83] Telling a competitor that they were "too late" and making a better offer or asking "did I say anything wrong?" does not rise to the level of violence, threats, intimidation, deceit, misrepresentation, or other behavior that could be considered improper.

Therefore, even accepting all of Southwest's allegations as true, Southwest has failed to state a claim for intentional interference with economic relations because it has not alleged any

---

[79] Amended Complaint ¶ 120.

[80] *Id.* ¶ 122.

[81] *Id.*

[82] *See Twombly*, 550 U.S. at 555; *see also Brown*, 63 F.3d at 972 (explaining that a complaint's legal conclusions and opinions need not be accepted, whether or not they are couched as facts).

[83] *St. Benedict's*, 811 P.2d at 201.

improper means. Southwest therefore cannot establish the second element of a claim for intentional interference and the intentional interference claims will be dismissed.

**Unfair Competition**

Southwest also alleges that Standard Plumbing "engaged in unlawful, unfair, and/or fraudulent business acts and practices."[84] Specifically, Southwest alleges that Standard Plumbing is "infringing on those trademarks of Harward Irrigation that belong to Southwest."[85] It is unclear whether Southwest advances a common law claim for unfair competition or a statutory claim for unfair competition. Regardless, Southwest's unfair competition claim fails.

A common law claim for unfair competition includes such actions as deceptively naming a new business to deceive customers and take advantage of a competitor's established good will,[86] copying unique appearances of an established business,[87] or deceptively packaging a product to confuse the consumer about its source.[88]

A statutory claim for unfair competition in Utah is guided by Utah Code § 13-51-102(4), which provides:

> (4)(a) Except as provided in Subsection (4)(b), "unfair competition" means an intentional business act or practice that:
>> (i)     (A) is unlawful, unfair, or fraudulent; *and*
>>          (B) leads to a material diminution in value of intellectual property; *and*
>> (ii) is one of the following:
>>          (A) cyber-terrorism;
>>          (B) infringement of a patent, trademark, or trade name;
>>          (C) a software license violation; or
>>          (D) predatory hiring practices.[89]

---

[84] Amended Complaint ¶ 168.

[85] *Id.* ¶ 170.

[86] *Budget Sys., Inc. v. Budget Loan & Fin. Plan*, 361 P.2d 512, 515 (Utah 1961).

[87] *Allen's Prods. Co. v. Glover*, 414 P.2d 93, 95-96 (Utah 1966).

[88] *Hi-Land Dairyman's Ass'n v. Cloverleaf Dairy*, 151 P.2d 710, 717 (Utah 1944).

[89] Utah Code § 13-51-102(4) (emphasis added).

Southwest alleges that "[p]ursuant to the terms of Southwest's agreement with Harward Irrigation and Grass Valley, Southwest obtained exclusive rights, among other things, to Harward Irrigation's trademarks.[90] However, Southwest openly acknowledges that the agreement was never completed.[91] Southwest also acknowledges that Harward Irrigation and Grass Valley entered into an agreement with Standard Plumbing instead.[92] Thus, Southwest's allegations are not logically consistent. It is not possible for Southwest to have obtained Harward Irrigation's trademarks without completing the proposed transaction.

The Tenth Circuit held that a party does not obtain a protectable interest in a trademark by simply having a contract that provides the possibility of obtaining trademark rights. In *Derma Pen, LLC v. 4EverYoung Ltd.*,[93] two companies—Derma Pen and 4EverYoung—entered into an agreement "so that Derma Pen, LLC and 4EverYoung could sell a micro-needling device." "The agreement provided that Derma Pen, LLC would sell the device in the United States; 4EverYoung would sell the device throughout the rest of the world." Derma Pen held the trademark rights in the United States and sold the device there. The agreement stated that if the agreement were terminated, Derma Pen would offer to sell its trademark rights to 4EverYoung.

Derma Pen eventually terminated the agreement and 4EverYoung attempted to buy Derma Pen's trademark rights. However, "no money ever exchanged hands" and 4EverYoung's attempt to buy was never completed. Nevertheless, "4EverYoung started using the trademark to sell the micro-needling device in the United States."  Derma Pen sued 4EverYoung for

---

[90] Amended Complaint ¶ 169.

[91] *Id.* ¶ 105 ("Based on Richard Harward's and Calvin Harward's explicit representations that Harward Irrigation and Grass Valley would not complete the transaction with Southwest, Southwest left the meeting and returned home.")

[92] *Id.* ¶ 111.

