IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERPRISES, INC., a Utah corporation; GARTH GREEN, an individual; and MICHAEL GREEN, an individual, <br><br> Plaintiffs, <br> v. <br><br> RANDALL HARWARD, an individual; RICHARD HARWARD, an individual; HARWARD IRRIGATION SYSTEMS, INC., a Utah corporation; GRASS VALLEY HOLDINGS, L.P.; RICHARD N. REESE, an individual; STANDARD PLUMBING SUPPLY COMPANY, INC., a Utah corporation; DOES 1-10; and ROE CORPORATIONS 1-X; <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [57] MOTION FOR SANCTIONS AND DENYING [81] MOTION FOR SANCTIONS** <br><br><br> Case No. 2:15-cv-00556-DN <br><br> District Judge David Nuffer |

Defendants Richard Reese and Standard Plumbing Supply Company, Inc. (collectively "Standard Plumbing") move for sanctions against Plaintiffs Garth O. Green Enterprises, Garth Green, Michael Green (collectively "Southwest") and Plaintiffs' counsel in two separate motions. The first motion is based on Utah Rule of Civil Procedure 11 ("Utah Rule 11") and was filed in state court ("57 Motion") before this case was removed to federal court.[1] The second motion is based on Federal Rule of Civil Procedure 11 ("Federal Rule 11") and was filed in federal court ("81 Motion").[2] Both Utah Rule 11 and Federal Rule 11 require, among other

---

[1] Motion for Sanctions Against Plaintiffs' Counsel and Plaintiffs, based on Utah Rule of Civil Procedure 11 ("57 Motion"), docket no. 57, filed Apr. 29, 2016 (filed in state court Oct. 27, 2014).

[2] Defendants Standard Plumbing Supply Company, Inc. and Richard N. Reese's Motino for FRCP 11 Sanctions Against Plaintiffs and Plaintiffs' Counsel and Memorandum in Support Thereof, based on Federal Rule of Civil Procedure 11 ("81 Motion"), docket no. 81, filed July 1, 2016.

things, that filings are warranted by existing law or the nonfrivolous extension, modification, or reversal of existing law, and are supported by factual evidence. Both rules allow a court to impose sanctions upon attorneys, law firms, or parties that have violated the rule. For the reasons below, the 57 Motion is GRANTED and the 81 Motion is DENIED.

## FACTUAL BACKGROUND

1.      Co-defendant Harward Irrigation Systems, Inc. ("Harward Irrigation") owned and operated a business called "Sprinkler World," which had five different business locations throughout Utah.[3]

2.      From October 2012 to January 2013, the Greens, on behalf of Southwest, negotiated with Harward Irrigation to buy Sprinkler World including its assets, equipment, inventory, and intellectual property, and to lease its five locations.[4]

3.      On December 31, 2012, the Greens sent a "Final Offer" to Harward Irrigation stating that Southwest intended to acquire the "full rights title and interest and any trademarks to Sprinkler World, Sprinkler.com, ChristmasWorld.com, SprinklerWorld.net, your AG Business, & your Turf business."[5]

4.      Harward Irrigation accepted the "Final Offer" on January 2, 2013.[6] However, subsequent communication between Harward and Southwest revealed different terms than those contained in the "Final Offer," and on the morning of January 9, the day the transaction was supposed to close, Richard Harward told the Greens that another company had made a better

---

[3] Opposition Memorandum to Defendants Standard Plumbing Supply Company, Inc. and Richard N. Reese's Motion for FRCP 11 Sanctions Against Plaintiffs and Plaintiffs' Counsel ("81 Opposition") at v-vi, ¶ 1, docket no. 99, filed Aug. 2, 2016.

[4] *Id.* at vi, ¶ 2.

[5] *Id.* at vi-vii, ¶ 3.

