IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERPRISES, INC., a Utah corporation; GARTH O. GREEN, an individual; and MICHAEL GREEN, an individual, <br><br>       Plaintiffs and Counterclaim Defendants, <br><br> v. <br> RANDALL HARWARD, an individual; RICHARD HARWARD, an individual; HARWARD IRRIGATION SYSTEMS, INC., a Utah corporation; GRASS VALLEY HOLDINGS, L.P.; DOES 1-10; and ROE CORPORATIONS 1-X; <br><br>       Defendants, <br><br><br> RICHARD N. REESE, an individual; STANDARD PLUMBING SUPPLY COMPANY, INC., a Utah corporation, <br><br>       Defendants and Counterclaimants. | **MEMORANDUM DECISION AND ORDER** <br><br> **DENYING [167] MOTION TO ALTER AND AMEND AND** <br><br> **DENYING [195] MOTION FOR HEARING** <br><br><br> Case No. 2:15-cv-00556-DN-EJF <br> Judge David Nuffer <br> Magistrate Judge Evelyn J. Furse |
| RICHARD REESE, an individual and STANDARD PLUMBING SUPPLY COMPANY, INC., a Utah corporation, <br><br>       Cross-Claim Plaintiffs, <br> v. <br> HARWARD IRRIGATION SYSTEMS, INC. AND GRASS VALLEY HOLDINGS, L.P., <br><br>       Cross-Claim Defendants. | |

Plaintiffs Garth O. Green Enterprises, Inc., Garth O. Green and Michael Green ("Greens") move "to amend and modify" the Memorandum Decision and Order entered on December 27, 2016 ("Motion for Reconsideration").[1] Richard N. Reese and Standard Plumbing Supply Company, Inc. ("Standard Parties") oppose the Motion for Reconsideration ("Opposition").[2] The Greens filed a reply in support of the Motion for Reconsideration ("Reply").[3]

The Greens also filed a motion for a hearing on their Motion for Reconsideration ("Motion for Hearing").[4] The Standard Parties oppose the Motion for Hearing.[5] The Greens filed a reply in support of their Motion for Hearing.[6] For the reasons set forth below, the Motion for Reconsideration is DENIED and the Motion for Hearing is DENIED.

## BACKGROUND

On December 27, 2016, an order was entered dismissing with prejudice the Greens' claims against the Standard Parties ("152 Order").[7] The Order considered a motion filed by the

---

[1] Garth O. Green Enterprises, Inc. Garth O. Green and Michael Green's Motion to Alter and Amend Court's December 27, 2016 Memorandum Decision ("Motion for Reconsideration") at 2, docket no. 167, filed Jan. 24, 2017.

[2] The Standard Parties' Memorandum in Opposition to Garth O. Green Enterprises, Inc., Garth O. Green, and Michael Green's Motion to Alter and Amend Court's December 27, 2016 Memorandum Decision ("Opposition"), docket no. 191, filed Feb. 6, 2017.

[3] Reply Memorandum in Support of Garth O. Green Enterprises, Inc.'s, Garth O. Green's and Michael Green's Motion to Alter and Amend Court's December 27, 2016 Memorandum Decision ("Reply"), docket no. 214, filed Feb. 23, 2017.

[4] Garth O. Green Enterprises, Inc., Garth O. Green and Michael Green's Motion for Oral Argument on Motion to Alter and Amend Court's December 27, 2016 Memorandum Decision (Dkt. No. 152) ("Motion for Hearing"), docket no. 195, filed Feb. 8, 2017,

[5] The Standard Parties' Memorandum in Opposition to Garth O. Green Enterprises, Inc. et al.'s, Motion for Oral Argument on Motion to Alter and Amend Court's December 27, 2016 Memorandum Decision (Dkt. No. 152), docket no. 211, filed Feb. 20, 2017.

[6] Garth O. Green Enterprises, Inc., Garth O. Green and Michael Green's Reply Memorandum in Support of Motion for Oral Argument on Motion to Alter and Amend Court's December 27, 2016 Memorandum Decision (Dkt. No. 152), docket no. 229, filed Mar. 6, 2017.

[7] Memorandum Decision and Order Granting [55] Motion for Partial Summary Judgment; Finding Moot [58] Motion under Rule 56(d); and Finding Moot [60] and [136] Motions for Partial Summary Judgment ("152 Order"), docket no. 152, entered Dec. 27, 2016.

