Marcus R. Mumford (12737)
Joshua S. Ostler (14277)
MUMFORD PC
405 South Main Street, Suite 850
Salt Lake City, Utah 84111
Telephone: (801) 428-2000
mrm@mumfordpc.com
jso@mumfordpc.com
*Attorneys for Garth O. Green Enterprises, Inc., Garth Green and Michael Green*

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERPRISES, INC., et al., <br><br>      Plaintiffs, <br><br> v. <br><br> RANDALL HARWARD, et al; <br>      Defendants. | **MOTION FOR RECONSIDERATION, OR ALTERNATIVELY, FOR A STAY OF PROCEEDINGS** <br><br> Case No. 2:15-cv-00556-RS <br> District Judge Robert Shelby |

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and this Court's inherent power and other authority as set forth below, Plaintiffs Garth O. Green Enterprises, Inc., Garth Green and Michael Green (the "Greens") respectfully submit this Motion for Reconsideration,[1] or Alternatively, for a Stay of Proceedings.

### RELIEF REQUESTED AND GROUNDS FOR RELIEF

By this Motion, the Greens request that the Court reconsider the December 27, 2016 Memorandum Decision and Order (Doc. 152 or the "152 Order"). In the alternative, the Greens request that the Court stay proceedings in this case pending resolution of questions already

---

[1] "Although motions for reconsideration are … not specifically provided for under the Federal Rules of Civil Procedure, courts entertain them under Rule 54(b), if they are interlocutory…." *United States v. Koerber*, 966 F.Supp.2d 1207, 1211 (D. Utah 2013) (citing *Raytheon Constructors v. Asarco Inc*., 368 F.3d 1214, 1217 (10th Cir. 2003)).

certified to the Utah Supreme Court in the matter of *C.R. England v. Swift Transportation*, No. 20170561 (Utah).

As grounds for the above-requested relief, Rule 54(b) of the Federal Rules of Civil Procedure provide that "any order … that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Under Rule 54(b) "district courts generally remain free to reconsider their earlier interlocutory orders."[2] "This principle remains true even when a cause is reassigned from one judge to another in the same court: [t]he law of the case doctrine does not bind a judge to following rulings in the same case by another judge or coordinate jurisdiction as long as prejudice does not ensue to the party seeking the benefit of the doctrine."[3] Here, the Court should reconsider the 152 Order because it ignored prior rulings of the State court and is otherwise erroneous. Further, no relevant prejudice will ensue to Standard.

As to the motion to stay: "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[4] This case should be stayed pending outcome of the *C.R. England* case currently before the Utah Supreme Court, which places the propriety of Judge Nuffer's 152 Order directly at issue.

## RELEVANT FACTS

1.    On February 1, 2013, Garth O. Green Enterprises, Inc., initiated this lawsuit in Utah state

---

[2] *Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (citation omitted).
[3] *Id.* (internal quotations and citation omitted).
[4] *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

court, Case No. 130400184 (the "State Court Action"), seeking to enforce an agreement –
pursuant to the Greens' final offer dated December 31, 2012, and the Harwards' acceptance
dated January 2, 2013 – to purchase and/or lease the assets of Harward Irrigation and Grass
Valley (collectively, the "Harwards"). The Greens' December 31, 2012 final offer stated: "This
is not a list of topics we wish to discuss but is our Final Offer. Please respond with a simple YES
or NO by January 2nd."[5] It included Harward Irrigation's trademark rights: "the deal will include
full rights title and interest and any trademarks to SprinklerWorld, Sprinkler.com,
ChristmasWorld.com, SprinklerWorld.net, your AG business, & your Turf business."[6] The
January 2, 2013 acceptance from the Harwards stated: "The answer is yes."[7]

2.      The complaint claimed that the Harwards breached the agreement on January 9, 2013,
when they refused to memorialize the terms of the binding agreement the parties reached on
January 2, 2013, because, as the Greens later learned, the Harwards had been approached by
Richard Reese, owner of Standard Plumbing Supply Company, Inc. (collectively "Standard"),
and decided to sell to Standard instead.

3.      In September 2013, Plaintiff took the deposition of Reese in the State Court Action,
where Reese admitted: (a) that he had approached the Harwards with a competing offer after
someone told him the Harwards were "going to sell" to the Greens; (b) that he was shown the
January 2, 2013 email from Randall Harward to the Greens evidencing their acceptance of the
Greens' final offer; (c) that he intentionally interfered with the agreement between the Greens
and the Harwards by having his company, Standard, make a competing offer to the Harwards;

---

[5] Doc. 55-2, Ex. 6.
[6] Id.
[7] Doc. 55-2, Ex. 7.

and (d) that his reasons for interfering with the agreement between the Greens and the Harwards were anticompetitive in that Reese viewed the Greens as Standard's "competitor," explaining: "we, of course, would not want to have a competitor extend into the marketplace" by purchasing the Harwards.[8]

4.     On January 3, 2014, the Greens moved to amend the Complaint based on the depositions of Reese and others.

5.     The Greens' motion to amend requested leave, inter alia, to assert causes of action against Reese and Standard Plumbing Supply Company, Inc. (collectively, "Standard") for Intentional Interference with Performance of Contract (Claim VI), Intentional Interference with Prospective Economic Relations (Claim VII), and Unfair Competition (Claim VIII).

