Marcus R. Mumford (12737)
MUMFORD PC
405 South Main Street, Suite 850
Salt Lake City, Utah 84111
Telephone: (801) 428-2000
mrm@mumfordpc.com
*Attorney for Garth O. Green Enterprises, Inc., Garth Green and Michael Green*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERPRISES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> RANDALL HARWARD, et al, <br><br> Defendants. | **MOTION TO RECONSIDER JUDGE NUFFER'S JANUARY 18, 2017 SANCTIONS ORDER [DOC. 161]** <br><br> Case No. 2:15-cv-00556-CW-EJF <br><br> District Judge Clark Waddoups <br> Magistrate Judge Evelyn J. Furse |

**RELIEF REQUESTED AND GROUNDS FOR RELIEF**

I respectfully request that this Court reconsider Judge Nuffer's January 18, 2017 Order

(the "Sanctions Order," Docket No. 161), imposing sanctions against me under Utah R. Civ. P.

11 for having filed a state law claim for unfair competition against Standard Plumbing Supply

Company, Inc. ("Standard"), *after getting leave* from the Utah state court where the case was

then-pending *to do exactly that*. Rule 54(b) of the Federal Rules of Civil Procedure allows courts

to reconsider non-final orders at any time before a final judgment,[1] "even when a case is

---

[1] *See United States v. Koerber*, 966 F. Supp. 2d 1207, 1211 (D. Utah 2013) (entertaining motion for reconsideration under Fed. R. Civ. P 54(b) (citing *Raytheon Constructors v. Asarco Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003))). The Tenth Circuit has acknowledged that "law of the case … 'is a flexible [rule] that allows courts to depart from erroneous prior rulings, as the underlying policy … is one of efficiency, not restraint of judicial power.'" *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1224-25 (10th Cir. 2007) (quotation omitted).

reassigned from one judge to another in the same court."[2] Here, this Court should reconsider
Judge Nuffer's Sanctions Order because, among other things, it:

♦   improperly ignored or disregarded the Utah state court's prior findings that the unfair
    competition claim was not "substantively futile" or brought in "bad faith";

♦   misconstrued the substance of the Amended Complaint's factual allegations and the
    substance of an order issued by Judge David Sam dismissing Standard's prior declatory
    judgment action (filed as part of an admitted forum-shopping strategy) to conclude
    erroneously that the unfair competition claim had "no basis in fact or law";

♦   retroactively applied case law handed down after the unfair competition claim was filed
    to conclude improperly that the claim was "frivolous" and "not a reasonable extension or
    modification of the law" *when filed*; and

♦   improperly relied on outdated case law applying a pre-1991 amendment version of the
    federal rules to conclude that Rule 11 sanctions were "mandatory."

The combination of these legal and factual errors with the additional facts that have come to light
since the Sanctions Order was entered, including the extent of Judge Nuffer's improper bias
against me personally based on extrajudicial events, show why this Court should vacate the
Sanctions Order to correct an erroneous ruling and prevent a manifest injustice.[3]

## RELEVANT FACTS

1.      On February 1, 2013, Garth O. Green Enterprises, Inc. ("Green Enterprises," or, with
Garth Green and Mike Green, the "Greens"), initiated this lawsuit in Utah's Fourth Judicial
District Court, Case No. 130400184 (the "State Court Action"), seeking to enforce its agreement

---

[2] *Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (citation omitted).
[3] *See Servants of Paracletes v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

to purchase and/or lease the assets of Harward Irrigation and Grass Valley (collectively, the "Harwards"), made when the Harwards accepted – via a January 2, 2013, email stating, "[t]he answer is yes"[4] – the Greens' self-described "final offer" dated December 31, 2012, which had instructed the Harwards: "Please respond with a simple YES or NO by January 2nd."[5]

2.      The complaint alleged that the Harwards breached on January 9, 2013, when they refused to memorialize the terms of their binding agreement with Green Enterprises, after being approached by Richard Reese, owner of Standard Plumbing Supply Company, Inc. (collectively, "Standard"), who induced the Harwards to breach their agreement with the Greens and sell/lease their business assets to Standard instead.

3.      In September 2013, Green Enterprises took the deposition of Reese in the State Court Action, where Reese admitted, *inter alia*: (a) that he approached the Harwards with a competing offer after someone told him the Harwards were "going to sell" to the Greens; (b) that he had been shown the January 2, 2013 email evidencing the Harwards' acceptance of the Greens' Final Offer; (c) that he intentionally interfered by having his company, Standard, make a competing offer to the Harwards; and (d) that his reasons for interfering were anticompetitive – Green Enterprises was Standard's "competitor" and, Reese said, "we, of course, would not want to have a competitor extend into the marketplace" by purchasing the Harwards.[6]

4.      Based on the depositions of Reese and others, on January 3, 2014, I filed a motion on behalf of the Greens to amend their complaint to state, *inter alia*, a cause of action against Standard for unfair competition under Utah statute, U.C.A. § 13-5a-102, and the common law.

---

[4] *See* Docket No. 55-2, Exhibit 7.
[5] *See* Docket No. 55-2, Exhibit 6. The agreement included the Harwards' trademark rights. *Id.*
[6] *See* Docket No. 55-2, Exhibit 3, at 9:7-9, 15:14-21, 26:6-27:2, 30:23-31:10, 45:15-46:15.

5.      The Utah Supreme Court has held that leave to amend should *not* be granted "if doing so would be futile."[7] Accordingly, the Greens' motion to amend argued that "Plaintiffs' amended claims are well-founded and amendment will not be futile."[8]

6.      The motion to amend was served on Standard, and time records reveal how its attorneys began coordinating case strategies with the Harwards from that point, including legal research regarding the motion to amend, which Standard never challenged.[9]

7.      Instead, while the Motion to Amend was pending, Standard assisted the Harwards in filing a motion to release lis pendens,[10] which was heard and denied by Judge Claudia Laycock in a hearing held March 18, 2014.[11]

8.      In denying that motion to release lis pendens, Judge Laycock found that the Greens had "established by a preponderance of the evidence the probable validity of" their contract claim, i.e., the "real property claim that is the subject of the lis pendens."[12]

9.      Judge Laycock found that the contract was enforceable in terms of a valid and enforceable offer and acceptance, explaining:

