JAMES T. BURTON (11875)
*jburton@kmclaw.com*
JOSHUA S. RUPP (12647)
*jrupp@kmclaw.com*
RYAN R. BECKSTROM (14593)
*rbeckstrom@kmclaw.com*
**KIRTON │ McCONKIE**
Key Bank Tower
36 South State Street, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

*Counsel for Standard Plumbing Supply
Company, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERPRISES, INC., et al., | Case No. 2:15-cv-00556-DAK-EJF |
| Counterclaim Defendants, | **STANDARD PLUMBING SUPPLY COMPANY, INC.'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DECLARATORY JUDGMENT CLAIMS** |
| v. | |
| RANDALL HARWARD, et al., | Honorable Judge Dale A. Kimball |
| Counterclaim Plaintiffs. | Honorable Magistrate Judge Evelyn J. Furse |

Pursuant to Rules 7 and 56 of the Federal Rules of Civil Procedure (the "Rule(s)") and

DUCivRs 7-1(b) and 56-1, Counterclaim Plaintiff Standard Plumbing Supply Company, Inc.

("Standard"), by and through undersigned counsel, hereby respectfully files this Renewed

Motion for Partial Summary Judgment against Counterclaim Defendants Garth O. Green

Enterprises, Inc., Garth O. Green, and Michael Green (collectively, the "Greens") on Standard's

1

declaratory judgment counterclaims.[1]

## PRECISE RELIEF SOUGHT AND SPECIFIC GROUNDS THEREFORE

Pursuant to DUCivR 7-1(a)(1)(A), Standard seeks summary adjudication against the Greens on Standard's remaining claims for declaratory relief: Standard's fourth cause of action—declaratory relief regarding the validity and enforceability of the Asset Purchase and Sale Agreement (the "APSA") between Standard and Harward Irrigation Systems, Inc. ("Harward Irrigation"); and Standard's fifth cause of action—declaratory relief regarding the invalidity of the Greens' five *lis pendens* placed on the Sprinkler World properties. Such relief is authorized pursuant to Rule 56 and DUCivR 56-1. Based on the undisputed facts of record, the APSA between Standard and Harward Irrigation is a valid and enforceable agreement. And the undisputed facts show that the Greens' five *lis pendens* were invalid and were wrongfully noticed against the Sprinkler World properties. Accordingly, Standard is entitled as a matter of law to a declaratory judgment on each of the foregoing counterclaims.

## INTRODUCTION

In January 2013, Standard entered into the APSA with Harward Irrigation to purchase Sprinkler World and to lease five Sprinkler World properties from Grass Valley Holdings, L.P. ("Grass Valley"). Standard entered into the APSA and associated leases only *after* it had received repeated assurances from Harward Irrigation that Harward Irrigation's prior

---

[1] Standard originally filed a similar motion for partial summary judgment concerning its declaratory judgment counterclaims on April 20, 2017. (*See* docket no. 338.) At that time, however, the Greens still had yet to answer any of Standard's counterclaims, instead filing serial motions to dismiss. (*See* docket no. 61, denied in part at docket no. 287; docket no. 328, denied at docket no. 482.) Owing to the pendency of the Greens' second motion to dismiss, the Honorable District Court Judge Robert J. Shelby denied Standard's original motion for partial summary judgment without prejudice, holding that the second "motion to dismiss may ultimately moot Standard's Motion for Summary Judgment…." (Docket no. 422.) Nevertheless, Judge Shelby's Order states that Standard's motion for partial summary judgment cold be "refil[ed] … if and when Plaintiffs answer Standard's counterclaims…." (*Id.*) Following Judge Shelby's denial of the Greens' second motion to dismiss (docket no. 482), the Greens' answered Standard's counterclaims on September 14, 2017. (*See* docket no. 486.) Accordingly, Standard has prepared and filed the instant renewed motion for partial summary judgment consistent with Judge Shelby's prior Order.

negotiations with the Greens concerning the sale of Sprinkler World had fallen through. Yet, despite serially admitting that the attempted deal negotiated between Harward Irrigation and the Greens was never consummated, the Greens sued Harward Irrigation and claimed rights of possession in the Sprinkler World properties based solely on a so-called "Final Offer" tendered by email. But the Greens didn't stop there. The Greens subsequently filed *lis pendens* against all five pieces of real property where the Sprinkler World locations were housed, again based on the unconsummated "Final Offer."

Because the "Final Offer" is not a valid contract, the Greens' asserted rights to the Sprinkler World properties fall flat. Accordingly, Standard is entitled to summary judgment on both of its declaratory judgment claims against the Greens: validity and enforceability of the APSA between Standard and Harward Irrigation and invalidity of the five *lis pendens* asserted against the Sprinkler World properties. This Court has already determined that each of these claims present an "actual controversy" as required by the Declaratory Judgment Act. And a review of the undisputed material facts shows that, unlike the Greens' "Final Offer," the APSA is a valid and enforceable contract. The undisputed material facts further show that the five *lis pendens* were invalid under Utah's lien and *lis pendens* statutes. Thus, as a matter of law, Standard is entitled to a judicial declaration that (1) the APSA is a valid and enforceable contract and (2) that the five *lis pendens* asserted against the Sprinkler World properties were invalid from the outset.

## STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

Pursuant to DUCivR 56-1(b)(2), Standard provides the following Statement of Elements and Undisputed Material Facts. For clarity, the legal elements and undisputed material facts necessary for Standard to prevail on its declaratory judgment action is generally outlined first following by the specific legal elements and undisputed material facts which establish the validity of Standard's APSA and invalidity of the Greens' *lis pendens*.

## I.   DECLARATORY RELIEF

### A.   Legal Elements Required to Prevail on a Declaratory Judgment Action

Under 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Such an "actual controversy" referred to by the Declaratory Judgment Act "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III of the United States Constitution."[2] Thus, a declaratory judgment action may be properly decided if

> [t]he controversy [is] definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a *real and substantial controversy* admitting of specific relief through a decree of a conclusive character, *as distinguished from an opinion advising what the law would be upon a hypothetical state of facts*.[3]

### B.   Undisputed Material Facts Satisfying Declaratory Judgment Elements

1.     On March 29, 2017, this Court entered an order upholding Standard's declaratory judgment claims (the "287 Order").[4]

---

[2] *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).
[3] *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937) (emphases in original)).
[4] Memorandum Decision & Order (the "287 Order"), docket no. 287, entered Mar. 29, 2017.

4814-1640-9431

2.      In the 287 Order, this Court determined that "there is a 'definite and concrete' controversy" about whether the January 9, 2013 APSA between Standard and Harward Irrigation is a valid and enforceable contract.[5]

3.      This Court also determined that "the fifth cause of action presents a definite and concrete controversy about whether the *lis pendens* notices were validly filed."[6]

## II.   DECLARATORY RELIEF REGARDING THE VALIDITY AND ENFORCEABILITY OF THE APSA

### A.   Legal Elements Required to Show that the APSA is a Valid and Enforceable Contract

Under Utah law, "[t]here are two primary elements necessary for a contract: (1) an offer and (2) an acceptance."[7] An offer is defined as a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it."[8] An offer's "terms must be definite and unambiguous."[9] Similarly, "[a]n acceptance must unconditionally assent to all material terms presented in the offer, including price and method of performance, or it is a rejection of the offer."[10] Thus, a "proposal of different terms from those of the offer constitutes a counteroffer, and no contract arises."[11]

Beyond an offer and acceptance, a valid contract requires consideration and mutual assent. "Consideration is an act or promise, bargained for and given in exchange for a promise."[12] And "a contract is not formed unless there is a meeting of the minds,"[13] also known

---

[5] *Id.* at 16.
[6] *Id.* at 18.
[7] *1-800 Contacts, Inc. v. Weigner*, 2005 UT App 523, ¶ 2, 127 P.3d 1241.
[8] *Id.* (quoting *Eng'g Assocs. v. Irving Place Assocs.*, 622 P.2d 784, 787 (Utah 1980)).
[9] *Lebrecht v. Deep Blue Pools & Spas Inc.*, 2016 UT App 110, ¶ 13, 374 P.3d 1064 (quoting *DCM Inv. Corp. v. Pinecrest Inv. Co.*, 2001 UT 91, ¶ 12, 34 P.3d 785).
[10] *Id.* (quoting *Cal Wordsworth Constr. v. City of St. George*, 898 P.2d 1372, 1376 (Utah 1995)).
[11] *Cal Wordsworth Constr.*, 898 P.2d at 1378.
[12] *Resource Mgmt Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1036 (Utah 1985).

