JAMES T. BURTON (11875)
*jburton@kmclaw.com*
JOSHUA S. RUPP (12647)
*jrupp@kmclaw.com*
RYAN R. BECKSTROM (14593)
*rbeckstrom@kmclaw.com*
**KIRTON │ McCONKIE**
Key Bank Tower
36 South State Street, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

*Counsel for Standard Plumbing
Supply Company, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERS., INC., *et al.*, <br><br> Counterclaim Defendants, <br><br> v. <br><br> RANDALL HARWARD, *et al.*, <br><br> Counterclaim Plaintiffs. | Case No. 2:15-cv-00556-RJS-EJF <br><br> **STANDARD PLUMBING SUPPLY COMPANY, INC.'S MEMORANDUM IN OPPOSITION TO EX PARTE MOTION FOR AN ENLARGEMENT OF TIME TO RESPOND TO STANDARD'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DECLARATORY JUDGMENT CLAIMS** <br><br> Honorable Judge Robert J. Shelby <br> Honorable Magistrate Judge Evelyn J. Furse |

Pursuant to Federal Rule of Civil Procedure (the "Rule(s)") 56(d), Standard Plumbing Supply Company, Inc. ("Standard") opposes Garth O. Green Enterprises, Inc., et al.'s (the

"Greens") Ex Parte Motion ("Motion")[1] for an Enlargement of Time to Respond to Standard's Renewed Motion for Partial Summary Judgment re: Declaratory Judgment Claims ("MPSJ").[2]

## INTRODUCTION

The Greens' Rule 6(b) Motion is a Rule 56(d) motion in disguise. But Rule 56(d) imposes specific procedural and substantive obligations on the movant, none of which the Greens have complied with nor attempted to comply with. As a result, the Motion should be denied. The Greens have already deposed Richard Reese twice and no further deposition testimony will aid either the briefing or the resolution of Standard's MPSJ. At a minimum, the Greens have not met their burden to specifically identify the additional discovery they believe will bear on the MPSJ. The failure to do so is fatal under Rule 56(d) and the Motion must be denied.

## ARGUMENT

### I. THE MOTION IS GOVERNED BY RULE 56(d), WHICH THE GREENS HAVE NOT COMPLIED WITH

While styled as run-of-the-mill motion for "extension of time" under "Rule 6(b)" and disclaiming "the need for a Rule 56(d) motion," the Greens principally seek relief squarely governed by Rule 56(d), <u>not</u> Rule 6(b).[3] Irrespective of its label, the Motion substantively argues that the Greens "cannot present facts essential to justify [their] opposition"[4] to Standard's MPSJ, describing Richard Reese as "a critical fact witness" which the Greens must be allowed to depose "prior to having to file their opposition memorandum…."[5] Such circumstances squarely invoke Rule 56(d) and relief is, therefore, governed thereby.

Rule 6(b) cannot be used as a vehicle to circumvent Rule 56(d). On the contrary, in

---

[1] Docket 554.
[2] Docket 539.
[3] *See* docket 554 at 1-2.
[4] *See* FED. R. CIV. P. 56(d).
[5] *See* docket 554 at 2 & 6.

excess of Rule 6(b)'s "good cause" threshold, Rule 56(d) imposes specific obligations on a party which seeks relief thereunder.[6] Indeed, under the plain language of Rule 56(d), the Greens must, "by affidavit or declaration," specifically identify the "reasons [they] cannot present facts essential to justify [their] opposition" to the MPSJ at the present time.[7] Clarifying this requirement, the Tenth Circuit held as follows:

> A prerequisite to granting relief pursuant to Rule 56[(d)] is an affidavit furnished by the [Rule 56(d) movant]. Although the affidavit need not contain evidentiary facts, **it must explain why facts precluding summary judgment cannot be presented**. **This includes identifying the probable facts not available and what steps have been taken to obtain these facts**. In this circuit, the [Rule 56(d) movant] also **must explain how additional time will enable him to rebut [the summary judgment] movant's allegations of no genuine issue of fact**. Counsel's unverified assertion in a memorandum opposing summary judgment does not comply with Rule 56[(d)] and results in a waiver.[8]

In an unabashed effort to evade Rule 56(d), the Greens have styled their Motion as one arising under Rule 6(b). Indeed, not only have the Greens "fail[ed] to file the required affidavit, [the Greens] have failed to satisfy the other requirements of Rule 56([d])" including "explaining what facts they want to discover, why they have not yet discovered them, and how additional time would help them rebut [Standard's] allegations…."[9] For this reason alone, the Motion should be denied. The Greens cannot be permitted to avoid Rule 56(d) by styling their Motion as one brought under Rule 6(b) when Rule 56(d) controls.