[93] *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117 (10th Cir. 2014).

trademark infringement and unfair competition, and moved for a preliminary injunction. The district court denied the preliminary injunction, finding that Derma Pen's trademark rights were receding in light of the parties' agreement and other developments in the case. But on appeal, the Tenth Circuit disagreed with the district court and reversed the district court's ruling on the preliminary injunction motion. The Tenth Circuit focused on the fact that Derma Pen currently owned the trademark and "no sale has taken place." "Thus," the Tenth Circuit held, "Derma Pen, LLC likely remains the owner of the trademark and the district court erred in predicting the outcome."[94]

The Tenth Circuit rejected 4EverYoung's argument that it had obtained a right to use the trademark by virtue of having an agreement that merely contemplated transfer of the trademark. The determining factor was that the transaction was never completed. "Until a sale takes place," the Tenth Circuit held, "Derma Pen, LLC likely remains the contractual owner of the U.S. trademark rights."[95] 4EverYoung also argued that Derma Pen was to blame for the sale falling through, and therefore, 4EverYoung should have rights in the trademark. The Tenth Circuit rejected this argument as well, and held that Derma Pen "has not lost its property interest in the trademark."[96]

The same result is reached here. Southwest, like 4EverYoung, believes that it obtained a protectable interest in the Sprinkler World trademarks even though the sale of Sprinkler World was not completed. Southwest is incorrect. "Until a sale takes place," Harward Irrigation remains the owner of the Sprinkler World trademark rights. Southwest does not dispute that the sale failed to close. Thus, the trademark rights never transferred to Southwest.

---

[94] *Id.* at 1119.

[95] *Id.* at 1121.

[96] *Id.*

Because Southwest never obtained trademark rights, it does not have a claim for trademark infringement against Standard Plumbing. Without a valid claim to the trademark rights at issue, Southwest cannot sustain an unfair competition claim. "Trademark infringement is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together as an action brought under 15 U.S.C. § 1125(a)(1)(B) . . . ."[97] This is true even if a plaintiff raises unfair competition under state law.[98] Because one of the essential elements of a trademark infringement claim is ownership,[99] and Southwest cannot establish ownership, its unfair competition claim fails under trademark infringement analysis.

Moreover, Southwest's unfair competition claim fails as a matter of law because the Amended Complaint does not allege with any specificity how Southwest's established good will has been harmed,[100] how unique appearances of its established business have been copied,[101] how any product of Standard Plumbing has been deceptively packaged to confuse the consumer about its source,[102] or any other grounds. And there are absolutely no allegations that Standard Plumbing engaged in the alternative statutory acts of unfair competition: cyber-terrorism; a software license violation; or predatory hiring practices.[103] Therefore, Southwest has not stated a valid claim for unfair competition—either under common law or under Utah statute.

---

[97] *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (plaintiff must prove ownership of a protectable trademark to establish trademark infringement),

[98] *Id.* at 1049 (outlining claims, which included federal trademark infringement, federal unfair competition, and state unfair competition).

[99] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (explaining that one element of trademark infringement is a "protectable interest in the mark").

[100] *Budget Sys.*, 361 P.2d at 515.

[101] *Allen's Prods.*, 414 P.2d at 95-96.

[102] *Hi-Land*, 151 P.2d 710, 717.

[103] Utah Code § 13-51-102(4).

Southwest may argue that its Amended Complaint sufficiently states grounds other than trademark infringement to support its unfair competition claim. But it does not. The Amended Complaint merely contains conclusory statements that "the value of Southwest's trade name and reputation" has been diminished[104] and that Southwest has been kept from "obtaining a stronger market position in Standard's industry.[105] There is no explanation, other than Standard Plumbing's and Richard Reese's lawful competitive conduct. A complaint's legal conclusions and opinions are not accepted, whether or not they are couched as facts.[106]

## CONCLUSION

This order does not deal with any claim regarding breach of contract against Harward Irrigation. Rather, the issues addressed in this order relate *only* to *Standard Plumbing's* conduct. Even accepting all the allegations in the Amended Complaint as true, there is no valid claim for either intentional interference with economic relations or unfair competition against Standard Plumbing. Thus, the Amended Complaint should be dismissed.[107]

## NO AMENDMENT ALLOWED

Courts "should freely give leave when justice so requires."[108] "The purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."[109] However, amendment may be denied if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

---

[104] Amended Complaint ¶ 171.

[105] *Id.* ¶ 172.

[106] *See Twombly*, 550 U.S. at 555; *see also Brown*, 63 F.3d at 972.

[107] It is imperative to reiterate that materials outside Plaintiff's Amended Complaint were not considered in deciding the 55 Motion. Accordingly, construing the motion as a motion to dismiss is proper.

[108] Fed.R.Civ.P. 15(a)(2).