[6] *Id.* at vii, ¶ 4.

offer to purchase Harward Irrigation.[7] Richard Harward and Calvin Harward would not disclose who the other company was or how much the offer was for.[8] Richard Harward and Calvin Harward insisted that they would not continue with the transaction with Southwest until they had explored the other offer.[9] Based on the Harwards' representations that they would not complete the transaction with Southwest, the Greens left the meeting and returned home.[10]

5.      That same day, on January 9, 2013, Standard Plumbing entered into an Asset Purchase and Sale Agreement ("APSA") with Harward Irrigation. Richard Reese convinced Harward Irrigation not to enter into an agreement with Southwest. Instead, Reese's company, Standard Plumbing, offered more money to purchase Harward Irrigation and completed the purchase.[11]

6.      As part of the APSA, Standard Plumbing purchased Harward Irrigation's intellectual property, including its trademarks.[12]

7.      Standard Plumbing has owned and operated Sprinkler World since January 2013.[13]

8.      On February 1, 2013, the Greens filed suit against Harward Irrigation and other defendants (but not Standard Plumbing) in state court.[14]

---

[7] Amended Complaint ¶ 93, docket no. 48, filed Apr. 29, 2016 (filed in state court Sept. 8, 2014).

[8] *Id.* ¶¶ 97-98.

[9] *Id.* ¶ 104.

[10] *Id.* ¶ 105.

[11] 81 Opposition at vii, ¶ 5.

[12] Southwest argues that it "had already acquired a claim to the intellectual property," but does not dispute that Standard Plumbing entered into the APSA. *Id.* at viii, ¶ 6.

[13] Southwest disputes this fact, but provides no evidence to support its dispute. *Id.* at viii, ¶ 7. A review of the record shows that Standard Plumbing has been operating the business since January 2013.

[14] *Id.* at viii, ¶ 8.

9.      On March 31, 2014, almost a year after the Greens filed suit, Standard Plumbing filed a declaratory judgment action in federal court against the Greens seeking a determination that Standard Plumbing owned the Sprinkler World trademarks and had not infringed on the Sprinkler World trademarks.[15]

10.     On July 14, 2014, U.S. District Judge David Sam dismissed Standard Plumbing's declaratory judgment action based on lack of federal subject matter jurisdiction. Standard Plumbing's declaratory judgment action was premised on the grounds that the Greens and Southwest held the trademark in question. But Judge Sam wrote reasoned as follows: "The parties agree that Green Enterprises never actually purchased the trademark in question before Harward backed out of any agreement it might have made."[16] Judge Sam then explained that the Greens therefore "could not possibly have a trademark infringement claim against Standard Plumbing under federal trademark law." He held that any such claim attempted by the Greens would be absolutely devoid of merit [and] frivolous." Judge Sam dismissed the action based on "lack of federal subject matter jurisdiction and lack of justiciability."[17]

11.     In September 2014, the Greens amended their complaint in state court to set forth claims against Standard Plumbing.[18]

12.     One of the claims asserted by the Greens against Standard Plumbing and Richard Reese is that they engaged in "unfair competition."[19] The cause of action, in its entirety, provides as follows:

---

[15] *Id.* at ix-x, ¶ 12; Complaint for Declaratory Judgment, Ex. I to 81 Opposition, docket no. 99-9, filed Aug. 2, 2016.

[16] Memorandum Decision ("Judge Sam Ruling") at 3, Ex. A to 81 Motion, docket no. 81-1, filed July 1, 2016.

[17] *Id.*; 81 Opposition at xii-xiii, ¶ 14.

[18] 81 Opposition at viii-ix, ¶ 9

[19] *Id.* at ix, ¶ 10.

167. Plaintiff realleges and incorporates each and every allegation made above as if fully set forth herein.

168. As set forth above, between January 2 and 9, 2013, Richard Reese, Standard, Richard Harward, Randall Harward, Harward Irrigation and Grass Valley, engaged in unlawful, unfair, and/or fraudulent business acts and practices.

169. Pursuant to the terms of Southwest's agreement with Harward Irrigation and Grass Valley, Southwest obtained exclusive rights, among other things, to Harward Irrigation's trademarks.

170. Richard Reese, Standard, Harward Irrigation and Grass Valley have infringed or are infringing on those trademarks of Harward Irrigation that belong to Southwest.

171. Those actions have caused and/or led to a material diminution in value of intellectual property belonging to Southwest, including but not limited to the value of Southwest's trade name and reputation for business.

172. The actions of Richard Reese and Standard were further unlawful, unfair and/or fraudulent in that they were expressly intended to deprive the Greens and Southwest of the benefits of their transaction with Harward Irrigation and Grass Valley, including the trademarks of Harward Irrigation, including but not limited to profits of over $5 million over 5 years, to keep Southwest from obtaining a stronger market position in Standard's industry, and for the personal satisfaction of damaging Garth Green and Mike Green, who Richard Reese has perceived as rival businessmen over the years.