Standard Parties, referred to as the "55 Motion." The 55 Motion was originally filed in state court, but was not resolved by the state court and the parties asked this court to resolve it along with other pending motions from the state court.[8] In the 55 Motion, the Standard Parties asked for dismissal of each of the causes of action asserted against them by the Greens. Those causes of action included:

> • "Intentional Interference with Performance of Contract against Richard Reese and Standard" (Sixth Cause of Action)
>
> • "Intentional Interference with Prospective Economic Relations against Richard Reese and Standard" (Seventh Cause of Action)
>
> • "Unfair Competition against Richard Reese, Standard, Harward Irrigation, Grass Valley, Randall Harward, and Richard Harward" (Eighth Cause of Action).

The 152 Order explained that the 55 Motion would be construed as a Rule 12 motion to dismiss and the material outside the pleadings would be excluded from consideration.[9] All facts alleged in the Amended Complaint were assumed to be true when ruling on the 55 Motion.[10]

First, the 152 Order addressed the intentional interference claims. The Order noted that "[i]n *St. Benedict's Development Company v. St. Benedict's Hospital*, the Utah Supreme Court combined the two intentional interference claims . . . into a single tort of 'intentional interference with economic relations.'"[11] Therefore, the Order reasoned, the intentional interference claims asserted against the Standard Parties "will be analyzed as a single claim for intentional interference with economic relations."[12]

---

[8] Docket nos. 35, 37, 39, 40, 41, 42, 43, 45, 46 (outlining pending issues after removal and consenting to federal jurisdiction for resolution of those issues).

[9] 152 Order at 4.

[10] *Id.*

[11] *Id.* at 11 (citing *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194 (Utah 1991)).

[12] 152 Order at 12.

The 152 Order then explained the elements of a claim for intentional interference with economic relations. Those elements required the Greens to show, among other things, "improper means."[13] The 152 Order highlighted that "[t]he tort of intentional interference with economic relations does not bar ordinary market competition."[14] Citing to a Utah Supreme Court case, the 152 Order stated: "In the rough and tumble of the marketplace, competitors inevitably damage one another in the struggle for personal advantage. The law offers no remedy for these damages—even if intentional—because they are an inevitable by-product of competition."[15] The 152 Order also explained that "to be actionable, the interference must be 'wrongful by some measure beyond the fact of the interference itself.'"[16] Actions such as "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood" were provided as examples of "independently actionable conduct" that would satisfy the "improper means" element.[17]

The 152 Order concluded that the Greens had failed to allege any improper means. The 152 Order explained that the Greens had simply accused the Standard Parties of "inducing" Harward Irrigation and Grass Valley to breach their agreement with the Greens and contract with the Standard Parties instead.[18] Because this was merely competition, which is allowed in the marketplace, these actions did not rise to the level of "independently actionable conduct" to

---

[13] *Id.*

[14] *Id.*

[15] *Id.* (citing *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 307 (Utah 1982)).

[16] 152 Order at 12 (citing *Mumford v. ITT Commercial Fin. Corp.*, 858 P.2d 1041, 1043 (Utah App. 1993)).

[17] 152 Order at 12-13.

[18] *Id.* at 13.

satisfy "improper means."[19] The 152 Order also concluded that the allegation of taunting was not founded and did not support a finding of improper means.[20]

Regarding the unfair competition claim, the 152 Order explained that it was unclear whether the Greens had advanced a common law or statutory claim of unfair competition.[21] Construing the Amended Complaint in the light most favorable to the Greens, the 152 Order analyzed both common law and statutory unfair competition claims.

The 152 Order stated that "[a] common law claim for unfair competition includes such actions as deceptively naming a new business to deceive customers and take advantage of a competitor's established good will, copying unique appearances of an established business, or deceptively packaging a product to confuse the customer about its source."[22] The requisite elements to establish a statutory claim for unfair competition, the 152 Order explained, could be found in Utah Code § 13-51-102(4).[23] Those elements included, among other things, a requirement that the conduct in question qualified as "one of the following: (A) cyber-terrorism; (B) infringement of a patent, trademark, or trade name; (C) a software license violation; or (D) predatory hiring practices."[24]

The 152 Order noted that trademark infringement, the only potentially viable argument for statutory unfair competition, could not be established because the Greens never obtained

---

[19] *Id.*

[20] *Id.* at 14.

[21] *Id.* at 15.