6.     The Utah Supreme Court has held that leave to amend should *not* be granted "if doing so would be futile."[9] Accordingly, the Greens' motion to amend argued that "Plaintiffs' amended claims are well-founded and amendment will not be futile."[10]

7.     The Motion to Amend was served on James Burton and Miles Romney, counsel for Standard, and Standard never challenged the Greens' arguments on futility.

8.     While the Motion to Amend was pending, Standard initiated a race to *res judicata*, by bringing a declaratory judgment action in federal court, pending before Judge David Sam.[11]

9.     On July 10, 2014, Judge Sam dismissed Standard's federal declaratory judgment action, concluding that "[a]s the facts stand in this case, Green Enterprises could not possibly have a

---

[8] *See* Doc. 55-2, Ex. 3 at 9:7-9, 15:14-21, 26:6-27:2, 30:23-31:10, 45:15-17, 45:21-46:15.
[9] *Jensen v. IHC Hospitals, Inc.*, 2003 UT 51, ¶ 139, 82 P.3d 1076.
[10] *See* Memo in Support of Motion for Leave to Amend Complaint, at 10, filed on Jan. 3, 2014, in the State Court Action.
[11] *See Standard Plumbing Supply Company, Inc. v. Garth O. Green Enterprises*, Case No. 2:14-cv-00238 DS (D. Utah).

trademark infringement claim against Standard Plumbing *under federal trademark law.*[12] Judge

Sam acknowledged that the Greens' unfair competition claim was not based on federal

trademark law, as the Greens argued, among other things, "that Standard [P]lumbing had

violated Utah's Unfair Competition Act."[13]

10.     On September 5, 2014, *after* Judge Sam's dismissal issued, the State Court held argument

on the Greens' Motion to Amend, and found:

> The added parties and added claims, as to those it's not my place at this point to
> determine that they are winners. I can look at whether or not they appear to be futile
> and *I don't find that at this point they are futile substantively.* I think based on the
> excerpts from the depositions that I read that *an argument for futility fails.*[14]

11.     In addition to its findings on futility, the State Court found that the Motion to Amend was

"not filed in bad faith."[15]

12.     After the Greens filed their Amended Complaint, on October 2, 2014, Standard filed a

Motion for Summary Judgment ("Motion for Summary Judgment").

13.     Following briefing, on February 5, 2015, the State Court entered separate orders with

respect to Standard's Motion for Summary Judgment.

14.     In its *Ruling and Order Regarding the Standard Plumbing Defendants' Motion for*

*Summary Judgment and the Plaintiffs' Rule 56(f) Motion*, the State Court made the following

conclusions and orders:

•      "Despite any claims made by [Standard] to the contrary, this is a motion for

summary judgment… This is clearly not a Rule 12 motion to dismiss; the court declines any

---

[12] *See* Case No. 2:14-cv-00238-DS, Doc. 32, at 5 (emphasis added).
[13] *Id.* at 2.
[14] *See* 9/5/2014 Hearing in State Court Action, at 71:18-23 (emphasis added), attached as Ex. 1.
[15] *See* Doc. 264-13 (9/17/2014 Order in State Court Action Denying Defendants' Motion for
Summary Judgment and Granting Plaintiff's Motion for Leave to Amend Complaint) at 2, ¶ 4.

invitation or argument to view it as a Rule 12 motion."[16]

• "[Standard's] Motion for Summary Judgment as to the sixth and seventh causes of action should be denied."[17]

• "[The Greens'] Rule 56(f) Motion as to the sixth and seventh causes of action should be granted."[18]

15.     In its *Ruling and Order Regarding Discovery-Related Motions*, the State court made the following conclusions and orders:

• "I do not consider [Standard's] motion to be a 12(b)(6) motion in any sense. This was a motion for summary judgment in all respects. Calling it a 12(b) motion while adding affidavits, deposition transcripts, and other evidentiary documents defies the meaning of a 12(b)(6) motion...."[19]

• "I did not convert this so-called 12(b)(6) motion to a motion for summary judgment, because it was, indeed, a motion for summary judgment in name and in substance."[20]

• "I deny [Standard's] motion [for protective order] on two grounds: … (2) on the merits, which is [Standard's] failure to identify their motion for what it is–a motion for summary judgment."[21]

• "The [Greens'] alternate Motion to Compel an Answer to the Amended Complaint is granted."[22]

---

[16] First February 5 Order at 1 n.1, attached as Exhibit 2.
[17] *Id*. at 4.
[18] *Id*.
[19] Second February 5 Order at 4, attached as Exhibit 3.
[20] *Id*.
[21] *Id*. at 5.
[22] *Id*. at 7.

- "The court orders [Standard] to file their answers to the amended complaint no later than Thursday, February 21, 2015."[23]

16.    On February 19, 2015, Standard filed its Answer to the Amended Complaint ("Answer").

17.    The day before, February 18, 2014, Standard filed a Renewed Motion for Summary Judgment or, Alternatively Motion to Reconsider ("Renewed Motion"), stating as its basis "the recent Utah Supreme Court opinion in *Eldridge v. Johndrow*, 2015 UT 21 (January 30, 2015)."[24]

18.    The Renewed Motion relied exclusively on the *Eldridge* decision and requested "that the Court, in light of the recently-issued *Eldridge* opinion form the Utah Supreme Court, reconsider its February 5, 2015 denial of Standard Plumbing's Motion for Summary Judgment as to the intentional interference claims."[25]

19.    Neither the Renewed Motion nor its supporting memorandum included any analysis under Rule 54(b), Rule 59(e), Rule 60(b), or other relevant authority regarding reconsideration.[26]