> The Court finds that the terms exchanged in Plaintiff's December 31, 2012 Final Offer found in the "Rents" section were sufficiently specific, and that there was sufficient manifestation of assent in Defendants' January 2, 2013 email, such that an objective, reasonable person would have been justified in understanding that an enforceable agreement had been made to lease the Properties. Accordingly, the lis

---

[7] *Jensen v. IHC Hospitals, Inc.*, 2003 UT 51, ¶ 139, 82 P.3d 1076.
[8] *See* Memo in Support of Motion for Leave to Amend Complaint, at 10, filed on Jan. 3, 2014, in the State Court Action.
[9] *See* Standard's attorney time records that were originally designated "Attorney's Eyes Only" and filed under seal, as Docket No. 172-11, but later de-designated, and recently filed as Docket No. 520-1, at 1-9.
[10] *See id.*
[11] April 3 2014 Order, filed in this action previously as Docket No. 264-10.
[12] *Id.* at 3. Judge Laycock also denied the Harwards' request that the Greens post a bond to maintain their lis pendens and denied the Harwards' request for costs and attorneys' fees.

pendens Plaintiff has filed against those five (5) parcels may remain.[13]

10.     Although Judge Laycock's findings were limited to the order denying the motion to

release lis pendens, Standard obviously considered them as the proverbial 'writing on the wall'

regarding the Greens' substantive claims, and from that point began coordinating efforts with the

Harwards to get the case out from before Judge Laycock.[14]

11.     Among other things, Standard attempted to engage in procedural "fencing" and a race to

*res judicata* by filing a Lanham Act declaratory judgment action in federal court, captioned as

*Standard Plumbing Supply Co., Inc. v. Garth O. Green Enterprises, Inc.*, Case No.

2:14-cv-00238 DS (D. Utah) (hereinafter, the "Lanham Act Action").

12.     But the unfair competition claim filed with the motion for leave to amend in the State

Court Action was a state law claim brought under Utah statute, Utah Code Ann. § 13-5a-102(4),

and common law. Accordingly, I filed a motion to dismiss Standard's Lanham Act Action on

behalf of the Greens, arguing among other things that pursuant to the well-settled principle that a

plaintiff is "the master of the claim; he or she may avoid federal jurisdiction by exclusive

reliance on state law," the Greens' complaint asserted state law claims exclusively, and that

"'[t]he Lanham Act does not confer jurisdiction simply because the subject in dispute is a

trademark.'"[15] I pointed out how, in *State Farm Fire & Cas. Co. v. Mhoon*, the Tenth Circuit

warned against parties using a declaratory action "merely for the purpose of 'procedural fencing'

---

[13] *Id*.

[14] See Docket 520-1, at 2-9 and 30-37.

[15] See Lanham Act Action, Docket No. 20 & 27 (citing *Nicodemus v. Union Pacific Corp.*, 440
F.3d 1227, 1232 (10th Cir. 2006), and quoting *Gibraltar, P.R., Inc. v. Otoki Grp., Inc.*, 104 F.3d
616, 619 (4th Cir. 1997)). The *Gibraltar* case was cited favorably by the Tenth Circuit in *Image
Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1051 n.10 (10th Cir. 2006).

5

or 'to provide an arena for a race to *res judicata*.'"[16]

13.     On July 10, 2014, Judge Sam dismissed Standard's Lanham Act Action for a "lack of subject matter jurisdiction [under federal trademark law] and a lack of justiciability."[17] Judge Sam recognized that the Greens' claim was based on Utah state law, as opposed to the Lanham Act, and dismissed based on "federal trademark law" and "the longstanding principle of justiciability prohibits courts from issuing advisory opinions."[18]

14.     On September 5, 2014, *after* Judge Sam had dismissed Standard's Lanham Act Action, and the case was remanded to Utah state court, Judge Laycock was finally able to hold a hearing on the motion to amend that I had filed in January 2014, where she made the following findings:

> The added parties and added claims, as to those it's not my place at this point to determine that they are winners. I can look at whether or not they appear to be futile and *I don't find that at this point they are futile substantively.* I think based on the excerpts from the depositions that I read that *an argument for futility fails.*[19]

15.     In addition to finding that the Greens' claims were not futile, Judge Laycock found that the Motion to Amend was "not filed in bad faith."[20]

16.     After the Greens filed their Amended Complaint, Standard filed a Motion for Summary Judgment and gave notice of its intent to file a Rule 11 motion for sanctions, taking the position that Judge Sam's July 10, 2014 Order prohibited my clients from pursuing their state law unfair competition claim against Standard and Reese.

---

[16] Lanham Act Action, Docket Nos. 20 & 27 (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983-84 (10th Cir. 1994)).

[17] *See* Lanham Act Action, Docket 32 at 5.

[18] *Id*. at 2-5.

[19] *See* excerpt of the 9/5/2014 Hearing in State Court Action, filed as Docket No. 504-1 in this action, at 71:18-23 (emphasis added).

[20] *See* Docket No. 264-13 (9/17/2014 Order in State Court Action Denying Defendants' Motion for Summary Judgment and Granting Plaintiff's Motion for Leave to Amend) at 2, ¶ 4.

17.     On October 27, 2014, I responded to Standard's threatened motion under Rule 11 with a

seven-page letter, which, among other things, explained some of the factual and legal bases for

the Greens' unfair competition claim, quoted an article published in the *Federal Rules Decisions*

criticizing lawyers who overuse Rule 11 motions as a "form of emphatic behavior" – akin "to

raising one's voice [or] pounding the table" – and pointed out how Standard's lawyers had been

admonished by a federal judge in Florida for being involved in similiarly questionable Rule 11

motion practice: *PPS Data, LLC v. Athenahealth, Inc*., 2012 WL 601208, at *2 (M.D. Fla. Feb.