4814-1640-9431

as mutual assent, "which must be spelled out, either expressly or implicitly, with sufficient definiteness to be enforced."[14]

"In determining whether the parties created an enforceable contract, a court should consider all preliminary negotiations, offers, and counteroffers and interpret the various expressions of the parties for the purpose of deciding whether the parties reached agreement on complete and definite terms."[15] "[T]he burden of proof for showing the parties' mutual assent as to all material terms and conditions is on the party claiming that there is a contract."[16]

**B.**     **Undisputed Material Facts Showing that the APSA is a Valid and Enforceable Contract**

4.     In early 2013, Harward Irrigation owned and operated a business called "Sprinkler World," which had five different brick and mortar retail/wholesale locations throughout Utah, including in Springville, Orem, Lehi, Sandy, and Roosevelt.[17]

*The Greens' Failed "Final Offer"*

5.     From approximately October 2012 until January 2013, the Greens negotiated with Harward Irrigation to purchase Sprinkler World (including its assets, equipment, inventory, intellectual property, etc.) and to lease the five Sprinkler World locations in connection therewith from Grass Valley.[18]

6.     As part of these negotiations, the Greens tendered a so-called "Final Offer" to Harward Irrigation on December 31, 2012.[19]

---

[13] *Lebrecht*, 2016 UT App 110, ¶ 13 (quoting *Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995))
[14] *Commercial Union Assocs. v. Clayton*, 863 P.2d 29, 37 (Utah Ct. App. 1993) (quoting *Pingree v. Cont'l Grp. of Utah, Inc.*, 558 P.2d 1317, 1321 (Utah 1976)).
[15] *Lebrecht*, 2016 UT App 110, ¶ 14 (quoting *1-800 Contacts*, 2005 UT App 523, ¶ 4).
[16] *Cal Wadsworth Constr.*, 898 P.2d at 1376.
[17] Calvin E. Harward Dep. 18:17–19:17; 21:9–13 (Nov. 2, 2016), relevant portions attached as **Exhibit A**.
[18] *Id.* at 32:17–62:14.
[19] *See id.* at 53:24 – 54:1; "Final Offer," purportedly tendered on Dec. 31, 2013, attached as **Exhibit B** (the so-called

6

7.     As indicated above, the Greens' alleged "Final Offer" included a lease provision in which the Greens offered to "sign a 5 year lease on all 5 of [Harward Irrigation's] branch properties at 85% of [its] proposed lease rate."[20]

8.     The "Final Offer" stated that it would expire under its own terms on January 2, 2013: "This is not a list of topics we wish to discuss but is our Final Offer. Please respond with a simple YES or NO by Jan 2nd."[21]

9.     Notwithstanding the nominal finality of the so-called "Final Offer," the purchase price remained unspecified subject to completion of "a full inventory count," among other open-ended provisions.[22]

10.    For example, under the "Final Offer," the Greens were to (a) "choose the Vehicles, Forklifts, & Trailers that will be needed to continue operations of Sprinkler World" and "pay 90% of their current NADA fair condition private party value" and (b) pay $120,000 "for all equipment and non-vehicle assets" while Harward Irrigation was responsible to obtain UCC releases on all inventory and assets.[23]

11.    The Greens allege that Harward Irrigation accepted this "Final Offer" on January 2, 2013, and that a valid and binding contract was formed.[24] Nevertheless, no document was ever signed.

12.    On January 4, 2013—two days *after* the Greens' "Final Offer" expired under its express terms—Mr. Richard N. Reese, president of Standard, learned that Sprinkler World was

---

"Final Offer" was attached to the Greens' original state court Complaint).

[20] Ex. B at 3.

[21] *Id.* at 1.

[22] *Id.* at 2–3.

[23] *See id.*

[24] Complaint ¶¶ 45–46, Garth O. Green Enters., Inc. v. Randall Harward, No. 130400184 (filed Feb. 1, 2013), attached as **Exhibit C**.

for sale.[25]

13.    On January 7, 2013, Mr. Reese called Randall Harward—the principal person who had negotiated on behalf of Harward Irrigation and Grass Valley with the Greens [26]—and "asked him if the deal [with the Greens] was done and [Randall Harward] said no, it wasn't done."[27]

14.    On January 8, 2013, Mr. Reese met with Randall Harward and again asked "if [Harward Irrigation] had an offer from [the Greens] and if the deal was done."[28]

15.    Randall Harward "said that [Harward Irrigation] had discussed with [the Greens] buying the business, but the paperwork was different than what [Harward Irrigation] had felt it should have been, and [Harward Irrigation] thought they didn't have a deal [with the Greens]."[29]

16.    Harward Irrigation "represented they were free to entertain an offer from [Standard] and [Standard] told them we'd make them an offer."[30]

17.    On January 9, 2013, Randall Harward showed Mr. Reese a text message he received from Michael Green indicating that there was no deal between Harward Irrigation and the Greens.[31] Importantly, that text was sent from Michael Green to Randall Harward—*the Greens* proactively informing Randall Harward that there was no agreement and terminating negotiations—following a meeting solely between the Greens and Randall Harward's two brothers, both of whom the Greens believed to be relatively uninformed or uninvolved and acting

---

[25] *See* Richard N. Reese Dep. 8:23–9:9 (Sept. 23, 2013), relevant portions attached as **Exhibit D**.
[26] *See* Garth O. Green Dep. 119:15-18, relevant portions attached as **Exhibit W**.
[27] *See* Ex. D at 11:12–12:9.
[28] *See id.* at 18:20–24.
[29] *See id.* at 18:24–19:3.
[30] *See id.* at 50:17–19.
[31] *See* Ex. A at 75:7–76:17; *see also* Text forwarded from R. Harward to R. Reese (Jan. 10, 2013), attached as **Exhibit E**.

4814-1640-9431

contrary to Randall Harward's wishes.[32] Nevertheless, the Greens affirmatively and unilaterally terminated their attempted deal with Harward Irrigation and Grass Valley anyway.[33]

18.    Specifically, Michael Green's text stated, "I guess it [i]s. Good luck. Deals [*sic*] over."[34]

19.    The Greens also confirmed they never entered into an extension of the so-called "Final Offer," which expired on January 2, 2013, under its own terms and before Standard ever learned that Sprinkler World was for sale.[35]

### The APSA between Standard and Harward Irrigation

20.    On January 9, 2013, after being repeatedly assured that there was no contract between the Greens and Harward Irrigation, Standard made an offer to purchase Sprinkler World (including its assets, equipment, inventory, intellectual property, etc.) and lease the associated properties.[36]

21.    Harward Irrigation accepted Standard's offer, and the parties entered into and signed an Asset Purchase and Sale Agreement (the APSA) on January 9, 2013.[37]

22.    In connection with the APSA, Standard agreed to and entered lease agreements with respect to each of the five Sprinkler World locations for five years.[38]

23.    Standard also purchased the fixed assets, inventory, equipment, and intellectual

---

[32] *See* Ex. W at 119:10—120:9.
[33] *See* Ex. E.
[34] *Id.*
[35] *See* Transcript of Telephone Call between Richard Reese, Michael Green, & Garth Green at 18:7–18 (Jan. 10, 2013), relevant excerpts attached as **Exhibit F**.
[36] *See* Ex. D at 18:23–19:7.
[37] *See* Asset Purchase & Sale Agreement (the APSA) between Standard and Harward Irrigation (Jan. 9, 2013), attached as **Exhibit G**.
[38] *See id. passim*; *see also, e.g.,* Commercial & Industrial Lease (Single Tenant Net) dated Jan. 9, 2013, docket no. 117-2, filed Aug. 19, 2016 (representative lease for the Springville, Utah Sprinkler World property).