Notably, Standard brought this issue (and authority) to the Greens' attention *before* the Motion was filed.[10] The Greens, nevertheless, chose to nonetheless file the Motion.[11] Indeed, irrespective of the fact that the Motion plainly falls within the ambit of Rule 56(d), the Greens

---

[6] *See* FED. R. CIV. P. 56(d).
[7] *Id.*
[8] *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (internal alterations and quotation marks omitted; bold emphasis added); *see Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th Cir. 2006) (same).
[9] *See Price*, 232 F.3d at 783-784.
[10] *See* correspondence dated December 13-15, 2017, attached as **Exhibit "A"** hereto.
[11] *Compare id.*, *with* docket 554.

moved under Rule 6(b) for the specific purpose of "avoid[ing]" the requirements of Rule 56(d).[12] This approach should not be countenanced and the Motion should be denied.

## II. THE GREENS HAVE ALREADY DEPOSED RICHARD REESE, TWICE, OBVIATING THE NEED FOR ANY RELIEF UNDER RULE 56(d)

Even if the Greens' Motion is construed as arising under Rule 56(d) despite the absence of a supporting affidavit (which Tenth Circuit law forbids[13]), the Motion is still razed by the record. Specifically, while the Greens characterize Mr. Reese as "a critical fact witness who should be deposed prior to requiring the Greens to oppose Standard's MPSJ," the Greens neglect to mention that they have already deposed Mr. Reese on two prior occasions. More important than the mere occurrence of two depositions, the Greens have extensively questioned Mr. Reese concerning both of the declaratory judgment claims at issue in the MPSJ, i.e., validity and enforceability of Standard's Asset Purchase and Sale Agreement ("APSA") with Harward Irrigation Systems, Inc. ("Harward") and invalidity of the Greens' lis pendens.

### A. The Greens Have Taken Extensive Deposition Testimony of Mr. Reese and Harward Irrigation Related to Validity of the APSA

#### 1. The Greens Took Standard's 30(b)(6) Deposition on February 8, 2017 Concerning the APSA

Standard, not Mr. Reese, is a party to the APSA.[14] As such, the relevant deposition testimony related to the APSA is Standard's, not Mr. Reese's in his individual capacity. Importantly, the Greens took Standard's 30(b)(6) deposition on February 8, 2017, for which Mr. Reese was the designee for each of the 31 topics.[15] Critical to the Court's analysis here, the 30(b)(6) notice included at least eight (8) topics directly relevant to the APSA, including Topic

---

[12] *See* Ex. A at 1 ("you are trying to force me to preview a Rule 56(d) motion for you, the time and expense of which the motion to extend is designed to avoid."); docket 554 at 2 & 4 (disclaiming "the need for a Rule 56(d) motion").
[13] *Price*, 232 F.3d at 783 ("Counsel's unverified assertion in a memorandum opposing summary judgment does not comply with Rule 56[(d)] and results in a waiver.").
[14] *See* docket 539-8 (a copy of the APSA).
[15] *See* docket 349-1 (Jan. 24, 2017, Notice of 30(b)(6) deposition).

29: "The validity and enforceability of the APSA and Leases."[16] It is difficult to conceive a topic more on point with Standard's summary judgment brief seeking a judicial declaration that the APSA is "a valid and enforceable contract" than the Greens' Topic 29.[17]

In concert with noticing multiple 30(b)(6) topics directly related to the APSA, the Greens extensively covered APSA issues during the deposition. Indeed, even a cursory examination of the 30(b)(6) deposition's index reveals scores of references to "asset," "assets," "agreement," and "purchase."[18] More importantly, however, is the substance of the Greens' APSA questions, including the following:

- The Absence of an agreement between the Greens and the Harwards leaving Standard free to make offer to purchase Sprinkler World;[19]

- Extended inquiries into negotiation of the APSA, including (a) various meetings of Harward Irrigation and Standard; (b) Harward Irrigation's multiple confirmations that it did not have a deal with the Greens; (c) revocation of the Greens' prior offer; (d) Standard's unawareness of any specific terms of the Greens' prior offer; and (e) extensive correspondence post-dating execution of the APSA;[20] and