[109] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotation marks omitted).

the amendment, [or] futility of amendment."[110] Allowing Southwest to amend would be unduly prejudicial.[111]

In *Clements v. Sanofi-Aventis, U.S., Inc.*,[112] a federal district court allowed amendment after dismissal because it would be equitable. The case was procedurally similar to this one in that the plaintiff initially filed her complaint in state court and the case was subsequently removed to federal court. As here, the defendant in *Clements* filed a motion for summary judgment "very early in the case, when there had been only minimal discovery."[113] However, because the motion contained contentions that were directed at the sufficiency of the claim and whether plaintiff had stated a valid claim, the court construed the motion for summary judgment as a motion to dismiss. The court determined that "neither summary judgment nor a dismissal with prejudice would be procedurally fair" because "[w]hen [plaintiff] filed it, she was not reasonably on notice that she would be held to federal pleading standards."[114]

Here, however, Southwest *was* on notice that it would be held to federal pleading standards. This case was removed to federal court in August 2015, over a year ago. At that time, the federal rules of civil procedure applied.[115] A Scheduling Order was entered which allowed Southwest to amend its pleadings until September 15, 2016.[116] Southwest did not amend its Amended Complaint. Accordingly, Southwest's Amended Complaint stands as written because,

---

[110] *Id.*

[111] There is also a significant likelihood that amendment would be futile, but futility will not be analyzed to avoid analysis of materials outside the pleadings.

[112] *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F.Supp.3d 586 (D.N.J. 2015).

[113] *Id.* at 595.

[114] *Id.* at 591.

[115] Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); *Fed. Nat'l Mortg. Ass'n v. Milasinovich*, 161 F.Supp.3d 981, 1006-1011 (D.N.M. 2016) (discussing cases) (citing *Bruley v. Lincoln Property Co., N.C.*, 140 F.R.D. 452, 453 (D.Colo.1991) ("Once a case has been removed from state court, I must apply the Federal Rules of Civil Procedure and treat the case as though it were originally commenced here.").

[116] Scheduling Order at 4, docket no. 110, entered Aug. 9, 2016.

unlike the plaintiff in *Clement*, Southwest *was* on notice that it would be held to federal pleading standards. It would be unfair and inequitable to Standard Plumbing (and other defendants) to allow Southwest another opportunity to amend its Amended Complaint. This would force the defendants to defend a new set of claims and allegations after years in litigation. This is highly inequitable. Southwest will not be granted leave to amend its Amended Complaint with regard to these claims.

**ORDER**

IT IS HEREBY ORDERED that the 55 Motion[117] is construed as a motion to dismiss, and is GRANTED. The Sixth, Seventh, and Eighth Causes of Action listed in the Amended Complaint against Standard Plumbing are DISMISSED WITH PREJUDICE. Southwest is not granted leave to amend because the time to amend pleadings has passed.[118] Allowing Southwest to amend would be highly inequitable to Standard Plumbing and other defendants. Southwest was on notice for over a year that federal rules of civil procedure would apply, and it was also on notice that the law in Utah had changed for intentional interference claims. Nevertheless, Southwest decided not to amend its pleading, which alleges only improper purpose with respect to intentional interference and contains only conclusory allegations regarding unfair competition.

IT IS FURTHER ORDERED that the 58 Motion,[119] which is a motion made under Rule 56(d),[120] is MOOT since the 55 Motion is construed as a motion to dismiss. There is no need to address the 58 Motion.

---

[117] Motion for Summary Judgment ("55 Motion"), docket no. 55, filed Apr. 29, 2016 (filed in state court Oct. 2, 2014).

[118] Scheduling Order at 4 (providing September 15, 2016 deadline for amendment to pleadings).

[119] Memorandum in Support of Plaintiffs' Rule 56(f) Motion to Refuse or Continue the Court's Ruling on the Standard Parties' Motion for Summary Judgment ("58 Motion") at 9, docket no. 58-1, filed Apr. 29, 2016 (filed in state court Oct. 28, 2014)

[120] At the time the motion was drafted the rule was numbered as 56(f).

IT IS FURTHER ORDERED that the 60 Motion[121] is MOOT. The 60 Motion is an alternative to the 55 Motion. Because of the outcome of the 55 Motion, there is no need to address the 60 Motion.

IT IS FURTHER ORDERED that the 136 Motion[122] is MOOT. The 136 Motion is an alternative to the 55 Motion. Because of the outcome of the 55 Motion, there is no need to address the 136 Motion.

An order addressing sanctions[123] will be issued separately.

Dated December 27, 2016.

BY THE COURT:

David Nuffer
United States District Judge

---

[121] Renewed Motion for Summary Judgment or, Alternatively, Motion to Reconsider ("60 Motion"), docket no. 60, filed Apr. 29, 2016 (filed in state court Feb. 18, 2015).

[122] Standard Plumbing Supply Company, Inc. and Richard N. Reese's Alternative Motion for Partial Summary Judgment and Memorandum in Support thereof ("136 Motion"), docket no. 136, filed Sep. 30, 2016.

[123] Motion for Sanctions against Plaintiffs' Counsel and Plaintiffs ("URCP Rule 11 Sanctions Motion"), docket no. 57, filed Apr. 29, 2016 (filed in state court Oct. 27, 2014); Defendants Standard Plumbing Supply Company, Inc. and Richard N. Reese's Motion for FRCP 11 Sanctions against Plaintiffs' Counsel and Memorandum in Support Thereof ("FRCP Rule 11 Sanctions Motion"), docket no. 81, filed July 1, 2016.