173. The actions of Richard Reese and Standard did damage the Greens and Southwest in an amount to be determined at trial, for the cost of money, time and resources, they committed to their transaction with Harward Irrigation and Grass Valley, for the damages they incurred as a result of the actions of Richard Reese and Standard, and in an amount exceeding $5 million, representing the profits Southwest reasonably expected to obtain over five (5) years, as a result of its transaction with Harward Irrigation and Grass Valley.

174. Richard Reese and Standard are further liable to the Greens and Southwest for punitive damages, emotional distress, harm to reputation that resulted from their actions inducing Harward Irrigation and Grass Valley to avoid or breach their agreement with Southwest, and attorney fees incurred in seeking to hold Richard Reese and Standard responsible for their wrongful actions.

13.     On September 25, 2014, counsel for Standard Plumbing requested that the

Greens' counsel voluntarily withdraw the unfair competition claim. Standard Plumbing advised

the Greens' counsel of Judge Sam's ruling and stated that a claim premised on trademark ownership or infringement would be devoid of merit and frivolous.[20]

14.     On October 2, 2014, Standard Plumbing again requested that Southwest voluntarily withdraw the unfair competition claim.[21] Southwest did not do so.

15.     On October 27, 2014, Standard Plumbing filed the 57 Motion against Southwest and Southwest's counsel, Marcus Mumford.[22]

16.     In August 2015, the state court action was removed to federal court.[23]

17.     On May 20, 2016, Elaine Monson and Steven Call entered their appearances on behalf of the Greens.[24]

18.     On May 31, 2016, counsel for Standard Plumbing requested that the Greens agree to dismiss the unfair competition claim within 21 days, and provided the Greens' counsel with a copy of the 81 Motion.[25]

19.     The unfair competition claim was not voluntarily withdrawn by the Greens, but it was dismissed with respect to Standard Plumbing.[26]

20.     Attorneys Call and Monson did not appear in the state court action.

---

[20] *Id.* at xiii, ¶ 15.

[21] *Id.* at xvi, ¶ 16.

[22] 57 Motion at 1-2 (Standard Plumbing "hereby submits this Motion for Sanctions against Attorney Marcus R. Mumford and against Plaintiffs Garth O. Green Enterprises, doing business as Southwest Plumbing Supply, Garth O. Green, and Michael Green." (parentheticals omitted)).

[23] More accurately, the matter was automatically referred to bankruptcy court upon Grass Valley's filing for bankruptcy, at which point the Greens filed a motion to withdraw the automatic reference. Motion for Withdrawal of Reference to the United States District Court, docket no. 2, filed Aug. 4, 2015. That motion was granted. Order Granting Motion for Withdrawal of Reference to the United States District Court, docket no. 10, filed Sep. 21, 2015.

[24] Attorneys' Planning Meeting Report [sic], docket no. 71, filed May 20, 2016.

[25] 81 Opposition at xviii, ¶ 21.

[26] Memorandum Decision and Order Granting [55] Motion for Partial Summary Judgment; Finding Moot [58] Motion under Rule 56(d); and Finding Moot [60] and [136] Motions for Partial Summary Judgment ("Order Dismissing Claims") at 19, docket no. 152, entered Dec. 27, 2016.

21.     Attorneys Call and Monson did not sign, file, or submit the original complaint or any other pleadings.

## DISCUSSION

The Standard Parties argue in their 57 Motion that the Greens' unfair competition claim is "frivolous" and "completely lacking in merit and evidentiary support in violation of Utah Rule of Civil Procedure 11."[27]

In the 81 Motion, the Standard Parties argue that sanctions should issue for the Greens "continu[ing] to maintain a frivolous claim of unfair competition against . . . Standard Plumbing that is completely lacking in merit and evidentiary support in violation of FRCP 11."[28] Thus, the grounds for the 81 Motion are the same grounds that the Standard Parties used to support their 57 Motion (filing of the Amended Complaint in state court). The difference is that in the 81 Motion, the Standard Parties invoke Federal Rule of Civil Procedure 11.