[22] *Id.*

[23] *Id.*

[24] *Id.* (citing Utah Code § 13-51-102(4)).

trademark rights. "Without a valid claim to the trademark rights at issue, [the Greens] cannot sustain an unfair competition claim."[25]

To address the common law claim for unfair competition, the 152 Order noted that the Greens had not alleged "with any specificity" how the Greens' established good will had been harmed, how unique appearances of its established business have been copied, how any product of Standard Plumbing has been deceptively packaged to confuse the consumer about its source, "or any other grounds."[26] Specifically, the 152 Order noted that the Greens:

> may argue that [the] Amended complaint sufficiently states grounds other than trademark infringement to support its unfair competition claim. But it does not. The Amended Complaint merely contains conclusory statements that "the value of Southwest's trade name and reputation" has been diminished and that Southwest has been kept from "obtaining a stronger market position in Standard's industry.["] There is no explanation, other than Standard Plumbing's and Richard Reese's lawful competitive conduct. A complaint's legal conclusions and opinions are not accepted, whether or not they are couched as facts.[27]

Finally, the 152 Order explained that allowing another amendment to the Amended Complaint would be unduly prejudicial. The Greens had been on notice for over a year that the Federal Rules of Civil Procedure applied, and that specific pleadings would be required to support the claims, yet the Greens did not alter their Amended Complaint despite having several months to do so.[28]

Twenty-eight days after the 152 Order was entered, the Greens filed their Motion for Reconsideration. The Motion for Reconsideration asserts seven ways the 152 Order was in error.

---

[25] 152 Order at 18.

[26] *Id.*

[27] *Id.* at 19 (quoting Amended Complaint ¶¶ 171, 172).

[28] 152 Order at 19-21.

## STANDARD FOR RECONSIDERATION

Rule 54(b) applies to this review since "fewer than all the claims or the rights and liabilities of fewer than all the parties"[29] were adjudicated in the 152 Order.[30] Under Rule 54(b), if "an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court *may* direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."[31]

This action presents more than one claim for relief and involves multiple parties. Thus, the court "may" enter final judgment as to one of the parties, and has discretion to do so if it finds "there is no just reason for delay." The 152 Order did not find that entry of judgment as to the Greens was necessary because the Greens still face counterclaims brought by the Standard Parties. Accordingly, the 152 Order is considered an "order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of the parties[,]" it "does not end the action[,]" and "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[32]

"In reviewing a motion to reconsider brought pursuant to Rule 54(b), courts in the Tenth Circuit apply the standard applicable to a Rule 59(e) motion to alter or amend a judgment."[33] "The Tenth Circuit has recognized the following grounds as warranting a motion to reconsider under Rule 59(e): '(1) an intervening change in the controlling law, (2) new evidence previously

---

[29] Fed. R. Civ. P. 54(b).

[30] The Standard Parties' counterclaims were not adjudicated in the Order.

[31] Fed. R. Civ. P. 54(b) (emphasis added).

[32] Fed. R. Civ. P. 54(b).

[33] *Zisumbo v. Ogden Reg'l Med. Ctr.*, No. 1:10-cv-00073-TS, 2013 WL 2444210, *1 (D. Utah June 5, 2013) (unpublished) (citing *Madison v. Volunteers of Am.*, No. 12-cv-00333-REB-KMT, 2012 WL 1604683, *1 (D. Colo. May 8, 2012) (unpublished) (collecting cases)).

unavailable, and (3) the need to correct clear error or prevent manifest injustice.'"[34] "'Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.'"[35]

The Greens do not assert that there has been any intervening change in the controlling law or that there is new evidence previously unavailable. Thus, the only available grounds for the Greens to succeed on their Motion to Reconsider is "the need to correct clear error or prevent manifest injustice."

## DISCUSSION

### The 152 Order Employed the Correct Standard for Interference Claims

The Greens argue that "[t]he Court misconstrued Utah law on Contractual Interference and the impact of the Utah Supreme Court's decision of *Eldridge v. Johndrow* on prior case law."[36] The Greens argue that it was error to conclude that the causes of action for "interference with a contract" and "interference with prospective economic relations" are a "single tort" entitled "intentional interference with economic relations."[37] The Greens are incorrect.

The decision to analyze the intentional interference claims "as a single claim for intentional interference with economic relations"[38] derived from *St. Benedict's Development Company v. St. Benedict's Hospital*.[39] There, the Utah Supreme Court analyzed two separate intentional interference claims using a *single test* for "intentional interference with economic

---

[34] *Zisumbo*, 2013 WL 2444210, *1 (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

[35] *Zisumbo*, 2013 WL 2444210, *1 (citing *Servants of Paraclete*, 204 F.3d at 1012).