20.    With respect to the Greens' eighth cause of action for Unfair Competition, Judge Laycock had reserved ruling on Standard's Motion for Summary Judgment and the Greens' cross-motion under Rule 56(f) pending oral arguments.[27]

21.    On March 6, 2015, Judge Laycock heard argument on the Greens' unfair competition claim and had the following exchange with Standard's counsel:

> THE COURT: Maybe I missed it when I was reading because
> this is the last thing I was reading very quickly before
> you all came, do you have -- did you cite, and I didn't
> see one, did you cite a Utah case, not a federal case,
> but a Utah case that stated that there had to be an

---

[23] *Id*.
[24] Renewed Motion at 2, attached as Exhibit 4.
[25] Memorandum Supporting Renewed Motion, at 5-6, attached as Exhibit 5.
[26] *See generally* Renewed Motion and Memorandum Supporting Renewed Motion, Exs. 4 & 5.
[27] *See* Ex. 2, First February 5 Order, at 4-5.

```
ownership as it was looked at by Judge Sam in order to
satisfy 13-5a-101, etcetera?

MR. BURTON: I think Judge Sam's order specifically
addressed that. You can't -- you cannot assert a claim
of infringement --

THE COURT: But he's talking about federal law. I'm asking
about Utah state case law.

MR. BURTON: We didn't cite a case on that point. And I
don't know that a case on that point exists…[28]
```

22.    At the conclusion of the March 6, 2015 hearing, Judge Laycock took the unfair

competition claim under advisement and stated: "My clerk has been doing some looking while

we've been here to say that there's a void in the case laws to put it mildly."[29]

23.    Before Judge Laycock reached a decision on Standard's Renewed Motion or the Greens'

eighth cause of action for unfair competition, the case was removed to federal court.

24.    To summarize, at the time of removal, the state of the Greens' claims was as follows:

•    On September 5, 2014, Judge Laycock had concluded that the Greens' claims

against Standard were not "futile substantively" and "an argument for futility fails."

•    On February 5, 2015, Judge Laycock had concluded that Standard's Motion for

Summary Judgment was not a Rule 12(b)(6) motion to dismiss, and Judge Laycock had denied

Standard's Motion for Summary Judgment with respect to the sixth and seventh causes of action

for tortious interference.

•    On February 5, 2015, Judge Laycock had granted the Greens' Rule 56(f) motion

with respect to their tortious interference claims.

---

[28] *See* 3/6/2015 Hearing in State Court Action, at 63:1-14, attached as Exhibit 6.
[29] *Id*. at 88:6-9.

- On February 18, 2015, Standard filed its Renewed Motion with respect to the sixth and seventh causes of action, and did not invoke Rule 12(b)(6) in any way.

- On February 19, 2015, Standard answered the Greens' Amended Complaint, including the Greens' sixth, seventh and eighth causes of action.

- On March 6, 2015, Standard admitted that its Motion for Summary Judgment on the unfair competition claim was not based on any "Utah state case law."

- On March 6, 2015, Judge Laycock acknowledged that, with respect to the Greens' unfair competition claim, there was a "void" in the case law.

25.   Following removal, the case was assigned to Judge David Nuffer on August 4, 2015.[30]

26.   On February 4, 2016, Standard filed a Motion for Status Conference, which admitted that its "Original Motion for Summary Judgment" was "partially denied," and that "Plaintiffs' Rule 56(f) Motion" was "partially granted."[31]

27.   On February 29, 2016, Judge Nuffer took the Motion for Status Conference under advisement and ordered briefing with respect to the status of the case.[32]

28.   In response, Standard and the Harwards submitted briefs that referred back to Standard's Motion for Status Conference with respect to outstanding motions.[33]

29.   The Greens's brief explained how, on February 5, 2015, "the state court granted the Plaintiffs' Rule 56(f) motion, denied [Standard's] motion for summary judgment on two of three claims alleged in the amended complaint, and reserved ruling on the summary judgment against

---

[30] Docket No. 1.
[31] Docket No. 35 at 6, 8.
[32] Docket No. 37.
[33] Docket No. 38 at 3, Docket No. 40 at 7, ¶ 28.

Plaintiffs' eighth claim for relief."[34]

30.     None of the briefs submitted in response to Judge Nuffer's order (Doc. 37) claimed that Standard had an outstanding Rule 12(b)(6) motion.

31.     On March 14, 2016, Standard filed a Response Memorandum re: Status Conference, which did not challenge the Greens' characterization of events or outstanding motions.[35]

32.     Several months later, on December 27, 2016, and without any further briefing or oral argument, Judge Nuffer issued the 152 Order that was contrary to Judge Laycocks' rulings, without any acknowledgment of those rulings or discussion of why her findings/orders should be reversed under Rule 54(b), Rule 59(e), Rule 60(b), or other relevant authority.

33.     First, Judge Nuffer construed Standard's Motion for Summary Judgment (55 Motion) "as a motion to dismiss."[36] But Judge Laycock had already ruled that the 55 Motion was a motion for summary judgment, that it would not be considered as a motion to dismiss, and that it would be denied with respect to the Greens' sixth and seventh causes of action.[37]

34.     Having granted the 55 Motion under the 12(b)(6) standard, Judge Nuffer then denied the Greens' Rule 56(f) Motion (58 Motion) as moot.[38] But Judge Laycock had previously ruled that the 55 Motion was not a motion to dismiss and granted the 58 Motion with respect to the Greens' sixth and seventh causes of action.