23, 2012) (admonishing Standard's attorneys for "launching a litigation nuclear arsenal," which

included Rule 11 motions, that created "a Rube Goldberg-like web of papers").[21]

18.     In February 2015, Judge Laycock denied Standard's Motion for Summary Judgment with

respect to the Greens' sixth and seventh causes of action, and set a hearing for March 6, 2015, to

hear arguments regarding the Greens' eighth cause of action (for unfair competition).[22]

19.     On March 6, 2015, Judge Laycock heard argument on the unfair competition claim and

had the following exchange with Standard's counsel, who admitted not having any Utah case law

in support of his argument that the unfair competition claim violated Judge Sam's July 10, 2014

Order:

```
        THE COURT: Maybe I missed it when I was reading because
        this is the last thing I was reading very quickly before
        you all came, do you have -- did you cite, and I didn't
        see one, did you cite a Utah case, not a federal case,
        but a Utah case that stated that there had to be an
```

---

[21] This letter was attached to the opposition I filed to Standard's motion, originally filed with the
state court but filed here as Docket No. 57-2 at 17-23 (quoting, *inter alia*, Mark S. Stein, *Rule 11
In The Real World: How The Dynamics Of Litigation Defeat The Purpose Of Imposing Attorney
Fee Sanctions For The Assertion Of Frivolous Legal Arguments*, 132 F.R.D. 309, 315 (1990)).
[22] Judge Laycock's First 2/5/2015 Order, filed as Docket No. 504-2 in this action, at 1 n.1 & 4-5.
Among other things, Judge Laycock also rejected Standard's attempt to avoid discovery by
arguing that its Motion for Summary Judgment was a Rule 12 motion. *Id.*

```
ownership as it was looked at by Judge Sam in order to
satisfy 13-5a-101, etcetera?

MR. BURTON: I think Judge Sam's order specifically
addressed that. You can't – you cannot assert a claim of
infringement –

THE COURT: But he's talking about federal law. I'm asking
about Utah state case law.

MR. BURTON: We didn't cite a case on that point. And I
don't know that a case on that point exists…[23]
```

20.    At the conclusion of the March 6, 2015 hearing, Judge Laycock took the unfair

competition claim under advisement and stated: "My clerk has been doing some looking while

we've been here to say that there's a void in the case law to put it mildly."[24]

21.    Before Judge Laycock issued any ruling on the Greens' eighth cause of action for unfair

competition or Standard's motion for sanctions, Standard executed what their attorney time

records reveal to be a coordinated "strategy" to "utiliz[e] the bankruptcy [eventually filed by

Grass Valley] as a vehicle" to remove the case and get out from in front of Judge Laycock.[25]

22.    To summarize, by the time of the May 2015 removal of this case from state court:

•      Judge Laycock had concluded – as stated at the September 5, 2014 hearing on the

motion to amend – that the Greens' unfair competition claim against Standard was not "futile"

and not filed in "bad faith."

•      Judge Laycock had denied Standard's Motion for Summary Judgment and granted

the Greens' motion under then-Utah R. Civ. P. 56(f)[26] with respect to the sixth and seventh

---

[23] *See* 3/6/2015 Hrg. excerpt from State Court Action, filed here as Docket No. 504-6, at 63:1-14.
[24] *Id*. at 88:6-9.
[25] Docket No. 520-1, at 32-37.
[26] Utah R. Civ. P. 56(f) was essentially identical to the current version of Fed. R. Civ. P. 56(d).

causes of action for tortious interference, having reserved ruling on those matters with respect to the eighth claim (for unfair competition).

- Standard had admitted at the March 6, 2015 hearing that it could not cite any Utah authority in support of its argument that the unfair competition claim was precluded by Judge Sam's order.

- Judge Laycock had appropriately construed Judge Sam's order as based on federal law, and took the matter regarding the unfair competition claim under advisement after sharing her preliminary conclusions regarding the "void" in law underlying Standard's position.

23.     Following removal, the case was assigned to Judge David Nuffer on August 4, 2015.[27]

24.     On December 27, 2016, Judge Nuffer construed Standard's motion for summary judgment as a Rule 12 motion to dismiss on the Greens' tortious interference and unfair competition claims.[28] In doing so, Judge Nuffer contradicted several of Judge Laycock's rulings without any acknowledgement or discussion of those rulings.

25.     First, even though Judge Laycock had rejected Standard's argument that the motion was brought under Rule 12(b)(6),[29] Judge Nuffer held that it was a Rule 12 motion, essentially ignoring Judge Laycock's conclusions with respect to the issue.[30]

26.     Judge Nuffer also ignored Judge Laycock's rulings in dismissing the Greens' sixth and seventh causes of action. Where Judge Laycock granted the Greens' then-Rule 56(f) motion which sought further discovery before any ruling on the motion for summary judgment, Judge

---

[27] Docket No. 1.
[28] Docket No. 152.
[29] 2/5/2015 Order, filed as Docket No. 504-2 in this action, at 1 n.1. The holding is significant because Judge Laycock granted the Greens' motion under then-Rule 56(f), at least with respect to the sixth and seventh claims for tortious interference. *Id*. at 4-5.
[30] Docket No. 152 at 3.

Nuffer ignored Judge Laycock's ruling and denied that motion as moot.[31]

27.     Judge Nuffer refused to allow the Greens any opportunity to amend their complaint, stating in a footnote that "[t]here is also a significant likelihood that amendment would be futile."[32] That finding misconstrued the substantive allegations in the complaint regarding the unfair competition claim and was contradicted, *inter alia*, by Judge Laycock's prior ruling that the Greens' claims were not substantively futile,[33] and by Judge Nuffer's later ruling in the Sanctions Order where he acknowledged that the unfair competition claim could have been cured by amendment.[34]

28.     In dismissing the Greens' unfair competition claim, Judge Nuffer relied on the Tenth Circuit's *Derma Pen* decision, which did not involve any claim for unfair competition under Utah state law or common law and was issued *after* the Amended Complaint was filed.[35]

29.     On January 18, 2017, Judge Nuffer issued the Sanctions Order, which acknowledged that "Utah Rule 11 and Federal Rule 11 require, among other things, that filings are warranted by existing law."[36] But the Sanctions Order relied on the *Derma Pen* case, which was issued *after* the Amended Complaint was filed and *after* the Greens opposed Standard's Motion, to conclude that the unfair competition claim in the Amended Complaint was based solely on trademark infringement, and that claim was frivolous based on Judge Sam's July 10, 2014 Order in that

---

[31] Compare 2/5/2015 Order at 4 with Docket No. 152 at 5, 15.

[32] Docket No. 152 at 20 n.111.

[33] *See* excerpt of 9/5/2014 Hearing in State Court Action, filed as Docket No. 504-1 in this action, at 71:18-23.

[34] *See* Docket No. 161 at 10-13, and *infra*, note 38.