4814-1640-9431

property associated with Sprinkler World.[39]

24.     Standard also agreed to pay for the property tax, insurance, and maintenance on the leased locations.[40]

### Recognition of the APSA's Validity

25.     The Greens have since acknowledged the validity of the APSA. Specifically, in a settlement agreement executed by the Greens on July 22, 2016, the Greens agreed that

> Nothing in this [settlement a]greement shall constitute or operate as a release of the [APSA], dated January 9, 2013, made between Grass Valley [*sic*] and the Standard Parties and all rights and remedies under that purchase and sale agreement are reserved to Grass Valley, Harward Irrigation Systems, Inc., and/or any of the other Harward Parties.[41]

Indeed, elsewhere Garth Green himself testified as follow: "I certainly know that Mr. Reese made an agreement [on behalf of Standard] with the Harward parties, and that agreement would speak for itself."[42]

26.     Moreover, in the present lawsuit, this Court has recognized that the Greens "openly acknowledge[d] that the ["Final Offer"] was never completed" and that "Harward Irrigation … entered into an agreement with Standard Plumbing instead."[43]

27.     This Court further stated that the Greens "do[] not dispute that the sale [i.e., the "Final Offer"] failed to close."[44] Moreover, this Court repeatedly held that Standard's actions in entering the APSA and acquiring Sprinkler World comprise "lawful competitive conduct."[45]

28.     And in a separate lawsuit involving Standard and the Greens, the Honorable

---

[39] *See id.* at 1–2.
[40] *See* Ex. D. at 36:19–37:3.
[41] Settlement Agreement ¶ 16 (July 22, 2016), attached as **Exhibit H**.
[42] Ex. W at 87:4-25.
[43] Memorandum Decision & Order Granting [55] Motion for Partial Summary Judgment at 16–17 (the "152 Order"), docket no. 152, entered Dec. 27, 2016.
[44] *Id.* at 17.
[45] *Id.* at 19; *see also id.* at 9 n.59, 10 nn.60 & 62, & 12-14.

4814-1640-9431

District Court Judge David Sam stated, "The parties agree that Green Enterprises never actually purchased the trademark in question from Harward" via the "Final Offer."[46]

## III.   DECLARATORY RELIEF REGARDING INVALIDITY OF *LIS PENDENS*

Under Utah law, a *lis pendens* can be invalid under either of two groups of statutes: Utah Code § 78B-6-1303, which states that a *lis pendens* may only be filed in a legal action "affecting the title to, or right of possession of, real property," and Utah Code §§ 38-9-203(3) and 78B-6-1304.5, both of which forbid groundless *lis pendens*. The legal elements and relevant undisputed facts for each of these statutes are outlined below.

### A.   Utah Code § 78B-6-1303: A Legal Action "Affecting the Title to, or Right of Possession of, Real Property"

#### 1.   Legal Elements Required to Show that the Five *Lis Pendens* are Invalid under Utah Code § 78B-6-1303

Under Utah Code § 78B-6-1303(1)(a) (2008), "[e]ither party to an action affecting the title to, or the right of possession of, real property may file a notice of the pendency of the action with the county recorder in the county where the property or any portion of the property is located." Section 78B-6-1303(1)(a), as amended, goes on to state,

> Any party to an action filed in the United States District Court for the District of Utah, the United States Bankruptcy Court for the District of Utah, or a Utah district court that affects the title to, or the right of possession of, real property may file a notice of pendency of action.

Thus, under either the 2008 or 2016 versions of the statute, a *lis pendens* is proper only if it is filed in conjunction with an action that "affects the title to, or the right of possession of, real property."

It has been held that the "action" contemplated under Utah Code § 78B-6-1303(1)(a)

---

[46] Memorandum Decision, *Standard Plumbing Supply Co. v. Garth O. Green Enters., Inc.*, No. 2:14-cv-238, at *4 (July 14, 2014), attached as **Exhibit I**.

4814-1640-9431

must include a "possession claim [that] would support a lis pendens."[47] If a claim has been

dismissed or is "legally insufficient to support any claim of title," then the case does not have a

proper claim "affecting title to or possession of the subject property."[48]

The Greens' original "possession" claims are based on the "Final Offer." To this end, a

lease agreement "for a term … exceeding one year" must be made "in writing subscribed by the

party creating, granting, assigning, surrendering or declaring the same."[49] And, as stated above,

"a contract is not formed unless there is a meeting of the minds,"[50] "which must be spelled out,

either expressly or implicitly, with sufficient definiteness to be enforced."[51]

### 2.   Undisputed Material Facts Showing the *Lis Pendens* are Invalid under Utah Code § 78B-6-1303

29.   Standard incorporates by reference the preceding paragraphs 1 through 28 as if

fully set forth herein as all such undisputed material facts pertain to Standard's counterclaim

seeking a declaratory judgment of invalidity of the Greens' *lis pendens* under Utah Code § 78B-

6-1303.

### The Five Lis Pendens Asserted Against the Sprinkler World Properties

30.   After Standard and Harward Irrigation executed the APSA, the Greens filed suit

against Harward Irrigation (among others) in Utah State Court on February 1, 2013.[52]

31.   Among other allegations, the central premise of the Greens' original Complaint

against Harward Irrigation was that Harward Irrigation breached the "Final Offer" by entering

---

[47] *Needham v. Fannie Mae*, No. 2-11-cv-00260-DN, 2012 WL 681781, at *4 (D. Utah Feb. 29, 2012) (unpublished).
[48] *Id.* (citing Utah Code § 78B-6-1303).
[49] Utah Code § 25-5-1.
[50] *Lebrecht*, 2016 UT App 110, ¶ 13 (quoting *Sackler*, 897 P.2d at 1220).
[51] *Commercial Union Assocs.*, 863 P.2d at 37 (quoting *Pingree*, 558 P.2d at 1321).
[52] *See* Ex. C.

4814-1640-9431

into the APSA with Standard.[53]

32.     The Greens also alleged that the Final Offer gave them a right of possession in the Sprinkler World properties.[54]

33.     Based on this alleged "right of possession," on February 5, 2013, the Greens filed a notice of *lis pendens* against each of the five real properties (in their entirety) which housed, among other tenants, the Sprinkler World stores.[55]

### The Greens' Improper Master Plan Behind the Five Lis Pendens

34.     Among other things, the Greens filed the *lis pendens* with the intent to capitalize on the Harwards' financial troubles, including, but not limited to, buying the note secured by the Harwards' Springville, Utah property and ultimately foreclosing such that the Greens could purchase the property through a commonly owned entity at substantially less than market value.[56]

35.     Garth Green also told Richard Reese that he wanted to hurt Standard "a little bit, but not big" in part through the filing and maintenance of the *lis pendens*.[57] Indeed, Garth Green later repeatedly confirmed his motive of injuring Richard Reese personally: "I said that, yes. I meant it. …. Yeah. I'd like to hurt him a little from this."[58]

36.     Elsewhere, even before Standard was added as a party to this action, Garth Green laid bare his intent to penalize Standard as well as Richard Reese personally via the *lis pendens* in attempting to cajole Harward Irrigation into settlement:

Just suppose that in this [proposed settlement], Richard Reese was going to dig up

---

[53] *See id.* at 16–19.
[54] *See id.* ¶¶ 9 & 20–21.
[55] *See* Notices of *Lis Pendens* (Feb. 5, 2013), attached as **Exhibit J**.
[56] *See* GW Green Family Ltd. P'ship Dep. 120:20– 122:25 (May 13, 2016), relevant portions attached as **Exhibit K**.
[57] Ex. F at 19:3–4.
[58] Ex. W at 88:14-22; *see also id.* at 68:1-9 & 125:2-23.