- Mr. Reese's recreation during the deposition (on a white board) of Standard's offer to Harward Irrigation in January 2013.[21]

   2.   The Greens also Deposed Mr. Reese on September 23, 2013 Concerning the APSA

Beyond Standard, the Greens previously deposed Mr. Reese personally. A review of that deposition also militates against Rule 56(d) relief. Specifically, Mr. Reese was asked extensive questions concerning the APSA, including (a) how Mr. Reese learned Sprinkler World was for sale; (b) what Mr. Reese discussed with Randall Harward about Sprinkler World being for sale;

---

[16] *See id.* at Topics 2-4, 9, 22, 23, 24 & 29.
[17] *See* docket 539 at 20 and 23.
[18] *See* docket 349-2 (relevant portions of 30(b)(6) index).
[19] *E.g.,* docket 349-3 *(*Standard 30(b)(6) deposition transcript related to APSA) at 93:13-25.
[20] *Id.* at 110-127; *see also id.* at 150 and 157.
[21] *See id.* at 137-146; *see also* docket 349-4 (Exhibit 13A to Standard 30(b)(6) deposition).

(c) Mr. Reese's repeated confirmations that there was no deal between Harward Irrigation and the Greens; (d) the various meetings of Standard and Harward Irrigation leading up to the APSA; (e) Standard's due diligence on Sprinkler World; (f) the Greens' revocation of any offer made to Harward Irrigation; (g) the meeting of Standard's management team concerning the purchase of Sprinkler World; and (h) execution of the APSA.[22] Indeed, the Greens spent 40 of the 51 deposition pages (i.e., 78%) specifically inquiring as to the validity of the APSA.[23]

The examples provided in Sections II(A)(1)-(2), *supra*, are <u>not</u> comprehensive. Nevertheless, even these examples illustrate the Greens' extensive and thorough inquiry of Mr. Reese concerning the validity and enforceability of the APSA, twice. And this is to say nothing of the Greens' depositions of Randall Harward, Richard Harward, and Calvin Harward. To this end, the Greens do not need to take Mr. Reese's deposition for a third time before opposing Standard's MPSJ. On the contrary, the parties and the Court are well-equipped to brief and resolve the MPSJ regarding the validity of the APSA on the existing record. Any further delay would be antithetical to the Greens' self-avowed purpose: "the efficient and expedient resolution of [this] case[]."[24] Accordingly, the Motion should be denied.

### B.  The Greens Have Taken Extensive Deposition Testimony Related to the Invalidity of the Greens' Five (5) Lis Pendens

The lis pendens relate to five (5) Sprinkler World locations where Standard has (or at one time had) a leasehold interest.[25] Importantly, Standard, not Mr. Reese, is a party to those leases. To this end, as noted above, Standard's 30(b)(6) deposition was taken on February 8, 2017. Of the 31 topics, seven (7) dealt directly with invalidity of the lis pendens.[26] These topics include, *inter alia*, Topic 27, which is "The <u>facts establishing the basis</u> for which Standard is claiming

---

[22] *E.g.,* docket 349-5 (Sept. 23, 2013, deposition transcript of Richard Reese, pp. 7 – 47).
[23] *Id.*
[24] *See* docket 554 at 2 (quoting *Dietz v. Bouldin*, -- U.S. ----, 136 S.Ct. 1885, 1892 (2016) (internal quotation marks omitted)).
[25] *See* docket 539-11.
[26] *See* docket 349-1 (Topic nos. 2, 6, 12-13, 23, 27 & 29).

harm and damages related to the lis pendens filed by GOG following the filing of the Action."[27] It is hard to imagine a 30(b)(6) topic more on point with Standard's summary judgment motion, which asserts that the "undisputed material facts show that the five lis pendens are invalid."[28]

In addition to noticing multiple 30(b)(6) topics related to invalidity of the lis pendens, the Greens advanced extensive lines of inquiry on this topic during the 30(b)(6) deposition. For example, as indicated in the 30(b)(6) deposition's index, there are scores of references to the words "lis," "pendens," "Booth,"[29] and "Booth's."[30] More importantly, however, is the substance of the Greens' questions, including the following:

- Standard's factual basis for alleging wrongful use of the lis pendens;[31]

- The Greens' statements that they were going to improperly use the lis pendens to force foreclosure on the Harwards' properties;[32]