## THE 81 MOTION IS DENIED

As noted above, the plain language of Federal Rule 11 provides that all papers filed in federal court must be signed by an attorney, and the signature of that attorney "constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper[.]"[29] The signer certifies that the paper is grounded in fact and law, and is not filed for any improper purpose.[30] "If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction . . . ."[31]

---

[27] 57 Motion at 2.

[28] 81 Motion at 3.

[29] Fed. R. Civ. P. 11.

[30] *Id.*

[31] *Id.*

"From this language, it is apparent that the act of *signing* the pleading, motion, or other paper provides the certification that the action is not frivolous."[32] "A pleading or paper is signed in violation of Rule 11 only if the signer is subject to the Federal Rules of Civil Procedure at the time of the signing."[33]

At the time the Amended Complaint was signed and filed in September 2014, the parties were not subject to the Federal Rules of Civil Procedure. Thus, *federal* Rule 11 cannot serve as the basis for sanctions.

Further, because the only document identified in the 81 Motion as frivolous is the Amended Complaint—specifically, the inclusion of the unfair competition claim—and the Standard Parties fail to identify any other "sanctionable papers" that have been filed in federal court by the Greens, there is no other basis for the 81 Motion.

Also, sanctions are not warranted for *continuing to maintain* the unfair competition claim. Federal Rule 11 "authorizes sanctions only for unreasonable filings, not failure to amend or withdraw a previously filed document."[34] Because "signers have no obligation under [federal] Rule 11 to make continuous updates to previously filed pleadings, . . . no sanctions can be imposed under [Federal] Rule 11 in an action that is removed to federal court, unless a party files sanctionable papers in federal court."[35] Although Standard Plumbing argues that "Plaintiffs' Counsel and Plaintiffs have filed [in state court] and continue to maintain a frivolous claim of unfair competition against . . . Standard Plumbing[,]"[36] Federal Rule 11 cannot be the basis for sanctions.

---

[32] *Griffen v. City of Oklahoma City*, 3 F.3d 336, 338 (10th Cir. 1993).

[33] *Id.* at 339.

[34] *Id.*

[35] *Id.* at 340.

[36] 81 Motion at 3.

However, this does not mean that the Greens and their attorneys are not subject to a motion for sanctions. The Tenth Circuit has held that "a federal court may apply a state-law counterpart to Rule 11 to a pleading filed in state court prior to removal."[37] Thus, if a party files a frivolous document in state court, and the matter is subsequently removed to federal court, the federal court may still impose sanctions under a state-law counterpart to federal Rule 11.[38] Thus, the following section will address whether sanctions should be imposed under *Utah Rule 11* for inclusion of the unfair competition claim in the Amended Complaint.

**THE 57 MOTION IS GRANTED**

The 57 Motion is based on Utah Rule 11, the state-law counterpart to Federal Rule 11.[39] Utah Rule 11 is "identical in all material respects to the federal version[.]"[40] The Standard Parties argue in their 57 Motion that the Greens' unfair competition claim is "frivolous" and "completely lacking in merit and evidentiary support in violation of Utah Rule of Civil Procedure 11."[41] The Standard Parties are correct.

Judge Sam held that "[o]wnership of a protectable mark is an undisputed element of a trademark infringement claim" and that because the Greens could not establish ownership to the trademark in question, "[a]ny such claim attempted by Green Enterprises would be absolutely devoid of merit [and] frivolous."[42] This does not mean that the Greens were altogether barred

---

[37] *Griffen*, 3 F.3d at 341.

[38] *Id.*

[39] Utah R. Civ. P. 11, advisory committee note ("The 1997 amendments conform state Rule 11 with federal Rule 11.").

[40] *Barnard v. Sutliff*, 846 P.2d 1229, 1233 (Utah 1992) ("The wording of Utah's rule 11 is identical in all material respects to the federal version; therefore, we survey the federal courts' approaches to determine their relative persuasiveness."); *see also Morse v. Packer*, 15 P.3d 1021, 1028 (Utah 2000) ("The 1997 amendment 'conform[ed] state Rule 11 with federal Rule 11,' . . . and we therefore seek guidance from authorities examining federal Rule 11.").

[41] 57 Motion at 2.

[42] Judge Sam Ruling at 3-4 (second alteration in original, internal quotation marks omitted).

from bringing an unfair competition claim. An unfair competition claim may be based on grounds other than trademark infringement.[43] Thus, the Greens were not automatically in violation of Utah Rule 11 by filing a claim for unfair competition after Judge Sam's ruling was issued.