[36] Motion for Reconsideration at 11.

[37] *Id.*

[38] 152 Order at 12.

[39] *St. Benedict's*, 811 P.2d 194 (Utah 1991)).

relations."[40] The Court stated that the "tort of intentional interference with economic relations . . . protects *both* existing contractual relationships and prospective relationships of economic advantage not yet reduced to a formal contract."[41] The Court set forth three elements to establish a claim for "intentional interference with economic relations."[42] This was referred to as the "*Leigh Furniture* test."

*St. Benedict's* went on to state that a party is liable "for an intentional interference with *present* contractual relations if he intentionally and improperly causes one of the parties not to perform the contract."[43] *St. Benedict's* also stated that a claim for intentional interference with "*prospective* economic relations" involves, among other things, a showing of "improper purpose or . . . improper means."[44] Importantly, however, both of these statements were based on the *single three-element Leigh Furniture test* used to analyze the intentional interference claims. Because one of the elements in that test required the showing of "improper purpose or . . . improper means,"[45] *St. Benedict's* stated that both "present" and "prospective" interference claims involve a showing of "improper" conduct. *St. Benedict's* did not create two separate tests, as the Greens argue. Rather, *St. Benedict's* employed the *same three-element test* to each claim— the *Leigh Furniture* test.

This is precisely the approach the 152 Order took.[46] The 152 Order recited the *Leigh Furniture* test that was used in *St. Benedict's*, but modified the test according to the holding in

---

[40] *Id.* at 200.

[41] *Id.* (emphasis added).

[42] *Id.* (citing *Leigh Furniture*, 657 P.2d 293 (Utah 1982)).

[43] *St. Benedict's*, 811 P.2d at 201 (citing Restatement (Second) of Torts § 766 (1979)) (emphasis in original).

[44] *St. Benedict's*, 811 P.2d at 201.

[45] *Id.* at 200.

[46] 152 Order at 12.

*Eldridge*: that "no tortious interference claim"—not just the claim of interference with *prospective* economic relations, but also the claim of interference with *present* contractual relations—"can succeed without evidence of improper means."[47] *Eldridge* did not overturn the *St. Benedict's* approach of applying the *Leigh Furniture* test to tortious interference claims. Instead, *Eldridge* removed the "improper purpose" element from the second element of the *Leigh Furniture* test.

     *Eldridge* could have noted that *St. Benedict's* erroneously applied a single test when there were two separate tests—one for "contractual interference" and one for "economic interference." But *Eldridge* did not do so. Or *Eldridge* could have remarked that *St. Benedict's* had created two separate tests for intentional interference claims. But *Eldridge* did not do so. Indeed, rather than critiquing *St. Benedict's* for employing the *Leigh Furniture* test to both tortious interference claims, *Eldridge* cited the test with approval, stating that "to win a tortious interference claim under Utah law, a plaintiff must now prove '(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff.'"[48] "[A] claim for tortious interference may only succeed where the defendant has employed an improper means."[49]

     It seems the Greens are struggling with the proper nomenclature of a tortious interference claim. In their Motion for Reconsideration and throughout their Reply, they consistently use the terms "Contractual Interference" and "Economic Interference." These are not the terms used by either *St. Benedict's* or *Eldridge*. In fact, it is unclear whether there is any difference between the

---

[47] *Eldridge v. Johndrow*, 345 P.3d 553, 555 (2015).

[48] *Id.* at 565 (citing *Leigh Furniture*, 657 P.2d at 304). Contrary to the Greens' assertions, *Eldridge* involved *two separate tortious interference claims*: "tortious interference with economic relations" and "tortious interference with prospective economic relations[.]" *Eldridge*, 345 P.3d at 555.

[49] *Eldridge*, 345 P.3d at 556.

Greens asserted claims for "Contractual Interference" and "Economic Interference." Both of those titles seem to suggest interference with economic relations. But they do not indicate any difference in the *timing* of the interference, which is the key difference between tortious interference claims. The claim for intentional interference with *existing* contractual relations involves interference with a contract that presently exists, while a claim for intentional interference with *prospective* economic relations involves interference with economic relations that are yet to be realized. *Eldridge* does not limit its holding to only one kind of tortious interference claim; rather, it holds that "no tortious interference claim" can be based on improper purpose.[50] Thus, the *Leigh Furniture* test used in *St. Benedict's* still applies, although it has been modified by *Eldridge* as to the second element.