35.     The 152 Order concluded that the Utah Supreme Court had combined the Greens' sixth and seventh claims – for Intentional Interference with Contract ("Contractual Interference") and

---

[34] Docket No. 39 at 6-7.
[35] Docket No. 41.
[36] Docket No. 152 at 3.
[37] *See, e.g.*, ¶ 15-16, *supra*, and the First and Second February 5 Orders, attached as Exs. 2-3.
[38] Docket No. 152 at 5.

Intentional Interference with Prospective Economic Relations ("Economic Interference") – into a

single tort and, more recently, eliminated "improper purpose" as an alternate way to establish the

second element, so that "to establish a claim for intentional interference with economic

relations," the Greens must show that (1) Standard intentionally interfered with their existing or

potential economic relations; (2) by improper means; (3) causing injury to the Greens.[39]

36.     The 152 Order applied those two rulings to dismiss the Greens' claims for Contractual

Interference and Economic Interference: explaining that a claim for actionable interference must

be "wrongful by some measure beyond the fact of the interference itself," i.e., "a party asserting

intentional interference must show more than merely a breach of contract," and concluding that

the mere allegation that Standard made an offer to the Harwards for the purpose of inducing

them to breach their agreement with the Greens failed to state "improper means," as such actions

were "the inevitable by-product of competition" which was "acceptable in the marketplace."[40]

37.     Finally, Judge Nuffer refused to allow the Greens any opportunity to amend their

complaint, stating in a footnote that "[t]here is also a significant likelihood that amendment

would be futile."[41] That finding was contradicted by Judge Laycock's prior ruling that the

Greens' claims were not substantively futile.[42]

38.     In dismissing the Greens' unfair competition claim, Judge Nuffer relied on the Tenth

Circuit's *Derma Pen* decision, which did not involve any claim for unfair competition under

---

[39] Doc. 152 at 11-12.
[40] *Id*. at 12-15.
[41] *Id*. at 20 n.111.
[42] See Ex. 1 (9/5/2014 Hrg.) at 71:18-23.

Utah state law or common law and was issued *after* the Amended Complaint was filed.[43]

39.     In his later-issued Rule 11 Sanctions Order, Judge Nuffer suggested several times that the Greens' unfair competition claim could have been cured by amendment.[44]

40.     In total, the 152 Order dismissed all of the Greens' claims under Rule 12(b)(6), even though Standard had already answered the Amended Complaint and had not brought any motion under Rule 12(c) for judgment on the pleadings.

41.     Prior to the 152 Order, Judge Kimball issued an order with respect to tortious interference claims in the case of *StorageCraft Tech. Corp. v. Persistent Telecom Sols., Inc.*, No. 2:14-cv-76-DAK (D. Utah).

42.     There, Judge Kimball explained that "[e]ven though it has described intentional interference with contractual relations claims as a subset of intentional interference with economic relations claims, in some cases, the Utah Supreme Court has provided independent tests for an intentional interference with contractual relations claim."[45]

43.     A few months later, on February 21, 2017, Judge Kimball issued another decision addressing claims for tortious interference in the case of *Advanced Recovery Systems, LLC v. American Agencies, LLC*, No. 2:13-cv-283-DAK (D. Utah).

___

[43] Doc. 152 at 16-17. The court in *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117 (10th Cir. 2014), reversed the denial of a preliminary injunction motion based on Lanham Act claims, as opposed to state law or common law claims. *Id.* at 1120 (asserting "Lanham Act claims" for "trademark infringement (15 U.S.C. § 1114) and unfair competition (15 U.S.C. § 1125(a))").

[44] *See* Doc. 161 at 10 ("the Greens were not automatically in violation of Utah Rule 11 by filing a claim for unfair competition after Judge Sam's ruling was issued"); *id.* at 11 ("[i]t is true that the unfair competition claim states conclusory grounds in addition to trademark infringement…"); *id.* at 11-12 ("if the Greens' counsel had included other *specific* grounds to support the unfair competition claim, perhaps the unfair competition claim would have been warranted"); and *id.* at 12-13 ("[a]fter the case was removed to federal court, there was an opportunity to add more specific grounds for the unfair competition claim").

[45] *StorageCraft*, 2016 WL 7155782, at *10.

44.     There, Judge Kimball explained that "under well-established Utah law, a claim for tortious interference with contract does not require proof of improper means. The mere inducement of a contract breach is sufficient."[46]

45.     Similar to Judge Kimball, Tenth Circuit precedent has both acknowledged that interference with prospective economic relations is different than interference with an existing contract and that unlike the former, the latter does not require "proof that the defendant acted for an improper purpose or by improper means."[47]

46.     On July 10, 2017, in *C.R. England v. Swift Transportation Co., et. al*, No. 2:14-cv-781-DB (D. Utah), Judge Benson found that there was a lack of "clear, controlling Utah law regarding whether improper means must be shown to succeed on a claim for tortious interference with contract," and that it was "unclear … what precisely is required to meet this element if it is to be applied to claims for intentional interference with contract," and therefore certified the following questions for the Utah Supreme Court: (1) Does the tort of intentional interference with contract require proof of "improper means"? and (2) If so, what constitutes "improper means" in the context of tortious interference with contract?[48]

47.     On July 26, 2017, the Utah Supreme Court accepted Judge Benson's certification order, and set November 2, 2017, as the due date for appellant's opening brief.[49]

## ARGUMENT

## I.    THE 152 ORDER WAS ERRONEOUS AND SHOULD BE RECONSIDERED.

At the June 16, 2017 status hearing, this Court indicated that it may consider Judge

---

[46] *Advanced Recovery*, 2017 WL 680391, at *6.
[47] *See American Airlines v. Christensen*, 967 F.2d 410, 413 n.4 (10th Cir. 1992).
[48] *See* Certification Order, attached as Exhibit 7, at 1, 4.
[49] *See C.R. England* Docket, attached as Exhibit 8.