[35] Docket No. 152 at 16-17. The court in *Derma Pen, LLC v. 4EverYoung Ltd*., 773 F.3d 1117 (10th Cir. 2014), reversed the denial of a preliminary injunction motion based on Lanham Act claims, as opposed to state or common law claims. *Id*. at 1120 (asserting "Lanham Act claims" for "trademark infringement (15 U.S.C. § 1114) and unfair competition (15 U.S.C. § 1125(a))").

[36] Docket No. 161 at 1-2.

there was no support of it in the law (at the time it was filed) and that the Greens' argument was not a reasonable extension or modification of existing law.[37]

30.     The Sanctions Order does not acknowledge or distinguish Judge Laycock's ruling granting the Greens' leave to amend their complaint to state the unfair competition claim, among other things, after finding that claim was not substantively "futile" or filed in "bad faith."

31.     In the Sanctions Order, Judge Nuffer suggested on several occasions that the Greens' unfair competition claim could have been cured by amendment, as he construed the purported sole basis for the unfair competition claim to be trademark infringement.[38]

32.     In the Sanctions Order, Judge Nuffer erroneously held that "sanctions are mandatory."[39]

33.     In so doing, he cited federal case law that applied an out-of-date version of Fed. R. Civ. P. 11. Specifically, Judge Nuffer included in the Sanctions Order a large block quote from *Harrison v. Luse*, 760 F.Supp. 1394, 1399 (D. Colo. 1991), which concluded that "[o]nce a violation of Rule 11 has been found, sanctions are mandatory."[40] But the *Harrison* case **quoted from the post-1983, but pre-1993 version of Fed. R. Civ. P. 11** – in particular, the portion of that version of the rule stating that "[i]f a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, **shall impose** upon the person who

---

[37] *Id*. at 10-14.

[38] *See* Docket No. 161 at 10 ("the Greens were not automatically in violation of Utah Rule 11 by filing a claim for unfair competition after Judge Sam's ruling was issued"); at 11 ("[i]t is true that the unfair competition claim states conclusory grounds in addition to trademark infringement…"); at 11-12 ("if the Greens' counsel had included other *specific* grounds to support the unfair competition claim, perhaps the unfair competition claim would have been warranted"); at 12-13 ("[a]fter the case was removed to federal court, there was an opportunity to add more specific grounds for the unfair competition claim").

[39] Docket No. 161 at 14.

[40] *Id*. at 13.

signed it, a represented party, or both, an appropriate sanction…."[41] The advisory committee

notes to the 1983 amendments of Fed. R. Civ. P. 11 explained that the words "shall impose" in

that sentence "focus the court's attention on the need to impose sanctions."[42]

34.    But in 1993, Fed. R. Civ. P. 11 was amended to eliminate the language that made

sanctions mandatory.[43] The advisory committee notes accompanying the 1993 amendments

explain how they gave a court greater discretion in deciding whether a violation has occurred and

"what sanctions, if any" should be imposed.[44]

35.    The Utah version of Rule 11 was amended in 1997 to conform to the post-1993 version

of federal Rule 11.[45]

36.    Shortly after the Sanctions Order, having concluded erroneously that sanctions were

"mandatory," Judge Nuffer imposed sanctions in the amount of $25,115.74, and ordered that I

pay that amount within 28 days.[46]  When I moved to stay that order based on an inability to pay,

and after Standard refused my efforts to satisfy the sanctions award pursuant to a monthly

payment plan – I sent Standard two checks in March and April 2017 totaling $5,000, but

Standard refused to cash them – Judge Nuffer eventually held me in contempt for having failed

---

[41] *Harrison v. Luse*, 760 F.Supp. 1394, 1399 (D. Colo. 1991) (emphasis added); see also Docket No. 161 at 13.
[42] Fed. R. Civ. P. 11, Adv. Comm. Notes (1983 Amend.).
[43]

"Under the new rule, … [u]pon finding a violation, the court 'may' impose specific sanctions. In a significant change from former Rule 11, sanctions are no longer mandatory."

Cynthia A. Leiferman, *The 1993 Rule 11 Amendments: The Transformation Of The Venomous Viper Into The Toothless Tiger?*, 29 Tort & Ins. L. J. 497, 501-02 (1994).
[44] Fed. R. Civ. P. 11, Adv. Comm. Notes (1993 Amend.).
[45] Utah R. Civ. P. 11, Adv. Comm. Notes.
[46] Docket No. 204.

to pay the entire amount, notwithstanding two sworn and unrebutted declarations explaining my inability to pay the total amount.[47]

37.     My motion to stay pointed out how Judge Nuffer had, in fact, previously stayed the sanctions order he imposed in the *Derma Pen* case, pending appeal, and it was supported by a declaration of hardship that was unrebutted.[48] Judge Nuffer acknowledged that I had "stated several legitimate reasons this sanctions award imposes a burden" but inexplicably denied my motion based on a purportedly "thorough review" – of what, Judge Nuffer does not specify – that "show[ed] [that] Mr. Mumford has not exhausted all avenues to pay this sanctions award."[49] In particular, Judge Nuffer never explained what other "avenues" he was referring to.

38.     Judge Nuffer disregarded the sworn statements that I made in furtherance of a showing of hardship,[50] inexplicably claiming that I had failed to support those unrebutted sworn statements of hardship with any "supporting documentation."[51] But Judge Nuffer never requested documentation or held oral argument or an evidentiary hearing on my motion to stay.

39.     Eventually, Judge Nuffer increased the sanctions amount to $34,082.84 and barred me from participating further in this case until that amount was paid in full.[52]

40.     Four days after removing me from this case, Judge Nuffer recused himself.[53]

41.     Thereafter, I learned that Judge Nuffer had filed a complaint against me with the Attorney Discipline Panel of this Court. In retrospect, it is apparent that he was alluding to that

---

[47] Docket No. 352
[48] Docket No. 241 at 2 & n.5 (citing *Derma Pen, LLC v. 4EverYoung Limited*, 2016 WL 7626573, at *3 (D. Utah June 20, 2016)).
[49] Docket No. 248 at 6.
[50] Docket No. 339-1.
[51] Docket No. 352 at 7.
[52] *Id.* at 13-14.
[53] Docket No. 358.

forthcoming complaint in some of the rulings that predated his recusal.[54]

42.     The complaint Judge Nuffer filed against me is confidential but it generally raises

allegations of misconduct in prior cases where I appeared in front of him, including *United States*