4814-1640-9431

a check for a large amount (that he has but would hurt him a bit) for his nonsense that he contributed and for the blessing of not having us [(the Greens)] include him as a conspirator and for not having us as a competitor at 90 south, Orem, and Lehi.

Just imagine that his amount was $200,000. This would be a sufficient penalty for his actions. ….

Just imagine that he agreed that his check would come from his own money and was agreed to be in a check from him to us, which would make us feel better.

***

That with an advance against the buildings that the les [*sic*] pendens would be released, that the lawsuit would be released, that the matter would be completely settled and you and they could rest to accept Reese [*sic*] monthly [lease] payments for many months ahead[.]"[59]

37.     Through the *lis pendens*, the Greens made it virtually impossible for Standard and Harward Irrigation to transfer their respective interests and/or purchase greater interests in the Sprinkler World properties.[60]

38.     The *lis pendens* also prevented Harward Irrigation from obtaining title insurance so that it could refinance the Springville property and avoid foreclosure.[61]

39.     Because the *lis pendens* prevented Harward Irrigation from refinancing the Springville property, the Springville loan could not be reclaimed from default and ultimately resulted in foreclosure.[62] Moreover, the Greens, through a commonly owned and controlled entity, were the beneficiaries of that foreclosure.[63]

40.     Indeed, the Greens ultimately used the *lis pendens* so that they could be the only

---

[59] *See* Ltr. from G. Green to R. Harward (Oct. 15, 2013), attached as **Exhibit U**.
[60] *See, e.g.*, Loan Proposal Letter (Sept. 15, 2014), attached as **Exhibit L**.
[61] *See* R.T. Harward Dep. 87:8–16 (Jan. 17, 2017), relevant portions attached as **Exhibit M**.
[62] *See id.* at 138:17–19.
[63] *See, e.g.*, Ex. H.

14

potential non-cash buyer who could purchase the Springville loan.[64]

41.     In December 2014, GW Green Family Limited Partnership ("GW Green")—an entity owned and controlled by Garth Green[65]—sent a letter to Standard notifying Standard that GW Green had purchased the loan secured by the Springville property currently occupied by Standard (among other tenants).[66]

42.     The December 2014 letter further notified Standard that the loan was in default and instructed Standard to pay rent directly to GW Green.[67]

43.     In May 2015, Grass Valley, an entity commonly owned with Harward Irrigation,[68] sought chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Utah.[69]

44.     In March 2016, Grass Valley moved the Bankruptcy Court to approve a settlement agreement between GW Green, the Greens, and Harward Irrigation relating to the Springville property.[70]

45.     The principal effect of the settlement agreement was to allow the Greens to sell the Springville property via a foreclosure sale in exchange for approximately $434,000 paid to the bankrupt estate of Grass Valley, the bulk of which comprises rent payments for existing leases on the Springville location.[71]

46.     The Springville property was worth at least $8.4 million at the time of the

---

[64] *See* Ex. M at 138:20–23.
[65] *See, e.g.,* Utah Business Search results, attached as **Exhibit N**; *see also* Ex. K at 37:13-25.
[66] *See* Letter from M. Mumford (Dec. 5, 2014), attached as **Exhibit O**.
[67] *See id.*
[68] Ex. A. at 24:22–29:25.
[69] *In re Grass Valley Holdings, L.P.*, Case No. 2:15-bk-24513 (Bankr. D. Utah) (the "Bankruptcy Case").
[70] *See* Bankruptcy Case, Docket No. 157 (Mar. 10, 2016).
[71] *See id.* at 3–8.

foreclosure sale.[72]

47.     The Greens, having accomplished step one of their plan by buying the note secured by the Springville property, moved the Bankruptcy Court for approval of the settlement agreement in order to finish the foreclosure on the Springville property, i.e., to complete step two of their plan.[73]

48.     In May 2016, the Bankruptcy Court approved the settlement agreement, allowing the Greens to immediately foreclose on the Springville property.[74]

49.     In June 2016, the Greens subsequently purchased the Springville property at the foreclosure sale for $6.3 million—well below its $8.4 million value—resulting in an immediate $2.1 million windfall in equity for the Greens.[75]

50.     In concert with the leverage created by the *lis pendens*, the Greens were also later able to wrest fee simple ownership—not merely possession—of Grass Valley's Roosevelt, Utah property for approximately 1/7 of its true market value as well.[76]

**The Impact of the Five Lis Pendens on Standard**

51.     The Greens' five *lis pendens* on the Sprinkler World properties have created numerous problems for Standard since January 2013.[77]

52.     Although Standard has now vacated all five Sprinkler World locations, Standard has had difficulty subleasing the premises and has lost opportunities to sublease the vacant

---

[72] E.g., R.T. Harward Dep. 20:2–24 (May 13, 2016), relevant portions attached as **Exhibit P**; *see also* D.G. Ford Dep. 36:9-11 & 43:3-12 (May 4, 2016), relevant portions attached as **Exhibit V**.

[73] *See* Ex. K at 74:25–75:2.

[74] *See* Bankruptcy Case, Docket No. 200 (May 18, 2016); *see also* Order Approving Settlement Agreement Terminating Automatic Stay with Respect to Springville Property, docket no. 226-11, filed Mar. 2, 2017.

[75] *See* Ex. W at 242:17—243:11; *see also, e.g.,* Ex. M at 73:10–18.

[76] *See* Ex. H; *see also* Bankruptcy Case, Docket No. 248 (Oct. 7, 2016); Order Approving Settlement Agreement, Assumption and Assignment of Leases, Rejection of Lease, and Conveyance of Property, docket no. 226-13, filed Mar. 2, 2017.

[77] *E.g.,* Motion for Reconsideration of the State Court's March 6, 2015 Oral Ruling Regarding Motion for Release of Notice of *Lis Pendens*, docket no. 68, filed May 13, 2016.

4814-1640-9431

premises because of the *lis pendens*.[78]

53.     For example, in April 2014, Standard received a Letter of Intent to lease the former Sandy Sprinkler World building from another party. The Letter of Intent contained an option to purchase and stated, "Tenant's offer is subject to timely removal of lis pendens which encumbers the Premises. Under no circumstance shall Tenant enter into any legally binding agreement unless the lis pendens is removed and Buyer provides proof of such removal of lis pendens to Tenant."[79]

54.     Standard was only able to sublease the Sandy and Roosevelt Sprinkler World locations after it agreed to repay some or all rent paid to the sublessee if the Greens were ultimately successful in obtaining specific performance.[80]

55.     The rent, taxes, and insurance Standard incurred as a result of not being able to sublease the Orem, Roosevelt, and Sandy Sprinkler World locations exceeds $260,000.[81]

56.     Standard was ultimately able to sublease the Orem and Lehi locations. But both subleases are premised on personal guarantees from Standard and/or Mr. Reese personally because of the *lis pendens*, with one of the subleases specifically noting that, because of the *lis pendens*, Standard was required to "accept a below market rent" for the property.[82]

57.     Notwithstanding Standard's repeated efforts to sublease the Springville location, Standard's leased premises remained empty, at significant cost to Standard in the form of rent and other lease obligations being paid and satisfied for a vacant property, until the Greens

---

[78] Standard Plumbing Supply Co. Dep. 55:5–56:3 (Feb. 8, 2017), relevant parts attached as **Exhibit Q**.
[79] *See* Letter of Intent (Apr. 28, 2014), attached as **Exhibit R**.
[80] *E.g.,* Affidavit of Richard Reese in Support of Standard Plumbing Supply Co., Inc.'s Motion for Release of the Notice of Lis Pendens (Sept. 24, 2014) ¶ 23, docket no. 68-5, filed May 13, 2016.
[81] *Id.* at ¶ 24.
[82] *See* Orem & Lehi Sublease Agreements, collectively attached as **Exhibit S**.