- Harm suffered by Standard related to the lis pendens;[33]

- Standard's inability to sublease one or more Sprinkler World properties and having to vacate Sprinkler World locations because of the lis pendens;[34]

- Standard's inability to adequately obtain financing because of the lis pendens;[35]

- Moving Sprinkler World locations because of the lis pendens; and[36]

- Damages incurred by Standard related to the lis pendens.[37]

Again, the foregoing examples are <u>not</u> an exhaustive list from the Standard 30(b)(6) deposition wherein the Greens inquired at length about the invalidity of the lis pendens. This list, however,

---

[27] *Id*. at Topic 27 (emphasis added).
[28] *E.g.,* docket 539 at 23.
[29] Booth is the surname of one of Standard's lis pendens damages experts.
[30] *E.g.,* docket 349-6 (relevant portions of Standard 30(b)(6) index related to the lis pendens).
[31] *E.g.,* docket 349-7 (relevant portions of the Standard 30(b)(6) deposition transcript related to the lis pendens) at 16:19 – 17:5.
[32] *Id*. at 212:11 – 212:13.
[33] *Id*. at 30:13-18, 56:15 – 57:2, 57:12-21, 117:13-18 & 254:8-10.
[34] *Id*. at 54:13 – 56:3.
[35] *Id*. at 58:22 – 60:6.
[36] *Id*. at 62:12 – 63:9 & 77:9-19.
[37] *Id*. at 70:21- 74:18 & 209:14 – 215:24.

clearly indicates that the Greens have conducted a thorough examination of Standard and that no additional depositions are necessary for the Court to be able to rule on Standard's MPSJ.

### III. THE GREENS LACK GOOD CAUSE SUFFICIENT TO JUSTIFY A 21-DAY EXTENSION OF TIME

"Good cause requires a greater showing than excusable neglect."[38] While Standard has no objection to the general accommodation of extension requests premised on scheduling challenges, etc., the Greens have serially abused extensions throughout this case. Even then, had the Greens requested a modest extension of time to oppose the MPSJ tied to the holiday season or other scheduling issues, Standard would have willingly stipulated to the same. But this is not what the Greens did. Instead, the Greens requested a 21-day extension of time without once articulating any need for the additional time beyond taking the deposition of Mr. Reese, discussed *supra*.[39] In fact, even after Standard raised this issue with the Greens, the Greens refused to substantiate the need for an extension of time, let alone 21 additional days.[40] It was not until the Greens filed their instant Motion that Standard was first apprised of the Greens' "alternative request" or any of the grounds therefore.[41]

Regardless, the Greens' Motion is not supported by good cause or even excusable neglect. On the contrary, as the Motion itself acknowledges, the Greens have known about the substance of Standard's MPSJ since at least April 20, 2017.[42] Moreover, as also acknowledged in the Motion, Standard could have filed the MPSJ as early as September 15, 2017, the day after the Greens' Answer was filed in this four-year old case.[43] Simply stated, the Greens have had nearly eight (8) months to prepare their substantive response to the MPSJ. Nevertheless, the Greens

---

[38] *Utah Republican Party v. Herbert*, No. 16-4058, 2017 WL 460987 at *3 (10th Cir. February 3, 2017) (unpublished).
[39] *See* Ex. A at 1-5.
[40] *See id.*
[41] *Compare id.*, *with* docket 554 at 4-6.
[42] *See* docket 554 at 2 (citing docket 338 filed on Apr. 20, 2017).
[43] *See id.* at 5.

8

now ask for 21 days beyond the 28 days allotted under the local rules. But there is no good cause for such a lengthy extension, particularly where the Greens have been aware of the substance of Standard's MPSJ for many months.

Accordingly, the Greens' request in the alternative should be denied. The "efficient and expedient resolution of [this] case[]" will be best served by finalizing briefing on the MPSJ and resolving the MPSJ.

DATED this 18th day of December, 2017.

                                         Respectfully submitted,
                                         **KIRTON | McCONKIE**

                                         By: */s/ James T. Burton*
                                                James T. Burton
                                                Joshua S. Rupp
                                                Ryan R. Beckstrom
                                         *Counsel for Standard Plumbing Supply Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December, 2017, I caused a copy of the foregoing to be filed using the Court's CM/ECF electronic filing system, which provides service to all counsel of record.

/s/ James T. Burton

4835-7985-1096