It is not simply the inclusion of an unfair competition claim that is sanctionable—it is the fact that the unfair competition claim was "based solely upon non-existent trademark rights[.]"[44] Standard Plumbing argues that "the sole basis for the unfair competition claim is the allegation of an alleged infringement, by Standard Plumbing, of Southwest's 'exclusive rights, among other things, to Harward Irrigation's trademarks.'"[45] But, Standard Plumbing argues, "[a] trademark infringement claim—or an unfair competition claim *based solely* on a theory of trademark infringement—cannot be founded on trademarks <u>not</u> owned by Southwest."[46]

The Standard Parties are correct that the unfair competition claim in the Amended Complaint is based solely on trademark infringement. In fact, the memorandum decision and order dismissing the unfair competition claim stated that the claim was based on trademark infringement and that "the Amended Complaint does not allege with any specificity how" any other grounds for unfair competition were present.[47] Thus, the  unfair competition claim is based solely on trademark infringement. Greens' counsel may argue that other grounds besides trademark infringement are alleged in support of the unfair competition claim, but this argument fails for at least two reasons.

---

[43] Order Dismissing Claims at 15 (describing elements to establish a common law claim for unfair competition and a statutory law claim for unfair competition).

[44] 57 Motion at 7.

[45] *Id.* at 6 (quoting Amended Complaint ¶ 170).

[46] *Id.* (emphasis in original).

[47] Order Dismissing Claims at 18.

Before the Amended Complaint was filed, Judge Sam gave a clear directive that any claim brought by the Greens that was based on trademark infringement would be "absolutely devoid of merit" and "frivolous."[48] Yet thereafter, Greens' counsel proceeded to file the unfair competition claim solely on trademark infringement grounds. It is true that the unfair competition claim states conclusory grounds in addition to trademark infringement, such as "to deprive the Greens and Southwest of the benefits of their transaction[,]" "to keep Southwest from obtaining a stronger market position in Standard's industry," "for the personal satisfaction of damaging Garth Green and Mike Green, who Richard Reese has perceived as rival businessmen over the years[,]"[49] and "unlawful, unfair, and/or fraudulent business acts and practices," but these conclusory grounds are not supported by specific facts.[50] Therefore, the unfair competition claim is not based on fact, and is not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law[.]"[51] Judge Sam held that the argument that the Greens' company, Southwest, held trademark rights from a transaction that was never consummated is frivolous. There is no support for it in the law, and it is not a reasonable extension or modification of the law. A similar argument—that a party obtains trademark rights simply by having a contract that provides the possibility of obtaining trademark rights, was rejected by the Tenth Circuit shortly after Greens' claim was filed.[52]

If Judge Sam had not already given such clear warning, or if the Greens' counsel had included other *specific* grounds to support the unfair competition claim, perhaps the unfair

---

[48] 57 Motion at 6-7; Judge Sam Ruling at 3.

[49] Amended Complaint ¶¶ 168, 172.

[50] Order Dismissing Claims at 18 (concluding that "Southwest's unfair competition claim fails as a matter of law because the Amended Complaint does not allege with any specificity" how unfair competition has been established through means other than the alleged trademark infringement).

[51] Fed. R. Civ. P. 11.

[52] *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1119-21 (10th Cir. 2014).

competition claim would have been warranted. But that is not the case here. There is absolutely no support for the unfair competition claim as it was pled. While Greens' counsel goes to great lengths to distinguish Judge Sam's ruling,[53] the attempts are unsuccessful. It is true that Judge Sam was not specifically ruling on the unfair competition claim as pled in state court. But Judge Sam *was* ruling on the question of trademark infringement[54] and found that the "claim that Green Enterprises may have a trademark infringement claim against it has no basis in law or fact."[55] As has been concluded previously, the only specific basis alleged for the unfair competition claim is trademark infringement. Therefore, there was no basis for the unfair competition claim.

Judge Sam did not specifically instruct the Greens' counsel not to pursue the unfair competition claim in state court, although he very clearly warned the Greens that any claim based on trademark infringement would fail. Instead, the Greens' counsel should have understood that any claim based on trademark infringement, including an unfair competition claim, would not succeed and would be considered frivolous.