As explained in the 152 Order, the correct test for a "tortious interference claim"—either a claim for interference with *present or prospective* economic relations—requires a plaintiff to show "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations; (2) . . . by improper means; (3) causing injury to the plaintiff."[51] Because this is the test that was used in the 152 Order, the Greens are incorrect that "[t]he Court misconstrued Utah law on Contractual Interference and the impact of the Utah Supreme Court's decision of *Eldridge v. Johndrow* on prior case law."[52]

**The 152 Order Correctly Concluded that the Greens Failed to Allege Improper Means**

The Greens contend that there was a valid oral contract with Harward Irrigation and Grass Valley, but the Standard Parties "intentionally and improperly interfered with" that

---

[50] *Id.* at 555 ¶ 4 ("We therefore hold that no tortious interference claim can succeed without evidence of improper means."); *Id.* at 556 ¶ 14 ("[W]e hold that a claim for tortious interference may only succeed where the defendant has employed an improper means.")

[51] 152 Order at 12 (citing *Eldridge*, 345 P.3d at 555).

[52] Motion for Reconsideration at 11.

contract.[53] Because the Standard Parties "intentionally and actively interfered with and induced the breach of an existing contractual relationship[,]"[54] the Greens argue, the claim for intentional contractual interference is supported and should not have been dismissed.[55] The Greens argue that there is adequate evidence of "improper means" alleged in the Amended Complaint.[56] The Greens assert that the words "actions" and "wrongful" sufficiently alleged "improper means," especially considering the "related supporting facts."[57] The Greens also assert that their claim for unfair competition provides necessary support for a finding of improper means.[58]

The Greens are incorrect. The 152 Order fully explained that competition is not improper means. "[T]o be actionable, the interference must be 'wrongful by some measure beyond the fact of the interference itself.'"[59] Actions such as "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood" were provided as examples of "independently actionable conduct" that would satisfy the "improper means" element.[60] None of those elements were alleged in the Amended Complaint.

The 152 Order concluded that the Greens had simply accused the Standard Parties of "inducing" Harward Irrigation and Grass Valley to breach their agreement with the Greens.[61] Because this was merely competition, lacking in any improper means, which is allowed in the

---

[53] *Id.* at 4.

[54] *Id.* at 16.

[55] *Id.* at 3-4.

[56] *Id.* at 4.

[57] *Id.*

[58] *Id.* at 18.

[59] 152 Order at 12 (citing *Mumford*, 858 P.2d at 1043).

[60] 152 Order at 12-13.

[61] *Id.* at 13.

marketplace, these actions did not rise to the level of "independently actionable conduct" to satisfy "improper means."[62]

"The tort of intentional interference with economic relations does not bar ordinary market competition."[63] "In the rough and tumble of the marketplace, competitors inevitably damage one another in the struggle for personal advantage. The law offers no remedy for these damages— even if intentional—because they are an inevitable by-product of competition."[64] To the extent that the Greens argue that it was the Standard Parties' intent to injure a competitor, this argument fails.[65]

Thus, even assuming the Greens had a valid contract with Harward and Grass Valley, the Greens have not stated a valid claim for intentional interference with existing contractual relations by alleging that the Standard Parties made a more attractive offer to Harward and Grass Valley. Ultimately, it was up to Harward and Grass Valley to entertain and ultimately accept the Standard Parties' offer. And while the Greens may have had a breach of contract claim against *Harward* and *Grass Valley*, the Greens have not alleged any improper means by the Standard Parties. The tremendously general statement that the Standard Parties engaged in "actions" that were "wrongful"[66] is not nearly specific enough to satisfy federal pleading standards.

Further, as explained in the 152 Order, the Amended Complaint fails to adequately plead either a statutory or common law unfair competition claim. The 152 Order thoroughly explains

---

[62] *Id.*

[63] *Id.* at 12.

[64] *Id.* (citing *Leigh Furniture*, 657 P.2d at 307).

[65] *See Eldridge*, 345 P.3d at 556 (explaining that district court foreclosed tortious interference claim based on improper means argument where the "only goal was to hurt the [plaintiff]'s business").

[66] Motion for Reconsideration at 17.

the reasoning for that conclusion.[67] Thus, the Greens are incorrect that the unfair competition allegations support a finding of improper means and they are further incorrect that the unfair competition claim can stand. The unfair competition allegations, as stated in the 152 Order, are not specific enough to survive a motion to dismiss.