13

Nuffer's rulings "law of the case." But "district courts generally remain free to reconsider their earlier interlocutory orders," and, thus, the 152 Order "may be revised at any time" before a final judgment.[50] *Rimbert* explained: "[t]he law of the case doctrine does not bind a judge to following rulings in the same case by another judge of coordinate jurisdiction as long as prejudice does not ensue to the party seeking the benefit of the doctrine."[51] In other words, "law of the case" does not prevent reconsideration of the 152 Order so long as this Court gives notice that it is "revisiting the decision … and the opportunity to be heard with respect to the new ruling."[52]

### A. The 152 Order Improperly Ignored And Disregarded Prior State Court Rulings.

"After removal, the federal court takes the case up where the State court left it off."[53] Judge Nuffer had power to "dissolve or alter prior state court orders after removal," but he could not disregard or ignore them.[54] In *Palzer*, the Tenth Circuit vacated a ruling that "manifest[ly] disregard[ed]" the state court's ruling prior to removal: "[W]e do not take lightly the notion that [the defendant] can avoid this suit in federal court after the state court expressly allowed the case to proceed," noting that result would be as "inequitable as it is incompatible with our discouragement of forum-shopping."[55] Here, Judge Nuffer "manifest[ly] disregard[ed]" several of Judge Laycock's prior rulings, resulting in error that prejudiced the Greens.

First, the 152 Order completely ignored Judge Laycock's ruling regarding the "futility"

---

[50] *Rimbert*, 647 F.3d at 1251 (applying Fed. R. Civ. P. 54(b)).

[51] *Id.* (quoting *United States v. Johnson*, 12 F.3d 1540, 1544 (10th Cir. 1993)).

[52] *Id.* In fact, the Tenth Circuit recently vacated a ruling where Judge Nuffer relied on law of the case in refusing to revisit a non-final summary judgment order. *See Arlin Geophysical v. United States*, --- Fed. App'x ----, 2017 WL 3530880, at *7 (10th Cir. Aug. 17, 2017).

[53] *Hart v. Capgemini U.S. LLC Welfare Ben. Plan. Admin. Document*, 547 Fed. App'x 870, 872 (10th Cir. 2013) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 436 (1974)).

[54] *Palzer v. Cox Oklahoma Telecom*, 671 Fed. App'x 1026, 1028 (10th Cir. 2016) (citing *Granny Goose*, 415 U.S. at 437).

[55] *Id.* (citing, *inter alia*, *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

of the Greens' claims.[56] Applying Utah case law, that ruling can be construed as confirmation that the Amended Complaint stated viable claims.[57] It was also improper to disregard the two February 5, 2015 orders, which made clear that the 55 Motion was <u>not</u> a 12(b)(6) motion[58] – indeed, Standard's motion did not even brief 12(b)(6).[59] Judge Nuffer's sole basis for applying 12(b)(6) was an October 2014 email exchange where Standard's counsel was attempting to evade the Greens' discovery efforts.[60] The fact that Standard filed its Answer two years earlier compounded Judge Nuffer's error in construing Docket 55 as a 12(b)(6) motion. Rule 12(b)(6) allows a party to bring a motion to dismiss for "failure to state a claim" but requires that any such motion "must be made *before* pleading."[61] Courts have applied this "plain language" strictly to hold that any 12(b)(6) motion "presented after the filing of an answer" is untimely.[62] So it was error to issue the 152 Order, especially without giving the Greens any opportunity to be heard on the issues. Finally, it was improper to deny as moot the relief that Judge Laycock had granted under Rule 56(d), allowing the Greens to conduct discovery before any dispositive order.[63]

Perhaps Standard will argue that all of these points are inconsequential because under Rule 54(b), Judge Nuffer "remain[ed] free to reconsider [Judge Laycock's] earlier interlocutory orders."[64] But the 152 Order failed to even acknowledge Judge Laycock's prior rulings; Judge

---

[56] Sep. 5, 2014 Tr. at 71:18-23.

[57] *See Jensen*, 2003 UT 51, at ¶ 139. ("[A] court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss.").

[58] Ex. 2 at 1 & n.1; Ex. 3 at 4-5 (Standard's motion "defies the meaning of a 12(b)(6) motion").

[59] *See* Doc. 55-1 at 11 (briefing only the "standard for summary judgment"). The 152 Order admits that the 55 Motion failed to meet the Rule 56 standard. Doc. 152 at 4 & n.17.

[60] Doc. 152 at 3-4 & n.16. Standard was seeking to avoid Judge Laycock's 9/17/2014 Order, which ordered the parties to "finalize discovery on an expedited basis." *See* Doc. 264-13 at 4.

[61] Fed. R. Civ. P. 12(b) (emphasis added).

[62] *See In re XP Entertainment, LLC*, 2013 WL 542249, at *3 (Bankr. D. Colo. Feb. 12, 2013).

[63] *See* Ex. 2 at 3-4, Ex. 3 at 7. Utah R. Civ. P. 56(d) is similar to Fed. R. Civ. P. 56(d).

[64] *Rimbert*, 647 F.3d at 1251.