*v. Johnson*, Case No. 2:11-cr-00501-DN, which was tried from February 1 to March 25, 2016,

and *Utah Republican Party v. Herbert*, Case No. 2:14-cv-00876-DN, where Judge Nuffer tried to

hold me in contempt in the fall of 2015 based on an erroneous recitation of sixteen purportedly

missed deadlines that Judge Nuffer never corrected, notwithstanding my request.[55]

43.     Among other things, Judge Nuffer alleges that in the *Johnson* case, I was responsible for

creating the impression with jurors that he was obstructing a fair trial. But two jurors submitted

sworn affidavits contradicting Judge Nuffer's effort to blame me for his own biased misconduct,

and one of those jurors explained how her observations were based in part on her previous

service on the State of Utah's Judicial Performance Evaluation Commission, where she was

trained to observe and evaluate judges on their impartiality, among other things. I originally filed

those juror affidavits in *Utah Republican Party v. Herbert*, Case No. 2:14-cv-00876-DN, on

April 21 and 22, 2016, at Docket Nos. 237-1 and 239, and incorporate them by reference here.

44.     Suffice it to say that I dispute Judge Nuffer's characterization of events in his complaint

against me and will file a response as appropriate in separate proceedings. But the fact that his

complaint references other cases that predate the Sanctions Order by more than a year confirms

his lack of impartiality in issuing the Sanctions Order.

45.     As set forth in this Motion, and to correct the errors and manifest injustice presented, this

Court should reconsider and vacate Judge Nuffer's biased and erroneous Sanctions Order.

---

[54] *See* Docket Nos. 311 and 352 at 5, 12.
[55] *See Utah Republican Party v. Herbert*, Case No. 2:14-cv-00876-DN, at Docket No. 192.

## ARGUMENT

### I.  The Sanctions Order Should Be Reconsidered And Vacated.

A district court may revise its earlier interlocutory orders, including the Sanctions Order, "at any time" before a final judgment.[56] In *Rimbert*, the Tenth Circuit explained that "[t]he law of the case doctrine does not bind a judge to following rulings in the same case by another judge of coordinate jurisdiction as long as prejudice does not ensue to the party seeking the benefit of the doctrine," meaning that this Court can reconsider the Sanctions Order so long as it gives Standard notice and "the opportunity to be heard with respect to the new ruling."[57] Elsewhere the Tenth Circuit has explained that the "law of the case" rule is a "flexible" one, in that it "allows courts to depart from erroneous prior rulings" and because its "underlying policy … is one of efficiency, [and] not [a] restraint of judicial power."[58]

### II.  Judge Nuffer Erred In Disregarding The State Court's Prior Rulings.

Courts have recognized that where a claim "alleges enough to survive a Rule 12(b)(6) motion to dismiss, it follows that that claim is not 'baseless' for Rule 11 purposes."[59] Further, the Utah Supreme Court has acknowledged that a cause of action is not futile if it can withstand a motion to dismiss.[60] Thus, when Judge Laycock found that the Greens' unfair competition claim

---

[56] *Rimbert*, 647 F.3d at 1251 (applying Fed. R. Civ. P. 54(b)).

[57] *Id.* (quoting *United States v. Johnson*, 12 F.3d 1540, 1544 (10th Cir. 1993)). The Tenth Circuit recently vacated a ruling where Judge Nuffer relied on law of the case in refusing to revisit a non-final summary judgment order. *See Arlin Geophysical v. United States*, --- Fed. App'x ---, 2017 WL 3530880, at *7 (10th Cir. Aug. 17, 2017).

[58] *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1224-25 (10th Cir. 2007) (quotation omitted).

[59] *Gal v. Viacom Intern., Inc.*, 403 F. Supp. 2d 294, 308 (S.D.N.Y. 2005); *see also Barnes v. Akal Sec., Inc.*, 2005 WL 1459112, at *6 (D. Kan. June 20, 2005) (finding that the proposed claim was "not futile … undercuts any substantive basis for imposition of Rule 11 sanctions").

[60] *See Jensen*, 2003 UT 51, at ¶ 139 ("a court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss").

was not substantively "futile" and not brought in "bad faith," it is reasonable to understand that ruling to conclude that the Greens' unfair competition claim would survive a motion to dismiss.[61]

The Supreme Court has observed that "Congress clearly intended to preserve the effectiveness of state court orders after removal."[62] Accordingly, "[w]hen a case is removed from state court, the federal court takes the case in its current posture and treats prior-entered orders as its own."[63] Rather than preserve the effectiveness of the state court's orders and treat the state court's orders as its own, Judge Nuffer ignored and disregarded them. At the September 5, 2014 hearing, which occurred *after* the Judge Sam ruling underlying the Sanctions Order, Judge Laycock expressly found that the Greens' unfair competition claim was not "futile" or filed in "bad faith."[64] Yet, over two years later, Judge Nuffer ruled that the unfair competition claim was baseless and without merit at the time it was filed. This was not an isolated incident. Judge Laycock denied Standard's Motion for Summary Judgment, rejecting the Rule 12 argument, and also granted the Greens' Rule 56(f) motion for discovery. That discovery would eventually reveal facts that support the unfair competition claim, as Standard's executives were forced to admit that their company was in an especially precarious competitive position in early-January 2013, as it was transitioning from dealing in what executives described as "Chevy" brands of plumbing fixtures, like American Standard and Toto, into being an exclusive dealer of the "Cadillac" brand, Kohler, and how, Standard feared in that transitionary period that its "customers … who wanted to buy American Standard and Toto would just go somewhere else"

---

[61] *See* Sep. 5, 2014 Hrg. at 71:18-23.
[62] *Granny Goose Foods v. Brotherhood of Teamsters, No. 70*, 415 U.S. 423, 436-37 (1974).
[63] *Nieto v. University of N.M.*, 727 F. Supp. 2d 1176, 1189 (D.N.M. 2010) (citing *Granny Goose*, 415 U.S. at 436-37).
[64] Sep. 5, 2014 Hrg. at 71:18-23; *see also* Docket No. 264-13 at 2, ¶ 4.

before Standard could "persuade them" that "hey, Kohler is better."[65] In that time period, the

Greens were a dealer of American Standard and Toto, and their acquisition and expansion into

the Harwards' former locations along the Wasatch Front would have put them in the vicinity of

several of Standard's stores, including its flagship location.[66] Those facts confirm and color

Reese's admissions from September 2013, that he approached the Harwards with a competing

offer after someone told him the Harwards were "going to sell" to the Greens, that he had seen

the Harwards' acceptance of the Greens' Final Offer, and that he made an offer for the

Harwards' business with knowledge of the agreement between the Greens and the Harwards, to

prevent the Greens from "extend[ing]" into his existing market footprint.[67] In *Palzer*, the Tenth

Circuit based its decision vacating the district court's judgment in part on how that court had

"manifest[ly] disregard[ed] … the state court's" prior ruling.[68] It was similarly erroneous for

Judge Nuffer to manifestly disregard Judge Laycock's prior rulings in his Sanctions Order.