4814-1640-9431

foreclosed on the entire Springville property thereby terminating the lease.[83]

58.     As a result of the *lis pendens*, Standard has unequivocally been denied, *inter alia*, its contractual rights under its leases to quiet enjoyment of the leased premises.[84]

59.     Since January 2013 when Standard purchased Sprinkler World, Standard has expended a considerable amount of money in an attempt to mitigate the damaging effects of the above-captioned lawsuit on Sprinkler World and its business.[85]

60.     Standard has had to act aggressively to mitigate the damages caused by the *lis pendens*: Standard purchased a new building in American Fork, built a new building in Springville, and made space available in Orem and Lehi to (a) ensure the vitality of Sprinkler World (b) avoid being forced out of the original Sprinkler World leases and forfeiting location goodwill, and (c) offset and mitigate other losses incurred because of the *lis pendens*.[86]

61.     In a further attempt to mitigate its damages, Standard offered the five Sprinkler World locations to the Greens. The Greens rejected that offer.[87]

### Release of the Five Lis Pendens

62.     Pursuant to the Greens' July 22, 2016 settlement agreement with, *inter alia*, Harward Irrigation, the five *lis pendens* against the Sprinkler World properties were released.[88]

**B.     Utah Code §§ 38-9-203(3) and 78B-6-1304.5: Groundless *Lis Pendens***

**1.     Legal Elements Required to Show that the Five *Lis Pendens* are**

---

[83] *E.g.,* Affidavit of Richard Reese in Support of Standard Plumbing Supply Co., Inc.'s Objection to Grass Valley Holdings, L.P.'s Motion to Approve Settlement Agreement Terminating Automatic Stay with Respect to Springville Property (Mar. 24, 2014) ¶ 5(c), docket no. 68-24, filed May 13, 2016.

[84] *E.g.,* Affidavit of Richard Reese in Support of Standard Plumbing Supply Co., Inc.'s Motion for Release of the Notice of Lis Pendens (Sept. 24, 2014) ¶ 25, docket no. 68-5, filed May 13, 2016.

[85] *E.g.,* Affidavit of Richard Reese in Support of Standard Plumbing Supply Co., Inc.'s Objection to Grass Valley Holdings, L.P.'s Motion to Approve Settlement Agreement Terminating Automatic Stay with Respect to Springville Property (Mar. 24, 2014) ¶ 6, docket no. 68-24, filed May 13, 2016.

[86] *Id.* at ¶ 7.

[87] Email from R. Reese to G. & M. Green (Mar. 19, 2014), attached as **Exhibit T**.

[88] *E.g.,* Ex. H; *see also* Release of Lis Pendens, docket nos. 264-16 – 264-20, filed Mar. 22, 2016.

4814-1640-9431

**Invalid under Utah Code §§ 38-9-203(3) and 78B-6-1304.5**

Under Utah Code § 38-9-203(3),

> A person is liable to the record owner of real property for $10,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees and costs, who records or causes to be recorded a wrongful lien in the office of the county recorder against the real property, knowing or having reason to know that the document … is groundless.

In 2016, the Utah State Legislature clarified that this principle also applies to *lis pendens* by enacting Utah Code § 78B-6-1304.5:

> A person is liable to the record owner of real property, or to a person with a leasehold interest in the real property that is damaged by the maintenance of a notice of pendency, for $10,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees and costs, if the person records or causes to be recorded a notice of pendency against the real property, knowing or having reason to know that … the notice is groundless.

Under Utah law, "A claim of interest in real property is groundless if it 'has no arguable basis or is not supported by any credible evidence.'"[89]

### 2. Undisputed Material Facts Showing that the Five *Lis Pendens* are Groundless under Utah Code §§ 38-9-203(3) and 78B-6-1304.5

63. Standard incorporates by reference the preceding paragraphs 1 through 62 as if fully set forth herein as all such undisputed material facts pertain to Standard's counterclaim for declaratory judgment that the Greens' *lis pendens* were invalid prior to removal.

### ARGUMENT

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is genuine only if "a reasonable jury could find in favor of the nonmoving party

---

[89] *Commercial Inv. Corp. v. Siggard*, 936 P.2d 1105, 1111 (Utah Ct. App. 1997) (quoting *Evergreen West, Inc. v. Boyd*, 810 P.2d 612, 619 (Ariz. Ct. App. 1991)).

on the issue."[90] In making this determination, courts "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."[91] A party may move for summary judgment on any claim (or part of a claim) "at any time" unless otherwise ordered by the Court.[92]

## I.   STANDARD IS ENTITLED TO SUMMARY JUDGMENT ON ITS DECLARATORY JUDGMENT CLAIMS

Summary judgment as to Standard's declaratory judgment claims is appropriate at this juncture and Standard is entitled to the same. Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Such an "actual controversy" referred to by the Declaratory Judgment Act "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III of the United States Constitution."[93] Thus, a declaratory judgment action may be properly decided if

> The controversy [is] definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a *real and substantial controversy* admitting of specific relief through a decree of a conclusive character, *as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.*[94]

This Court has already determined that both of Standard's declaratory judgment claims present an "actual controversy" under the Declaratory Judgment Act. Specifically, in the 287 Order, this Court determined that whether the APSA entered into between Standard and Harward

---

[90] *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014).

[91] *Id.* (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000)).

[92] FED. R. CIV. P. 56(a)-(b).

[93] *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

[94] *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937) (emphases in original)).

Irrigation is a valid and enforceable contract presents "a definite and concrete" controversy.[95] This Court also held that "the fifth cause of action presents a definite and concrete controversy about whether the *lis pendens* notices were validly filed."[96] Thus, this Court has already answered the legal question as to whether it can enter a declaratory judgment on the validity of the APSA and the invalidity of the Greens' *lis pendens*. Because both of these claims present actual controversies, summary adjudication of Standard's declaratory judgment claims is proper.

Moreover, as discussed *infra*, Standard has proven the elements of both its contract validity and *lis pendens* invalidity claims. Not only do the undisputed material facts show that the APSA is a valid and enforceable contract, but the facts also show that the five *lis pendens* are invalid. Accordingly, Standard is entitled to a declaratory judgment on each of these claims.

### A. The Undisputed Material Facts Show that the APSA is a Valid and Enforceable Contract

It cannot be genuinely disputed that the APSA entered into between Standard and Harward Irrigation is a valid and enforceable contract. Under Utah law, "[t]here are two primary elements necessary for a contract: (1) an offer and (2) an acceptance."[97] An offer is a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it."[98] An offer's "terms must be definite and unambiguous."[99] Similarly, "[a]n acceptance must unconditionally assent to all material terms presented in the offer, including price and method of performance, or it is a

---

[95] 287 Order at 16, docket no. 287, entered Mar. 29, 2017.
[96] *Id.* at 18.
[97] *1-800 Contacts, Inc. v. Weigner*, 2005 UT App 523, ¶ 2, 127 P.3d 1241.
[98] *Id.* (quoting *Eng'g Assocs. v. Irving Place Assocs.*, 622 P.2d 784, 787 (Utah 1980)).
[99] *Lebrecht v. Deep Blue Pools & Spas Inc.*, 2016 UT App 110, ¶ 13, 374 P.3d 1064 (quoting *DCM Inv. Corp. v. Pinecrest Inv. Co.*, 2001 UT 91, ¶ 12, 34 P.3d 785).