The Greens' counsel was given an opportunity to withdraw the claim, but did not do so. After being advised that the Standard Parties were considering sanctions, the Greens' counsel still pursued the claim, even going so far as sending a letter to the president, general counsel, and board of directors of opposing counsel's law firm asserting that the consideration of sanctions was simply a "cutthroat tactic in the struggle over the merits."[56] After the case was removed to

---

[53] 57 Opposition at 2-6.

[54] The specific question was whether there was federal subject matter jurisdiction based on a valid claim of trademark infringement. Judge Sam Ruling at 3 ("Standard Plumbing bases its declaratory judgment suit on a theory that Green Enterprises might have a trademark infringement claim against Standard Plumbing.").

[55] *Id.* at 3-4.

[56] Letter from Marcus Mumford, attorney for the Greens, to Lorin Barker, et al. (Oct. 27, 2014) at 2, Ex. 1 to 57 Opposition, docket no. 57-2, filed Apr. 29, 2016 (filed in state court Nov. 11, 2014) (quoting Mark S. Stein, Rule 11 In The Real World: How The Dynamics Of Litigation Defeat The Purpose Of Imposing Attorney Fee Sanctions For The Assertion Of Frivolous Legal Arguments, 132 F.R.D. 309, 330 (1990)).

federal court, there was an opportunity to add more specific grounds for their unfair competition

claim. A new date for amending pleadings was offered, but the unfair competition claim was not

modified. It remained as pled—based solely on trademark infringement which Judge Sam

determined had "no basis in law or fact."[57]

Rule 11 sanctions are a serious matter and are not to be lightly awarded. Courts should

only award Rule 11 sanctions when it is clear that a claim has absolutely no chance of success

under any existing law:

> Challenged conduct is evaluated under a standard of objective reasonableness,
> that is, whether a reasonable attorney admitted to practice before the District
> Court would file such a document. *Adamson v. Bowen*, 855 F.2d 668, 673 (10th
> Cir.1988). The attorney must "stop, look and listen" before signing a document
> subject to Rule 11. *Id.* . . . What constitutes a reasonable inquiry into the facts
> may depend upon the particular facts, as well as **the time available to the signer
> for investigation; the extent of the attorney's reliance upon his client for the
> factual support of the document; the feasibility of a prefiling investigation;
> whether the signing attorney accepted the case from another member of the
> bar or forwarding attorney; the complexity of the factual and legal issues;
> and the extent to which development of the factual circumstances underlying
> the claim requires discovery.** Fed.R.Civ.P. Rule 11 advisory committee's note;
> *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 875 (5th Cir.1988). As to the
> determination of whether a reasonable inquiry into the law has been made, a
> district court may consider the time available to the attorney to prepare the
> documents; the plausibility of the legal view contained in the documents; the pro
> se status of a litigant; and the complexity of the legal and factual issues raised.
> *Thomas*, 836 F.2d at 875–76.
>
> Rule 11 is violated where it is patently clear that a claim has absolutely no chance
> of success under the existing precedents, and where no reasonable argument can
> be advanced to extend, modify, or reverse the law as it stands. *Eastway
> Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert.
> denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). **Once a violation of
> Rule 11 has been found, sanctions are mandatory**, however, judges have broad
> discretion in choosing the appropriate remedy. *Thomas*, 836 F.2d at 877.[58]

---

[57] Judge Sam Ruling at 3-4.

[58] *Harrison v. Luse*, 760 F.Supp. 1394, 1399-1400 (D.Colo.1991), *aff'd*, 951 F.2d 1259, 1991 WL 270031 (10th Cir.
Dec. 16, 1991) (emphasis added). Because Utah Rule 11 is substantially equivalent to federal Rule 11, authorities
examining federal Rule 11 are useful in deciding sanctions. *Morse*, 15 P.3d at 1028.

Considering the above factors, sanctions are warranted. The Greens' counsel had many months to investigate the unfair competition claim. Indeed, the Greens' counsel could have amended the Amended Complaint until September 2016,[59] avoiding this motion. There was ample opportunity for pre-filing investigation. In addition, Judge Sam's ruling sounded a clear warning about the baselessness of the claim. This is not an extremely complex matter. A party cannot assert trademark infringement as a basis for an unfair competition claim if it does not own the trademark. The Greens' counsel's argument is not a reasonable argument for extension or modification of the law. Further, to the extent the Greens' counsel argues the Greens had a protectable interest in the trademark based on the acceptance of the "Final Offer," the argument that a party obtains trademark rights simply by having a contract that provides the possibility of obtaining trademark rights was rejected by the Tenth Circuit in late 2014,[60] well before the deadline for amending pleadings in this case.