### The 152 Order Correctly Applied *Eldridge* to the Greens' Claims

The Greens argue that it would be inequitable and would impose an undue burden to apply the *Eldridge* decision "retroactively" to them. The Greens argue that at the time the Greens' complaint and Amended Complaints were filed, Utah law had not combined the intentional interference claims into a single tort, and the Greens "justifiably relied on long standing prior case law in pursuing their claims . . . ."[68] This argument is rejected for at least two reasons.

First, this argument has not been raised prior to the Motion for Reconsideration. "[A]rguments raised for the first time in a motion for reconsideration are not properly before the court and generally need not be addressed."[69]

Second, "[t]he general rule of retroactivity in a civil case is that 'the ruling of a court is deemed to state the true nature of the law both retrospectively and prospectively."[70] If a party seeks prospective application of a ruling only, the party must show "either 'justifiable reliance on the prior state of the law,' or that retroactive application would create an undue burden."[71] The Greens cannot show justifiable reliance on the prior state of the law. *Eldridge* was decided only

---

[67] 152 Order at 15-19.

[68] Motion for Reconsideration at 4.

[69] *United States v. Castillo-Garcia*, 117 F.3d 1179, 1197 (10th Cir. 1997) *rev'd on other grounds*, 291 F.3d 1219 (10th Cir. 2002).

[70] *Holmes v. Cannon*, 387 P.3d 971, 974-75 (Utah 2016).

[71] *Id.* at 975.

14

months after their Amended Complaint was filed. The Greens were made aware of *Eldridge* by at least February 2015, when a motion to dismiss was filed arguing that *Eldridge* had changed the improper purpose prong of the *Leigh Furniture* test. The Greens had several months after that to seek amendment of their Amended Complaint to comply with the law. Thus, the Greens' reliance on pre-*Eldridge* law was justifiable at the time the Amended Complaint was filed, but it was not justifiable after they became aware of the change in the law.

Additionally, there is no undue burden on the Greens to require them to follow *Eldridge*. As *Eldridge* itself explained, the improper purpose doctrine was never "firmly established in Utah law" even though "thirty-two years is more than enough time for a precedent to become firmly established . . . ."[72] *Eldridge* remarked that it was common for claims under improper purpose to be rejected, and that "[g]iven the difficulty of winning claims under the improper-purpose doctrine, it would have been foolhardy for people to rely on it in their private dealings."[73] Significantly, *Eldridge* explained, "determining the predominant purpose behind a defendant's actions raises significant evidentiary problems" and "[i]f improper-purpose liability became commonplace it would have a chilling effect on legitimate, socially beneficial competitive practices."[74] It does not impose an undue burden to disallow the Greens from relying on such a problematic doctrine.

### The 152 Order Correctly Prohibited Further Amendment

Finally, the Greens argue that it was error to disallow an opportunity to amend their Amended Complaint. They argue that discovery is still ongoing and they "may be prejudiced if

---

[72] *Eldridge*, 345 P.3d at 559.

[73] *Id.* at 560.

[74] *Id.* at 561.

they are not permitted to amend their pleading after they have conducted discovery."[75] The Greens assert several reasons why they believe the denial of amendment was in error, but none of the arguments even acknowledge that the Greens had an opportunity to request amendment and never acted on that opportunity. As the 152 Order explained, it would be unduly prejudicial to the Standard Parties to allow the Amended Complaint to be amended "after years in litigation."[76]

## CONCLUSION

None of the grounds raised by the Greens show clear error or manifest injustice. The Greens certainly disagree with the conclusion, but that is not enough to establish "clear error." There is no indication that the 152 Order "misapprehended the facts, a party's position, or the controlling law."[77]

## ORDER

IT IS HEREBY ORDERED that the Motion for Reconsideration[78] is DENIED.

IT IS FURTHER ORDERED that the Motion for Hearing[79] is DENIED.


Dated March 7, 2017.

BY THE COURT:

David Nuffer
United States District Judge

---

[75] Motion for Reconsideration at 5.

[76] 152 Order at 20-21.

[77] *Zisumbo*, 2013 WL 2444210, *1 (citing *Servants of Paraclete*, 204 F.3d at 1012).

[78] Garth O. Green Enterprises, Inc. Garth O. Green and Michael Green's Motion to Alter and Amend Court's December 27, 2016 Memorandum Decision ("Motion for Reconsideration"), docket no. 167, filed Jan. 24, 2017.

[79] Garth O. Green Enterprises, Inc., Garth O. Green and Michael Green's Motion for Oral Argument on Motion to Alter and Amend Court's December 27, 2016 Memorandum Decision (Dkt. No. 152), docket no. 195, filed Feb. 8, 2017,