15

Nuffer did not "revisit" those rulings but rather he disregarded them.[65] Judge Nuffer also failed to comply with Rule 54(b) to give the Greens notice and a hearing on these matters. It was error for Judge Nuffer to reopen significant issues that had been decided by Judge Laycock and do so without acknowledging her rulings or giving the Greens notice and a hearing on the issues.

### B. Even Assuming Rule 12(b)(6) Applies, The 152 Order Should Be Vacated.

Even under Rule 12(b)(6), the 152 Order should be vacated. Rule 8 only requires "a short and plain statement of the claim." Courts applying 12(b)(6) must "accept as true all well-pleaded factual allegations … and view them in the light most favorable to the [plaintiff]." Rule 12(b)(6) "does not require that [a complaint] establish a prima facie case …, only that [it] allege enough factual allegations … to 'set forth a plausible claim.'"[66] Because "the nature and specificity of the allegations required to state a plausible claim will vary based on context," courts recognize that a party can "nudge his claims across the line from conceivable to plausible" by stating "sufficient factual allegations 'to raise a right to relief above the speculative level.'"[67]

The Amended Complaint easily survives a 12(b)(6) motion. More than a "short and plain statement," it contains 32 pages – 182 paragraphs – of factual detail alleging (1) that the Greens had an enforceable agreement with the Harwards, on which they expended significant time and resources;[68] (2) that, after learning of the agreement between the Greens and the Harwards, Standard intentionally and improperly interfered, ultimately inducing the Harwards to breach their agreement with the Greens, depriving the Greens of the benefits they anticipated;[69] and (3)

---

[65] *See Palzer*, 671 Fed. App'x at 1028; *Hart*, 547 Fed. App'x at 872.
[66] *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1171-72 (10th Cir. 2015).
[67] *Id*.
[68] *See* Doc. 48 (Am. Compl.) ¶¶ 13, 49-55, 61, 64-68, 101, 115, 125, 132-37, 144-45, 154.
[69] *Id*. ¶¶ 13, 93, 96-102, 104, 107, 110-22, 155-61, 162-66, 167-74.

that Standard committed wrongful actions to prevent the Greens, as a competitor, from extending into its existing market and to damage the Greens' reputation, goodwill, and intellectual property, including trademark rights that they obtained in their agreement with the Harwards.[70]

Here, it is important to correct the 152 Order's errors in dismissing the Greens' sixth, seventh and eighth claims. It was error for the 152 Order to combine the sixth and seventh claims for Contractual and Economic Interference, respectively, into a single tort for "intentional interference with economic relations," with the same elements. In *Bunnell v. Bills*,[71] the Utah Supreme Court recognized Contractual Interference as its own "prima facie tort": "To recover, the plaintiff need only prove a prima facie case of liability, i.e., that the defendant intentionally interfered with his [contract] and caused him injury."[72] Twenty years later, in *Leigh Furniture & Carpet Co. v. Isom*, the Utah Supreme Court recognized Economic Interference as a separate cause of action where a plaintiff must "allege and prove more than the prima facie tort": "a claim is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself," which could be shown with either an "improper purpose" or "improper means."[73] In *Eldridge*, the Utah Supreme Court abandoned "improper purpose" as it relates to Economic Interference.[74] But it was error for the 152 Order to construe *Eldridge* as having anything to say about Contractual Interference, or to suggest that something more than inducing a third party's breach was needed to state a Contractual Interference claim.

In *American Airlines v. Christensen*, the plaintiff sued "on several theories, including

---

[70] Id. ¶¶ 13, 111-22, 159, 167-74.
[71] *Bunnell v. Bills*, 368 P.2d 597 (Utah 1962).
[72] *Leigh Furniture & Co. v. Isom*, 657 P.2d 293, 302-03 (Utah 1982); *Bunnell*, 368 P.2d at 602.
[73] *Leigh Furniture*, 657 P.2d at 302-04.
[74] *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015).

tortious interference with contract and unfair competition."[75] The Tenth Circuit acknowledged how "American demonstrated that the Defendants knew of the existence of … contracts … and nevertheless induced AAdvantage members to breach [them]." In granting summary judgment to the airline, the court pointed out how Contractual Interference (as opposed to Economic Interference) did not "require[] proof that the defendant acted 'for an improper purpose or by improper means.'"[76] Two important points: (1) *American Airlines* is consistent with *Bunnell* and *Leigh Furniture*, and contrary to the 152 Order, in distinguishing the elements of a claim for Contractual Interference from a Economic Interference claim; (2) *American Airlines* confirms that it was error for the 152 Order to require something more than a knowing inducement of a contractual breach to assert a claim for Contractual Interference.

In *Jones v. Intermountain Power Project*, which came before *American Airlines*, the Tenth Circuit explained how Contactual Interference, i.e., "interference with an *existing contract*," "does not require the plaintiff to prove that the defendant acted with an improper purpose or by improper means": "[A] plaintiff need only prove … that the defendant intentionally interfered with the plaintiff's existing contractual relations."[77] *Jones* confirms the same two points as *American Airlines*: (1) it was error for the 152 Order to hold that Contractual Interference and Economic Interference are the same claim; and (2) it was error to hold that the Greens failed to state a claim against Standard for Contractual Interference.