Standard will likely assert case law authority holding that "even if the plaintiff's claims

survive an initial motion to dismiss, Rule 11 sanctions may properly be based upon the plaintiff's

subsequent 'failure to dismiss the case after becoming aware that it lacked merit.'"[69] But this

Court should not be persuaded. Judge Nuffer did not impose sanctions because I "*continu[ed] to

maintain* the unfair competition claim."[70] Rather, he sanctioned me based on his view that I

---

[65] *See* excerpts of the deposition of Standard executive, Charles David Freeman, filed as Docket No. 263-6, at 27:20-29:5; 93:5-100:24; excerpts of the deposition of Standard executive, Diane Magario, filed as Docket No. 263-4 at 22:20-24:6, and 66:12-67:20.
[66] *Id.*
[67] *Palzer v. Cox Oklahoma Telecom, LLC*, 671 Fed.Appx. 1026, 1028 (10th Cir. 2016).
[68] *Id*.
[69] *B & H Medical, LLC v. ABP Admin., Inc.*, 35 F. Supp. 2d 746, 748 (E.D. Mich. 2005).
[70] Sanctions Order at 8 (emphasis in original).

should have known that the claim was frivolous *at the time of filing*.[71] This underscores his error

in disregarding Judge Laycock's conclusions with respect to the alleged "futility" of that claim.

And while Judge Sam concluded that "Green Enterprises could not possibly have a trademark

infringement claim against Standard Plumbing *under federal trademark law*,"[72] the Greens'

claim was not based on "federal trademark law," and importantly, Judge Sam's order was issued

in July 2014. Two months later, Judge Laycock actually considered Utah's Unfair Competition

statute and other facts and authority to hold that the Greens' claim was <u>not</u> "futile" or filed in

"bad faith."[73] On that record, Rule 11 sanctions are wholly unreasonable and unwarranted. And

the Sanctions Order should be vacated for failing to take Judge Laycock's rulings into account.

### III.    Judge Nuffer Erred In Imposing Rule 11 Sanctions Based on "Existing Law."

The Sanctions Order begins with the statement that "Utah Rule 11 and Federal Rule 11

require, among other things, that filings are warranted by *existing law* or the nonfrivolous

extension, modification, or reversal of existing law."[74] And yet, Judge Nuffer did not rely on <u>any</u>

"existing law" in his Sanctions Order, relying instead on Judge Sam's order dismissing the

Lanham Act Action under federal trademark law and a non-binding Tenth Circuit case that only

applied federal trademark law and was issued *after* the Amended Complaint was filed.[75] This

was error for at least two reasons. First, as illustrated in *Barnard v. Utah State Bar*, where the

Utah Supreme Court reversed a Rule 11 sanctions order because an attorney's "reading of the

law *as it existed when he commenced his action* was at least plausible," the Sanctions Order

---

[71] *See* Sanctions Order at 10-12 (explaining that "Judge Sam gave a clear directive…[y]et thereafter, Greens' counsel proceeded to file the unfair competition claim").
[72] *See* Lanham Act Action, Docket 32 at 5 (emphasis added).
[73] Sep. 5, 2014 Hrg. at 71:18-23; Docket No. 264-13 at 2, ¶ 4.
[74] Sanctions Order at 1-2 (emphasis added).
[75] *See* Sanctions Order at 9-13.

misstated and misapplied the facts and law as it existed at the time the Amended Complaint was filed.[76] The Tenth Circuit has cautioned courts that the Rule 11 standard under which attorneys can be sanctioned is a "tough one to satisfy" and importantly so:

> Because our adversary system expects lawyers to zealously represent their clients, this standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable. Even if a legal position in a pleading is clearly contrary to current law, it is not sanctionable if the position is warranted "by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed.R.Civ.P. 11(b)(2). This standard can be compared to the lesser standard for sanctions under Rule 37(a)(5)(A) (for improperly opposing discovery disclosure), which ordinarily must be imposed to compensate the opposing party for its expenses unless the objection to disclosure "was substantially justified."[77]

Utah Rule 11 is similarly limited to an analysis based on "existing law." Here, less than two weeks before the Amended Complaint was filed, Judge Laycock ruled that the claim was **not** "futile" or filed in bad faith. In other words, in contrast to Judge Sam's Order, which was non-binding and confined to "federal trademark law," Judge Laycock held that the Greens' proposed claims were likely plausible under Utah law. It was error for Judge Nuffer to disregard that procedural history and find the claim frivolous based on existing facts and Utah law.

Second, as in *United States v. Alexander*, where the Fifth Circuit reversed a sanctions order based in part on "the absence of authority in this Circuit,"[78] it was improper for Judge Nuffer to disregard Standard's admissions concerning the absence of controlling authority in support of its sanctions motion. There is no dispute the unfair competition claim is governed by Utah law. At the March 6, 2015 hearing on Standard's Motion for Summary Judgment, Standard admitted that it had not cited any "Utah case that stated that there had to be an ownership as it

---

[76] *Barnard v. Utah State Bar*, 857 P.2d 917, 920 (Utah 1993) (emphasis added).
[77] *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015) (reversing sanctions order).
[78] *United States v. Alexander*, 981 F.2d 250, 253 (5th Cir. 1993).

was looked at by Judge Sam in order to satisfy [the U.C.A. §] 13-5a-101" criteria, and could not say that any "***case on that point exists***."[79] In other words, Standard admitted there was no controlling authority in support of its argument for imposing sanctions at the time the Amended Complaint was filed. That admission is fatal to the Sanctions Order, as the Tenth Circuit recognizes that sanctions should not be imposed even where the "legal position [asserted] … is clearly contrary to current law," so long as that position is warranted "by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[80]