4814-1640-9431

rejection of the offer."[100] Thus, a "proposal of different terms from those of the offer constitutes a counteroffer, and no contract arises."[101]

Additional elements required to form a valid contract include consideration and mutual assent. "Consideration is an act or promise, bargained for and given in exchange for a promise."[102] Similarly, "a contract is not formed unless there is a meeting of the minds,"[103] also known as mutual assent, "which must be spelled out, either expressly or implicitly, with sufficient definiteness to be enforced."[104]

"In determining whether the parties created an enforceable contract, a court should consider all preliminary negotiations, offers, and counteroffers and interpret the various expressions of the parties for the purpose of deciding whether the parties reached agreement on complete and definite terms."[105] "[T]he burden of proof for showing the parties' mutual assent as to all material terms and conditions is on the party claiming that there is a contract."[106]

The January 9, 2013 APSA entered into between Standard and Harward Irrigation is a valid and enforceable contract. The signed and fully executed APSA is itself conclusive evidence of an offer and acceptance.[107] Moreover, the APSA is also supported by consideration: Standard agreed to lease the five Sprinkler World locations and purchase the fixed assets, inventory, equipment, and intellectual property of Sprinkler World[108] and to pay the property tax, insurance,

---

[100] *Id.* (quoting *Cal Wordsworth Constr. v. City of St. George*, 898 P.2d 1372, 1376 (Utah 1995)).

[101] *Cal Wordsworth Constr.*, 898 P.2d at 1378.

[102] *Resource Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1036 (Utah 1985).

[103] *Lebrecht*, 2016 UT App 110, ¶ 13 (quoting *Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995)).

[104] *Commercial Union Assocs. v. Clayton*, 863 P.2d 29, 37 (Utah Ct. App. 1993) (quoting *Pingree v. Cont'l Grp. of Utah, Inc.*, 558 P.2d 1317, 1321 (Utah 1976)).

[105] *Lebrecht*, 2016 UT App 110, ¶ 14 (quoting *1-800 Contacts*, 2005 UT App 523, ¶ 4).

[106] *Cal Wadsworth Constr.*, 898 P.2d at 1376.

[107] *See* Ex. G.

[108] *E.g., id.* at 1–3; *see also* Commercial & Industrial Lease (Single Tenant Net) dated Jan. 9, 2013, docket no. 117-2, filed Aug. 19, 2016 (representative lease for the Springville, Utah Sprinkler World property).

4814-1640-9431

and maintenance on the leased locations.[109] And unlike the Greens' failed and unconsummated "Final Offer," the terms of the APSA are "spelled out … with sufficient definiteness to be enforced," thereby evidencing Standard and Harward Irrigation's meeting of the minds.[110]

Moreover, the Greens have effectively admitted that Standard and Harward Irrigation were free to enter into the APSA because the Greens' so-called "Final Offer" was, at best, simply that: an offer. Without a consummated acceptance, the "Final Offer" posed no barrier to Harward Irrigation's right and authority to enter into the APSA. Moreover, as this Court has already recognized, the Greens have "openly acknowledge[d] that the ["Final Offer"] was never completed" and that "Harward Irrigation … entered into an agreement with Standard Plumbing instead."[111] This Court further stated that the Greens "do[] not dispute that the sale [(i.e. the "Final Offer")] failed to close."[112] And in a separate lawsuit involving Standard and the Greens, Judge Sam found agreement among the parties "that Green Enterprises never actually purchased the trademark in question from Harward" via the "Final Offer."[113]

Regardless, the Greens themselves have repeatedly recognized the validity of Standard's APSA with Harward Irrigation.[114] For example, the Greens acknowledged the APSA's validity in their July 22, 2016 settlement agreement with Harward Irrigation:

> Nothing in this [settlement a]greement shall constitute or operate as a release of the [APSA], dated January 9, 2013, made between [Harward Irrigation] and the Standard Parties and all rights and remedies under that purchase and sale agreement are reserved to Grass Valley, Harward Irrigation Systems, Inc., and/or any of the other Harward Parties.[115]

---

[109] *See* Ex. D. at 36:19–37:3.
[110] *Commercial Union Assocs.*, 863 P.2d at 37 (quoting *Pingree*, 558 P.2d at 1321).
[111] 152 Order at 16–17.
[112] *Id.* at 17.
[113] Ex. I at *4; *see also id.* at *3 ("The parties agree that Green Enterprises never actually purchased the trademark in question before Harward backed out of any agreement it might have made.").
[114] *See* Statement of Elements and Undisputed Material Facts (the "Facts"), *supra*, at ¶ 25.
[115] Ex. H at ¶ 16.

23

Similarly, Garth Green specifically testified that he knows about the APSA between Standard and Harward Irrigation and that "that *agreement* … speak[s] for itself."[116] Moreover this Court has already held that Standard's actions in approaching Harward Irrigation and entering the APSA comprise "lawful competitive conduct" irrespective of the Greens' prior (but failed) negotiations.[117] Simply stated, the Greens' competitive negotiations were not a barrier to Standard's competing offer which resulted in the APSA.

In sum, the Greens and this Court have previously recognized the APSA's validity. And a review of the APSA itself shows that it is a valid and enforceable contract. Indeed, there can be no dispute that the APSA comprises an offer and acceptance premised on mutual consideration and a meeting of the minds. And the Greens' unsuccessful negotiations which preceded the APSA do not alter these unassailable facts. This is particularly true as (1) the Greens' so-called "Final Offer" was post-dated by ongoing (but unsuccessful) negotiations between the Greens and Harward Irrigation reflecting the lack of an actual agreement—consistent with Randal Harward's repeated assurances that no agreement existed—and (2) the Greens themselves unilaterally terminated their negotiations with Harward Irrigation stating that and "deal" was over.[118] Accordingly, Standard is entitled to summary judgment and a judicial declaration that the APSA is a valid and enforceable contract.

### B.     The Undisputed Material Facts Show that the Five *Lis Pendens* are Invalid

Standard is also entitled to summary judgment on its declaratory judgment claim regarding the invalidity of the Greens' five *lis pendens* filed against the Sprinkler World

---

[116] *See* Facts, *supra*, at ¶ 25.
[117] *See id.* at ¶ 27.
[118] *See id.* at ¶¶ 4-19.

properties. Although the *lis pendens* have been the subject of much discussion before this Court, this Court has not yet addressed whether the five *lis pendens* were, in fact, validly filed from the outset.[119] And, as this Court has already recognized, the recent release of the *lis pendens* does not preclude Standard's declaratory judgment claim.[120] Accordingly, Standard's fifth cause of action is ripe for adjudication as a matter of law.

Under Utah law, a *lis pendens* can be invalid under either of two groups of statutes: Utah Code § 78B-6-1303, which states that a *lis pendens* may only be filed in a legal action "affecting the title to, or right of possession of, real property," and Utah Code §§ 38-9-203(3) and 78B-6-1304.5, both of which forbid groundless *lis pendens*. The Greens' five *lis pendens* are invalid under both of these groups of statutes.