Accordingly, sanctions are mandatory. The Standard Parties ask for (1) the unfair competition claim to be dismissed; (2) an award of attorney fees and costs; and (3) any other relief the court deems suitable.[61] Because the unfair competition claim has already been dismissed, the only question is whether to award attorney fees and costs to Standard Plumbing in connection with preparing, serving, and filing the 57 Motion.

"[J]udges have broad discretion in choosing the appropriate remedy."[62] To support the deterring effect of Rule 11, and as a sanction for filing a frivolous claim devoid of any basis in fact or law, it is appropriate that the Greens' counsel pay attorney fees and costs to Standard

---

[59] Scheduling Order at 4, docket no. 110, entered Aug. 9, 2016.

[60] *Derma Pen*, 773 F.3d at 1119-21.

[61] 57 Motion at 8.

[62] *Harrison*, 760 F.Supp. at 1399-1400.

Plumbing. Since "[t]he sanction should be imposed on the persons—whether attorneys, law firms, or parties—who have violated the rule or who may be determined to be responsible for the violation[,]"[63] only those involved in the filing of the Amended Complaint will be subject to this sanction. This means that only the Greens' counsel at the time of filing the Amended Complaint will be liable to Standard Plumbing for the fees and costs. Since the Greens' attorneys Elaine Monson and Steven Call did not sign the Amended Complaint and only appeared in the case in later stages, they are not subject to sanctions.

"[W]hen the offending conduct concerns the scope or quality of the counsel's competence . . . counsel alone should be sanctioned. Conversely, sanctions should fall on the client rather than on counsel when the attorney has relied reasonably on the client's misrepresentations or the client failed to disclose relevant facts . . . ."[64] Here, the decision to include the unfair competition claim, based solely on trademark infringement, and failing to include other specific grounds for unfair competition, was made by counsel. There is no indication that the Greens made misrepresentations to their attorney or failed to disclose relevant facts. It appears to be purely a legal decision to include the unfair competition claim without any support in fact or law. Therefore, it is appropriate for counsel to be sanctioned.

## CONCLUSION

Because the 81 Motion is based on Federal Rule 11, and the Standard Parties have failed to identify any "sanctionable papers" filed in federal court, the 81 Motion is denied. But because a federal district court has authority to impose sanctions under a state-law counterpart to Federal Rule 11, and because Utah Rule 11 is in all material respects identical to Federal Rule 11, the 57

---

[63] Fed. R. Civ. P. 11, advisory committee note.

[64] 5A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1336.2 (3d ed. 2016).

Motion is granted. Sanctions against the Greens' attorney, Marcus Mumford, are appropriate because the unfair competition claim, as pled, has no basis in fact or law.

### ORDER

IT IS HEREBY ORDERED that the 81 Motion [65] is DENIED.

IT IS FURTHER ORDERED that the 57 Motion[66] is GRANTED. Counsel for the Greens, Marcus Mumford, must pay to Standard Plumbing the attorney fees and costs incurred in connection with preparing, serving, and filing the 57 Motion. On or before January 23, 2017, counsel for Standard Plumbing may submit a motion for determination of sanctions, supported by proof of expenses including attorney fees incurred in preparing, serving, and filing the 57 Motion, and on or before January 30, 2017, any response may be filed.

Dated January 18, 2017.

BY THE COURT:

David Nuffer
United States District Judge

---

[65] Motion for Sanctions Against Plaintiffs' Counsel and Plaintiffs, based on Utah Rule of Civil Procedure 11 ("57 Motion"), docket no. 57, filed Apr. 29, 2016 (filed in state court Oct. 27, 2014).

[66] Defendants Standard Plumbing Supply Company, Inc. and Richard N. Reese's Motion for FRCP 11 Sanctions Against Plaintiffs and Plaintiffs' Counsel and Memorandum in Support Thereof, based on Federal Rule of Civil Procedure 11 ("81 Motion"), docket no. 81, filed July 1, 2016.