In *StorageCraft*, Judge Kimball did not cite *American Airlines* or *Jones*, but he took a similar approach in distinguishing Contractual Interference from Economic Interference,

---

[75] *American Airlines v. Christensen*, 967 F.2d 410, 412 (10th Cir. 1992).
[76] *Id*. at 412 n.4.
[77] *Jones v. Intermountain Power Project*, 794 F.2d 546, 554 (10th Cir. 1986).

observing that the Utah Supreme Court "has provided independent tests" for Contractual

Interference claims, which he illustrated by citing *Leigh Furniture*, which requires that a plaintiff

show that the defendant "induc[ed] or otherwise caus[ed] [a] third person not to perform the

contract," and *St. Benedict's*, which requires that a plaintiff show that the defendant

"intentionally and improperly cause[d] one of the parties not to perform the contract."[78] In

*Advanced Recovery*, Judge Kimball cited *Jones* and was more explicit: "under well-established

Utah law, a claim for [Contractual Interference] … does not require proof of improper means"

because "[t]he mere inducement of a contract breach is sufficient."[79]

Even if Judge Nuffer disagreed with Judge Kimball's rulings in *StorageCraft* and

*Advanced Recovery*, the 152 Order should have followed the Tenth Circuit precedent in *Jones*

and *American Airlines*. "[O]ne thing remains undebatable: '[a] district court is bound by

decisions made by its circuit court.'"[80] This Court should apply Judge Kimball's formulation

from *Advanced Recovery* ("[t]he mere inducement of a contract breach is sufficient") to reinstate

the Greens' sixth claim (Contractual Interference). And even if *Advanced Recovery* was

somehow distinguishable, the Court should reinstate the Greens' sixth and seventh claims as they

sufficiently allege that Standard engaged in "wrongful" actions which constitute "improper

means" under *Leigh Furniture* and *St. Benedict's*, and also allege improper means in the form of

unfair competition.[81] Here, Utah courts recognize that "improper means" includes anything

---

[78] *StorageCraft.*, 2016 WL 7155782, at *10.

[79] *Advanced Recovery*, 2017 WL 680391, at *6 ("[i]mproper means is only necessary for Economic Interference claim).

[80] *Guzzo v. Mead*, 2014 WL 5317797, at *1 (D. Wyo. Oct. 17, 2014) (quoting *Dobbs v. Anthem Blue Cross and Blue Shield*, 600 F.3d 1275, 1279 (10th Cir. 1990)).

[81] See Am. Compl. ¶¶ 13, 111-22, 159, 167-74.

"contrary to law, such as violations of statutes, regulations, or recognized common-law rules,"[82] and that a wide variety of unlawful, unfair or fraudulent actions involving a competitor may qualify as grounds for an unfair competition claim.[83] Several cases illustrate how interference claims can constitute unfair competition.[84] The 152 Order dismissed the Greens' eighth claim "[b]ecause one of the essential elements of a trademark infringement claim is ownership, and [the Greens] cannot establish ownership." But only one paragraph in that mentions trademark infringement. The others allege unfair competition, including the Greens' Contractual and Economic Interference claims, and it was error to dismiss those claims pursuant to 12(b)(6).[85]

## C. Judge Nuffer Erred In Applying *Eldridge* and *Derma Pen*.

The 152 Order's reliance on *Eldridge* and *Derma Pen* to dismiss the Greens' claims was misplaced. First, it was error to conclude that because Greens' agreement with the Harwards did not close, the "the trademark rights never transferred" to the Greens.[86] But unlike *Derma Pen*, the Greens had a binding agreement with the Harwards, offer and acceptance confirmed, and they alleged ownership, without any conditional option or licensee involved. Accordingly, the Greens properly alleged that their agreement with the Harwards gave them "exclusive rights, among other things, to [the Harwards'] trademarks," and those trademarks "belong[ed] to [the Greens]." It was error for the 152 Order to dismiss the Greens' unfair competition claim.

It was further error to retroactively apply *Eldridge* and *Derma Pen*. Those case were both

---

[82] *Leigh Furniture*, 657 P.2d at 308; *St. Benedict's Dev. Co.*, 811 P.2d at 203.
[83] *Budget Sys., Inc. v. Budget Loan & Fin. Plan*, 361 P. 2d 512, 515 (Utah 1961); *Allen's Products Co. v. Glover*, 414 P.2d 93, 95-96 (Utah 1966) .
[84] *See Allied World Nat'l Assur. Co. v. Monavie, Inc.*, 2013 WL 3716530 (D. Utah 2013); *I-Link Inc. v. Red Cube International Ag*, 2001 WL 741315 (D. Utah 2001); *Dubuque Products Inc. v. Lemco Corp.*, 227 F. Supp. 108, 116 (D. Utah 1963).
[85] Unfair competition includes a misappropriation of goodwill. *Budget Systems*, 361 P. 2d at 512.
[86] Doc. 152 at 17-18.

20

decided *after* the Greens filed their Amended Complaint in September 2014. *Derma Pen* issued

on December 9, 2014,[87] and *Eldridge* issued on January 30, 2015.[88] *Eldridge* should not apply

retroactively, as it significantly altered the state law legal landscape and the Greens were

justified in relying on the state of the law in 2013 and 2014 to assert their claims for interference

and unfair competition. The same arguments apply even more forcefully to *Derma Pen*, as the

case was pending in State Court when that ruling issued. *Derma Pen* is further inapplicable

because it does not involve any claims for unfair competition under state or common law.