Judge Nuffer compounded these errors by relying on the *Derma Pen* to conclude that the unfair competition claim was frivolous because the Greens' agreement with the Harwards did not close, the "the trademark rights never transferred" to the Greens.[81] First, *Derma Pen* was factually distinguishable in that the Greens had a binding agreement with the Harwards, offer and acceptance confirmed, and they alleged ownership, without any conditional option or licensee involved. Accordingly, the Greens properly alleged that their agreement with the Harwards gave them "exclusive rights, among other things, to [the Harwards'] trademarks" – confirming both a transfer and ownership of the trademarks – and that those trademarks "belong[ed] to [the Greens]."[82] Thus, the unfair competition claim properly alleged a transfer and trademark ownership, making dismissal under Rule 12 inappropriate. And contrary to the Sanctions Order, the unfair competition claim was not based soley on Utah's Unfair Competition statute, as the Amended Complaint alleged claims for interference with contract and interference

---

[79] March 6, 2015 Hrg. 63:1-14 (emphasis added).
[80] *Predator Int'l*, 793 F.3d at 1182.
[81] Doc. 152 at 17-18 (citing *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117 (10th Cir. 2014).
[82] *See* Amended Complaint, Docket No. 40-1 at ¶¶ 13, 169-70.

with prospective economic relations, which constitute a form of unfair competition under Utah law.[83] In another context, the Utah Supreme Court observed that just because a statute enacted a "portion of the common law relating to unfair competition" it does not make that statute "all inclusive as to what rights may be protected, nor does it limit the application of the sound principles hereinabove discussed where the facts constituting unfair competition are shown to exist."[84] The same principle applies here, as Utah common law regards the claim of unfair competition as "the embodiment … [of] the rule of fair play."[85] In *Budget Systems*, for example, the Utah Supreme Court recognized a claim for unfair competition involving an alleged misappropriation of goodwill.[86] Only one of the eight paragraphs in the unfair competition claim mentions trademark infringement, but the others allege other forms of unfair competition, including interference with contract, interference with prospective economic relations, and taking other unlawful, unfair, and/or fraudulent actions to induce the Harwards to breach their agreement with the Greens or otherwise deprive the Greens of the benefits of their transaction with the Harwards, to diminish the value of the Greens' intellectual property, including their

---

[83] *See, e.g., Allied World National Assurance Company v. Monavie, Inc.*, 2013 WL 3716530 (D. Utah 2013) (in referring to a related decision, the court characterized tortious interference and other claims as "unfair competition" claims, including claims based in allegations that competitor induced distributors to breach their contracts); *Dubuque Products Inc. v. Lemco Corp.*, 227 F.Supp. 108, 116 (D. Utah 1963) (misappropriation of confidential information and other matters involving unfair competition required compensation "for and from improper interference with its business"); *I-Link Inc. v. Red Cube Int'l AG*, 2001 WL 741315 (D. Utah 2001) (noting "I-Link's … unfair competition [claim] is based in part upon Red Cube's alleged interference with I'Link's economic relations and contracts and claims" of passing off). Here, I incorporate by reference the recently-filed motion to reconsider the 152 Order. *See* Docket Nos. 504 and 520; *see also* DUCivR 7-1.

[84] *Allen's Products Co. v. Glover*, 414 P.2d 93, 95-96 (Utah 1966).

[85] *Budget Sys., Inc. v. Budget Loan & Fin. Plan*, 361 P.2d 512, 515 (Utah 1961); *see also American Airlines v. Platinum World Travel*, 769 F. Supp. 1203, 1207 (D. Utah 1990) (misappropriation of information and services).

[86] *Budget Systems*, 361 P.2d at 515.

trade names and reputatiton for business, and to prevent the Greens from obtaining a stronger market position in Standard's industry.[87] These allegations were more than sufficient to overcome a 12(b)(6) motion, where all alleged facts are presumed to be true.

In sum, it was error for Judge Nuffer to misconstrue the factual and legal basis for the unfair competion claim as frivolous. It was further error to retroactively apply *Derma Pen*, as it was decided *after* the Greens filed their Amended Complaint in September 2014.[88] *Derma Pen* issued on December 9, 2014,[89] when this case was still pending in Utah state court, and did not involve any claims for unfair competition under Utah statutory or common law.

## IV.   Judge Nuffer Clearly Erred In Holding That Sanctions Were "Mandatory."

The Tenth Circuit recognizes that a district court's Rule 11 ruling must be reversed where it is based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[90] Here, Judge Nuffer based in his Sanctions Order on the erroneous view that sanctions were "mandatory" under Rule 11, applying a 1991 *Harrison* case from the District of Colorado that held: "[o]nce a violation of Rule 11 has been found, sanctions are mandatory."[91] But, as set forth above, the *Harrison* court applied the pre-1993 version of Rule 11. In 1993, the rule was amended so that "the imposition of sanctions under Rule 11 is [now] discretionary, not

---

[87] *See* Amended Complaint, Docket No. 40-1, at ¶¶ 13, 93-122, 155-74. Paragraphs 172 and 174, which follow the trademark infringement allegation in paragraph 170, allege that Standard took "actions" to "induc[e] [the Harwards] … to avoid or breach their agreement with" the Greens, and those actions "were further unlawful, unfair and/or fraudulent in that they were expressly intended to deprive the Greens and Southwest of the benefit of their transaction with" the Harwards, thereby alleging unfair competition as an interference claim.

[88] *Cf.* Utah Rule 11(b) (reciting what an attorney is "certifying" when he or she "present[s] a pleading … to the court," the remainder of that paragraph being stated in the present tense).

[89] *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117 (10th Cir. 2014).

[90] *Predator Int'l*, 793 F.3d at 1182-83 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

[91] Sanctions Order at 14.

mandatory."[92] Even a Westlaw cite check would have revealed authority distinguishing *Harrison*

on grounds that it was applying the pre-1993 version of Rule 11.[93] And Judge Nuffer's error was

compounded by the fact that his Sanctions Order was purportedly based on Utah's version of

Rule 11. If there was any doubt, the state rule is clear: "If … the court determines that paragraph

(b) has been violated, the court *may* … impose an appropriate sanction."[94] That Judge Nuffer

blew past the plain language of both rules (federal and state) to conclude that sanctions were

"mandatory" illustrates the results-based approach employed in issuing the Sanctions Order and

also confirms this Motion's bias argument.