### 1. The Greens' Now Waived and Released Possession Claims Do Not Support a *Lis Pendens* under Utah Code § 78B-1303

The Greens' possession claims—which are based on their so-called "Final Offer" and which have now been irrevocably waived,  released and forever discharged via settlement between the Greens and the Harward parties—do not support any of the *lis pendens* noticed against the Sprinkler World properties. Specifically, under Utah Code § 78B-6-1303(1)(a) (2008), "[e]ither party to an action affecting the title to, or the right of possession of, real property may file a notice of the pendency of the action with the county recorder in the county where the property or any portion of the property is located." As amended, Section 78B-6-1303(1)(a) states,

Any party to an action filed in the United States District Court for the District of

---

[119] *See* 287 Order at 18 ("Whether the Green's claims '[affect] the title to, or the right of possession of, real property' and whether the *lis pendens* notices were valid has not been specifically resolved.").

[120] *Winters v. Schulman*, 1999 UT App 119, ¶ 13, 977 P.2d 1218 (holding that a prior order releasing the lis pendens did not preclude the plaintiffs' wrongful lien or damages claim under collateral estoppel because these issues were not "specifically address[ed]" in prior rulings); *see also* 287 Order at 17.

4814-1640-9431

Utah, the United States Bankruptcy Court for the District of Utah, or a Utah district court that affects the title to, or the right of possession of, real property may file a notice of pendency of action.

Thus, under either the 2008 or 2016 versions of the statute, a *lis pendens* is proper <u>only</u> if it is filed in conjunction with an action that "affects the title to, or the right of possession of, real property."

Utah courts have held that the "action" must include a "possession claim [that] would support a lis pendens."[121] If a claim has been dismissed or is "legally insufficient to support any claim of title," then the case does not have a claim "affecting title to or possession of the subject property."[122]

The central premise of the Greens' original Complaint against Harward Irrigation was that Harward Irrigation breached the "Final Offer" by entering into the APSA with Standard.[123] The Greens further claimed that the "Final Offer" gave them a right of possession to, or a leasehold interest in, the Sprinkler World properties."[124] Based on this alleged "right of possession" bestowed upon them by the "Final Offer," the Greens filed a notice of *lis pendens* against each of the real properties (in their entirety) housing the five Sprinkler World retail stores (among other tenants).[125]

But, as discussed in greater detail *infra*, the "Final Offer" does not give (and never has given) rise to a cognizable possession claim that could support a claim "affecting title to or possession of the subject property." The "Final Offer" is not a valid contract because it was not accepted by Harward Irrigation and because it does not evidence a "meeting of the minds." And

---

[121] *Needham v. Fannie Mae*, No. 2-11-cv-00260-DN, 2012 WL 681781, at *4 (D. Utah Feb. 29, 2012).
[122] *Id.* (citing Utah Code § 78B-6-1303).
[123] *See* Ex. C at 16–19.
[124] *See id.* ¶ 9, ¶¶ 20–21.
[125] *See* Ex. J.

even if Harward Irrigation had accepted the Greens' "Final Offer," any such agreement violates the Statute of Frauds.

### a.      The "Final Offer" is Not a Valid Contract

As explained above, a contract is valid only if there is both an offer and an acceptance.[126] The so-called "Final Offer" only meets one-half of this equation. Although the Greens tendered the "Final Offer" to Harward Irrigation,[127] Harward Irrigation did not ultimately accept that offer.[128] Indeed, Harward Irrigation's "yes" email response was nothing more than an invitation for continued negotiations and counteroffers. And that is precisely what the Greens and Harward Irrigation voluntarily did—continued to negotiate without ever reaching, let alone consummating, a final agreement. In fact, the Greens themselves later unilaterally rescinded the "Final Offer" and told Harward Irrigation that the "Deals [sic] over."[129] Without an acceptance, the "Final Offer" is nothing more than the ghost of negotiations past.

Moreover, "a contract is not formed unless there is a meeting of the minds,"[130] "which must be spelled out, either expressly or implicitly, with sufficient definiteness to be enforced."[131] While the "Final Offer" may reflect the Greens' intent behind a proposed version of a deal with Harward Irrigation, Harward Irrigation clearly was not on board with the Greens' proposal. This is reflected in the Greens and Harward Irrigation's ongoing post-January 2, 2013 negotiations. Regardless, in the words of Randall Harward, "the paperwork was different than what [Harward Irrigation] had felt it should have been."[132] Because of this, Harward Irrigation "thought they

---

[126] *1-800 Contacts*, 2005 UT App 523, ¶ 2.
[127] *See* Ex. B.
[128] Ex. D at 18:24–19:3.
[129] *See* Ex. E.
[130] *Lebrecht*, 2016 UT App 110, ¶ 13 (quoting *Sackler*, 897 P.2d at 1220).
[131] *Commercial Union Assocs.*, 863 P.2d at 37 (quoting *Pingree*, 558 P.2d at 1321).
[132] Ex. D at 18:24–19:3.

4814-1640-9431

didn't have a deal" with the Green Defendants.[133] This is the antithesis of a meeting of the minds. Not only was there an absence of the meeting of the minds as to the general existence of a deal, the Greens and Harward Irrigation did not agree on the terms of the alleged deal.

In addition, the "Final Offer" lacks the "definiteness" necessary to be enforced.[134] For one, the final purchase price remained unspecified subject to completion of "a full inventory count."[135] For another, the items included in the "Final Offer" were not clearly spelled out: the "Final Offer" allowed the Green Defendants to (a) "choose the Vehicles, Forklifts, & Trailers that will be needed to continue operations of Sprinkler World" and "pay 90% of their current NADA fair condition private party value" and (b) pay $120,000 "for all equipment and non-vehicle assets."[136] Such open-ended provisions further evidence that the "Final Offer" was just a proposal and not a set-in-stone deal between the Greens and Harward Irrigation.

The results of this postmortem of the "Final Offer" are not new to the Greens. Indeed, this Court recognized that the Greens "openly acknowledge[d] that the ["Final Offer"] was never completed" and that "Harward Irrigation … entered into an agreement with Standard Plumbing instead."[137] This Court further stated that the Greens "do[] not dispute that the sale [(i.e. the "Final Offer")] failed to close."[138] And in 2014, Judge Sam recognized that Harward Irrigation never consummated its negotiations with the Greens and instead executed the APSA with Standard.[139]

Because the "Final Offer" is not a valid and enforceable contract, it does not give rise to a

---

[133] *Id.*
[134] *Commercial Union Assocs.*, 863 P.2d at 37 (quoting *Pingree*, 558 P.2d at 1321).
[135] Ex. B at 2–3.
[136] *Id.*
[137] 152 Order at 16–17.
[138] *Id.* at 17.
[139] *See* Ex. I at *3-*4.

4814-1640-9431

possession claim over the Sprinkler World properties. Thus, the Greens' alleged possession claims are "legally insufficient to support any claim of title."[140] And without a claim "affecting title to or possession of the subject property," the Green Defendants' five *lis pendens* are and were invalid under Utah Code § 78B-6-1303 from the outset.

### b.    *Regardless, the "Final Offer" Violates the Statute of Frauds and is Void Ab Initio Thereunder*

Even if Harward Irrigation had accepted the Greens' "Final Offer" and the Greens had not voluntarily continued to negotiate material changes to the terms thereof, the "Final Offer" violates the Statute of Frauds and is void ab initio. Included within the "Final Offer" is a lease provision in which the Greens offered to "sign a 5 year lease on all 5 of your branch properties at 85% of your proposed lease rate."[141] A lease agreement "for a term . . . exceeding one year" must be made "in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same."[142]

The Greens have never produced—and do not have—a writing signed by Harward Irrigation or Grass Valley that comports with the requirements for leases under the Statute of Frauds. Without such a writing, the "Final Offer" is invalid under the Statute of Frauds and cannot give rise to a possession claim over the Sprinkler World Properties. Again, because the Greens lack a claim "affecting title to or possession of the subject property," the Green' five *lis pendens* are and were invalid under Utah Code § 78B-6-1303 from the outset. Accordingly, Standard is entitled to summary judgment and a judicial declaration that the five *lis pendens* asserted against the Sprinkler World properties by the Greens were invalid under Utah Code §

---

[140] *Needham*, 2012 WL 681781, at *4 (citing Utah Code § 78B-6-1303).
[141] Ex. B at 3.
[142] Utah Code § 25-5-1.