       In rejecting the Greens' argument about retroactive application, Judge Nuffer failed to

aknowledge that the 55 Motion was fully briefed *before Eldridge*, and by that time, Judge

Laycock had already denied the 55 Motion with respect to the sixth and seventh claims. It was

wrong for Judge Nuffer to conclude that the Green' reliance "on pre-*Eldridge* law was … was

not justifiable after" they learned that the law had changed.[89] From early 2013, when the Greens'

filed their original complaint, to early 2014, when the Greens filed their motion to amend, to

February 10, 2015, when *Eldridge* was published, the Greens have incurred significant time and

expenses in pursuing their claims, including the interference claims.

**D. The 152 Order Erroneously Refused To Let The Greens Amend Their Claims.**

       The 152 Order erroneously refused to let the Greens amend their claims. The Rules

provide that motions to amend should be liberally granted. The 152 Order suggests that the

Greens should have amended prior to December 27, 2016. But that ignores the fact that Judge

Nuffer failed to give the Greens notice that he was "revisiting the decision … and the

---

[87] *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117 (10th Cir. 2014).
[88] *Eldridge v. Johndrow*, 2015 UT 21, 345 P.3d 553.
[89] Docket 231 at 14.

opportunity to be heard."[90] And, prior to the 152 Order, Judge Laycock had already denied the

55 Motion with respect to the interference claims and granted the Greens' 56(d) motion, enabling

them to conduct discovery before any dispositive ruling. The 152 Order should be reconsidered

to give the Greens an opportunity to amend their claims against Standard, especially in light of

the fact that the Greens have been engaged in extensive discovery since early 2017.

### E.  The 152 Order Should Be Reconsidered Under Vacatur Based On Judicial Bias.

Finally, this Court should reconsider the 152 Order under the vacatur standard that

applies when a judge disqualifies or recuses. In determining whether to reconsider prior orders

made by a disqualifying judge, the Supreme Court has recommended that a court "consider the

risk of injustice to the parties …, the risk that the denial of relief will produce injustice in other

cases, and the risk of undermining the public's confidence in the judicial process."[91] In this case,

a few weeks after the 152 Order, Judge Nuffer granted Standard's Rule 11 motion against the

Greens' counsel, Marcus Mumford, which led to an order to pay sanctions, the denial of a

motion to stay that order, and ultimately an order of contempt, even after Mr. Mumford provided

unrebutted sworn statements regarding his inability to pay the sanctions amount.[92] On May 5,

2017, Judge Nuffer barred Mr. Mumford from further action or appearance in this case until

further order, and on May 9, 2017, Judge Nuffer recused from this matter and filed a formal

complaint against Mr. Mumford, alleging unethical and unprofessional conduct in matters

reaching back into 2016, for example, *United States v. Ammon Bundy et al.*, 3:16-cr-00051-BR

(D. Or.), which resulted in the October 2016 acquittal of Mr. Mumford's controversial client,

---

[90] *Rimbert*, 647 F.3d at 1251 (applying Fed. R. Civ. P. 54(b)).
[91] *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988).
[92] Docs. 161, 204, 248, 352.

Ammon Bundy, and *United States v. Johnson, et al.*, 2:11-cr-00501-DN-PMW (D. Utah), which resulted in the March 2016 acquittal of Mr. Mumford's client, Scott Leavitt, and where two jurors came forward after the trial with sworn affidavits describing the level of Judge Nuffer's animus and bias against Mr. Mumford and his client.[93] The fact that Judge Nuffer's complaint raises issues from early 2016 proves the need to reconsider the 152 Order, among other things.[94]

## II.    THIS CASE SHOULD BE STAYED PENDING OUTCOME OF THE *C.R. ENGLAND* CASE PENDING BEFORE THE UTAH SUPREME COURT.

In the event the Court is unwilling to reconsider the 152 Order and reinstate the Greens' claims, it should stay proceedings pending the outcome of *C.R. England v. Swift Trucking* in the Utah Supreme Court. That case promises to provide a final resolution of the disagreement that has developed between *Jones*, *American Airlines*, and Judge Kimball's decisions in *StorageCraft* and *Advanced Recovery*, on the one side, and Judge Nuffer's 152 Order, on the other. By granting a stay pending the *C.R. England* case, the Court can assure that the rulings in this case are consistent with clear and controlling law, that all claims are tried at the same time, and to avoid situations that could develop if this case were to go to trial only to later find out that the Utah Supreme Court agreed with the Greens' posititition.. This case is why the Supreme Court affirmed a court's inherent "power to stay proceedings … [and] to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[95]

---

[93] Doc. 358. See also Doc. 237-1 and 239 in *Utah Republican Party v. Herbert*, Case No. 2:14-cv-00876-DN (D. Utah) (juror affidavits), and Tom Harvey, Federal Judge Was Biased, Jurors In Jeremy Johnson Trial Say, Salt Lake Tribune, June 30, 2016, available at http://archive.sltrib.com/article.php?id=4064521&itype=CMSID
[94] *See Rohrbach v. AT & T Nassau Metals Corp.*, 915 F. Supp. 712, 718 (M.D. Penn. 1996) (vacating prior actions of disqualifying judge); *Chambers v. Kansas City Ks. Comm. College*, 2014 WL 326021, at *3 (D.Kan. 2014) (vacating prior judge's summary judgment order).
[95] *Landis*, 299 U.S. at 254.

**CONCLUSION**

For the foregoing reasons, the Greens' motion to reconsider the 152 Order should be granted, or, in the alternative, proceedings should be stayed pending the Utah Supreme Court's answer to questions certified by Judge Benson in the matter of *C.R. England v. Swift Transportation*, No. 20170561 (Utah).

DATE: October 18, 2017.

**MUMFORD PC**

/s/ Marcus R. Mumford
Marcus R. Mumford