## V.   The Sanctions Order Should Be Vacated Based On The Perception Of Judicial Bias.

Finally, this Court should reconsider the Santions Order under the vacatur standard that

applies when a judge disqualifies or recuses. In this case, Judge Nuffer dismissed the Greens'

claims, entered the Sanctions Order, followed by an order setting the amount of sanctions, an

order denying my motion to stay, and ultimately an order of contempt, even after I provided

unrebutted sworn statements regarding my inability to pay the sanctions amount, and proof that I

was making a reasonable attempt to comply by making monthly partial payments.[95] Only after

Judge Nuffer barred me from further action or appearance in this case did he recuse and reveal

the extent of his partiality and bias by filing a complaint against me based on alleged misconduct

in other cases that predated the Sanctions Order by more than a year.

The Tenth Circuit recognizes that, while parties are not entitled to the judge of their

---

[92] *Conry v. Baker*, 2015 WL 4400536, at *2 (D. Colo. July 20, 2015); *see also* Fed. R. Civ. P. 11, Adv. Comm. Notes to 1993 Amendments.
[93] *See, e.g., In re Johnson*, 485 B.R. 642, 646 & n.1 (Bankr. D. Colo. 2013) (noting that *Harrison* "pre-dates the 1993 revisions to Rule 11").
[94] Utah R. Civ. P. 11(c) (emphasis added).
[95] Docket Nos. 152, 161, 204, 248, 352.

choice, they "ought not have to face a judge where there is a reasonable question of impartiality."[96] Whenever a judge is disqualified or recused, the court must determine whether to vacate that judge's prior orders.[97] In making that determination, the Supreme Court has directed courts to "consider the risk of injustice to the parties …, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process."[98] As one circuit court put it, this court must take whatever action necessary "to purge the perception of partiality" from the case.[99] The extent of Judge Nuffer's bias is evidenced by the fact that his complaint is based on extrajudicial sources,[100] alleging misconduct arising from matters that did not involve him in any way and unrelated matters that pre-dated the Sanctions Order by over a year – the Tenth Circuit has confirmed that such "'extra effort' by a

---

[96] *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).

[97] *See, e.g., Shell Oil Co. v. United States*, 672 F.3d 1283, 1290-91 (Fed. Cir. 2012) (vacating district judge's judgment, and the orders it was based on, because the judge "should have recused himself … and should have taken no further action" from that point "other than the ministerial act of transferring the case"); *Mangini v. United States*, 314 F.3d 1158, 1161 (9th Cir. 2003) (vacating judge's prior order); *United States v. O'Keefe*, 128 F.3d 885, 891 (5th Cir. 1997) (noting that the values underlying the federal recusal statute include "protecting the litigants' constitutional entitlement to an unbiased adjudication and the public's perception of the integrity of the judicial process" (citing *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 457 (5th Cir. 1996)); *Rohrbach v. AT & T Nassau Metals Corp.*, 915 F. Supp. 712, 718 (M.D. Penn. 1996) (vacating prior actions of disqualifying judge); *Chambers v. Kansas City Ks. Comm. College*, 2014 WL 326021, at *3 (D.Kan. 2014) (vacating prior judge's summary judgment order).

[98] *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988).

[99] *See Mangini*, 314 F.3d at 1161 (citing *Preston v. United States*, 923 F.2d 731, 735 (9th Cir. 1991)).

[100] Courts have held that "extrajudicial source" in this context "means that determinations of bias or partiality cannot be based on opinions, rulings, or incidents arising out of the course of the proceedings in question." *Piester v. Int'l Bus. Machines Corp.*, 929 F. Supp. 595, 597 (D.R.I. 1996) (citing *Liteky v. United States*, 510 U.S. 540, 554 (1994)); *see also United States v. Morris*, 988 F.2d 1335, 1337 (4th Cir. 1993) ("[P]rior decisions make clear that the source of the appearance of partiality must arise from some source other than the judge's previous involvement with cases that concerned the parties or witnesses in the present case.").

judge may suggest a vendetta."[101]

Here, the sheer timing of the Sanctions Order, when viewed in context of the other errors detailed above, indicate how Judge Nuffer has taken actions against me and my client (for example, precluding my ability to represent the Greens during the critical fact discovery phase) based on an impermissible vendetta against me.[102] It is significant that the allegations alleged against me involve Judge Nuffer's blaming me for having allegedly turned the *Johnson* jurors against him, when those jurors provided sworn affidavits asserting the contrary,[103] and that he has now resuscitated allegations from another case from 2015 where he falsely accused me of missing sixteen purported deadlines – making no mention of my submission in that case discrediting those allegations and requesting that he correct the record. Those allegations reveal the personal and extraducial nature of Judge Nuffer's lack of impartiality in this case. That the time period asserted by Judge Nuffer's allegations completely overlaps with his adverse rulings in this case, when considered with the other *Liljeberg* factors and the other facts coming to light several months after the Sanctions Order, confirms the need to "purge the perception of partiality" in this case by completely vacating the Sanctions Order and subsequent rulings that Judge Nuffer issued to enforce that order.

---

[101] *United States v. Mendoza*, 468 F.3d 1256, 1262-63 (10th Cir. 2006). In *Mendoza*, the court rejected the defendant's recusal argument on appeal after noting that the district judge's "extrajudicial investigation" was limited to a "simple docket search" for other examples of possible misconduct by his attorney. *Id.*

[102] Judge Nuffer sought to justify his order prejudicing my client in this respect by asserting that he was "spar[ing] [my client] the future billings … for misguided efforts," without ever having heard from my clients on the issues presented in this case. Docket No. 352 at 13.

[103] *See* Docket Nos. 237-1 and 239, filed in *Utah Republican Party v. Herbert*, Case No. 2:14-cv-00876-DN (D. Utah) (juror affidavits), and Tom Harvey, *Federal Judge Was Biased, Jurors In Jeremy Johnson Trial Say*, Salt Lake Tribune, June 30, 2016, available at http://archive.sltrib.com/article.php?id=4064521&itype=CMSID

## <u>CONCLUSION</u>

For the foregoing reasons, this Motion to reconsider and vacate the Sanctions Order should be granted.

DATE: November 8, 2017.

**MUMFORD PC**

/s/ Marcus R. Mumford
Marcus R. Mumford