4814-1640-9431

78B-6-1303. It is also important to note that this was true well before the *lis pendens* were even filed. In other words, the Greens' *lis pendens* are not only invalid, they were invalid from the outset.

### 2. The Greens' Five *Lis Pendens* Are Groundless

In addition, the Greens' five *lis pendens* are groundless under Utah Code §§ 38-9-203(3) and 78B-6-1304.5. Under Utah Code § 38-9-203(3),

> A person is liable to the record owner of real property for $10,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees and costs, who records or causes to be recorded a wrongful lien in the office of the county recorder against the real property, knowing or having reason to know that the document . . . is groundless.

In 2016, the Utah State Legislature clarified that this principle also applies to *lis pendens* by enacting Utah Code § 78B-6-1304.5:

> A person is liable to the record owner of real property, or to a person with a leasehold interest in the real property that is damaged by the maintenance of a notice of pendency, for $10,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees and costs, if the person records or causes to be recorded a notice of pendency against the real property, knowing or having reason to know that . . . the notice is groundless.

"[A] claim of interest in real property is groundless if it 'has no arguable basis or is not supported by any credible evidence.'"[143]

As explained above, the five *lis pendens* asserted by the Greens against the Sprinkler World properties have no arguable basis because the Greens have never had a cognizable claim "affecting title to or possession of the subject property" as required by Utah Code § 78B-6-1303. Nor are the five *lis pendens* supported by any credible evidence. In fact, just the opposite is true: as discussed above, the Greens lacked any evidence to form the basis of proper *lis pendens* from

---

[143] *Commercial Inv. Corp. v. Siggard*, 936 P.2d 1105, 1111 (Utah Ct. App. 1997) (quoting *Evergreen West, Inc. v. Boyd*, 810 P.2d 612, 619 (Ariz. Ct. App. 1991)).

4814-1640-9431

the outset. And despite this lack of evidence, the Greens nevertheless filed and maintained the five *lis pendens* in order to harm Standard and Harward Irrigation and to gain unfair business advantages never contemplated under the *lis pendens* statutes. For example, the Greens told Standard that they asserted the five *lis pendens* in order to cause Standard "to hurt a little."[144] And the Greens attempted to use the *lis pendens* to coerce Harward Irrigation into demanding that Standard pay $200,000 to settle this matter before Standard was even added as a party.[145]

In addition, the Greens have stated that one of their objectives in asserting the *lis pendens* was to purchase the note on the Springville property and foreclose on the property in order to make an "investment."[146] By encumbering the Sprinkler World properties with the *lis pendens*, the Greens forced the entire Springville location into foreclosure, thereby allowing the Greens to purchase it at a significant discount.[147] Simply put, the Greens used an alleged "notice" of possession rights to a portion of the Springville property to ultimately acquire outright ownership of the entire property. Moreover, in concert with the leverage created by the *lis pendens*, the Greens were also later able to wrest fee simple ownership—not merely possession—of Grass Valley's Roosevelt, Utah property for less than 1/7 of its true market value as well.[148] Thus, not only were the Greens' *lis pendens* invalid from the outset, the Greens have improperly used and leveraged the *lis pendens* to acquire extensive ownership interests to which they were never legal entitled.

This Court previously noted that

---

[144] Ex. F at 19:3–4; *see also* Facts, *supra*, at ¶ 35.
[145] Ex. U.
[146] Ex. K at 120:20– 122:25.
[147] *E.g.,* Ex. M. at 280:19 – 281:10; Ex. V.
[148] *See* Ex. H; *see also* Bankruptcy Case, Docket No. 248 (Oct. 7, 2016); Order Approving Settlement Agreement, Assumption and Assignment of Leases, Rejection of Lease, and Conveyance of Property, docket no. 226-13, filed Mar. 2, 2017.

4814-1640-9431

> it may be significant that the Greens purchased the Springville property in a foreclosure sale after recording a notice of *lis pendens* on the property and indicating an intention to foreclose. It is also significant that the notices of *lis pendens* appear to have negatively impacted the ability of the Harwards and the Standard Parties to market or sublease the properties.[149]

Such facts *are* significant: rather than forming the basis of a proper *lis pendens*, these facts show that the Greens asserted the *lis pendens* based not on credible evidence but with the ulterior motive of harming Standard and Harward Irrigation. Without an arguable basis or credible evidence to back them up, the Greens' five *lis pendens* are groundless by definition. As such, the *lis pendens* are invalid under Utah Code §§ 38-9-203(3) and 78B-6-1304.5.

At bottom, the five *lis pendens* asserted by the Greens against the Sprinkler World properties were invalid under both Utah Code § 78B-6-1303 and Utah Code §§ 38-9-203(3) and 78B-6-1304.5 from the outset. Accordingly, Standard is entitled to summary judgment and a judicial declaration that the five *lis pendens* were invalid at the time they were filed.

## II.  STANDARD RESERVES THE RIGHT TO MOVE FOR FURTHER RELIEF UNDER THE DECLARATORY JUDGMENT ACT

In the event that this Court grants Standard its requested declaratory relief, Standard reserves the right to move for "further relief" as provided for under the Declaratory Judgment Act. Under 28 U.S.C. § 2202, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." Although

> [i]t is not the primary function of the court in a declaratory judgment proceeding to award damages, … the grant of power contained in section 2 of the [Declaratory Judgment Act] is broad enough to vest the court with jurisdiction to award damages where it is necessary or proper to effectuate relief based upon the declaratory judgment rendered in the proceeding.[150]

---

[149] Memorandum Decision & Order at 10, Docket No. 118 (Aug. 22, 2016).

[150] *Sec. Ins. Co. of New Haven v. White*, 236 F.2d 215, 220 (10th Cir. 1956) (affirming district court's grant of

Thus, "[i]t is well settled that 'further relief' may include an award for damages."[151]

Because expert discovery is ongoing, Standard is not yet equipped to provide comprehensive evidence of its damages relating to its declaratory judgment claims. Accordingly, Standard will move for an award of damages relating to its declaratory judgment claims under Section 2202 at a later date. The instant motion is, therefore, limited to a determination of liability.

## CONCLUSION

For the foregoing reasons, Standard's renewed motion for partial summary judgment on its declaratory judgment counterclaims should be granted.

DATED this 1st day of December, 2017.

Respectfully submitted,
**KIRTON | McCONKIE**

By: */s/ James T. Burton*
    James T. Burton
    Joshua S. Rupp
    Ryan R. Beckstrom
*Counsel for Standard Plumbing Supply Company, Inc.*

---

declaratory judgment and subsequent award of damages and attorneys' fees).
[151] *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 400 (2d Cir. 1975); *Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986) ("The prevailing party in a declaratory judgment action subsequently may seek *further* relief. Such 'further relief' can include damages."); *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 537 (5th Cir. 1978); *Hudson v. Hardy*, 424 F.2d 854, 855 (D.C. Cir. 1970).

4814-1640-9431

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of December, 2017, I caused a copy of the foregoing to be filed using the Court's CM/ECF electronic filing system, which provides service to all counsel of record.

/s/ James T. Burton

4814-1640-9431, v. 1