Joshua S. Ostler (14277)
NELSON JONES, PLLC
8941 S. 700 E., Ste. 203
Sandy, UT 84070
(801) 981-8779
josh@nelsonjoneslegal.com
*Attorney for Garth O. Green Enterprises, Inc.,*
*Garth Green and Michael Green*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERPRISES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> RANDALL HARWARD, et al, <br><br> Defendants. | **REPLY IN SUPPORT OF EX PARTE MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO STANDARD PLUMBING SUPPLY COMPANY, INC.'S MOTION FOR COSTS, EXPENSES AND ATTORNEYS' FEES** <br><br> Case No. 2:15-cv-00556-RJS-EJF <br><br> District Judge Robert J. Shelby <br> Magistrate Judge Evelyn J. Furse |

Plaintiffs Garth O. Green Enterprises, Inc., Garth Green and Michael Green (the "Greens") and their counsel (collectively the "Responding Parties"), respectfully submit this reply memorandum in support of their Ex Parte Motion for Extension of Time to File Response to Standard Plumbing Supply Company, Inc.'s Motion for Costs, Expenses and Attorneys' Fees (the "Motion to Extend").[1] Standard Plumbing Supply Company, Inc.'s ("Standard") opposing memorandum ("Standard's Opposition") misconstrues the Motion to Extend, misconstrues the law on Rule 6(b), and otherwise lacks merit. The Motion to Extend should be granted.

---

[1] Docket No. 562.

# REPLY ARGUMENT

I.    **Standard's Opposition Is Laced With Misrepresentation and Mischaracterization.**

Whether deliberately or negligently, Standard has clearly misconstrued the bases underlying the Motion to Extend and otherwise misrepresented the parties' email conversation. Standard's misrepresentations and mischaracterizations are addressed in turn.

First, Standard claims that "the Greens provided no basis for a second extension beyond the reasons used to support the three-week extension of time already granted by the Court."[2] This is false. Even a cursory review of the Motion to Extend shows that it is based on matters that have only developed *after* the First Extension Request was made on November 29, 2017. The Motion to Extend also relies on the *Richmond* case and difficulties coordinating with prior counsel due to the holiday season. Neither of these issues were ever discussed in the First Extension Request. And it does not matter that the *Worlton* trial was continued on December 7, 2017.[3] While a trial did not occur, the Motion to Extend details the several matters that have required counsel's attention, even to the present. Standard's suggestion that the Motion to Extend is identical to the First Extension Request is simply not true.

Second, Standard claims that the Greens ignored some "good faith inquiry," suggesting that the Greens' Motion to Extend was filed in bad faith.[4] Standard's claim is not supported by the parties' email communications. As an initial matter, the Greens should not have to explain the reasons underlying a simple extension request of 3 business days before Standard will

---

[2] Docket No. 563 at 3.
[3] *See* Docket No. 563 at 6.
[4] Docket No. 563.

stipulate to it. By way of example, earlier today, in the *State v. Worlton* case, undersigned counsel asked opposing counsel for an extension of time until January 2, 2018 by which to respond to a motion to quash subpoena. Opposing counsel did not ask for an explanation but said she was fine with the requested extension. This has been counsel's personal practice and experience with attorneys in other cases. It is only with Standard's attorneys in this case that detailed explanations are demanded before even a simple extension of time will be considered. With respect to Standard's "good faith inquiry" argument, Standard initially asked for an explanation, which the Greens provided. At that point, Standard never made another "good faith inquiry." Rather, Standard presumed to lecture the Greens on how their explanation was insufficient and how, in Standard's "estimation," an additional day was all that was needed. Then, when the Greens referred Standard to the Utah Standards of Professionalism and Civility, Standard took the opportunity to attack the Greens and their counsel. There was no "good faith inquiry" that the Greens ignored.

     Third, Standard claims that "the Greens' Second Extension Request merely catalogues the Greens' counsel's other professional engagements."[5] This is false. While the Motion to Extend refers to counsel's engagements in the *Worlton* and *Richmond* cases, the bulk of the Motion to Extend is dedicated to obligations in *this case* that have resulted from Standard's "pile on" the moment Mr. Mumford withdrew.[6] The Motion to Extend is also based on the holiday season and counsel's inability to fully coordinate with the Greens' prior counsel due to the

---

[5] Docket No. 563 at 5.
[6] *See* Docket No. 562 at 2-4, ¶¶ 1-11.

attorneys' personal and family obligations.[7] Standard conveniently ignores these facts.

Fourth, Standard claims that counsel's statement that he has had "little to no involvement in this case" is "unsupported and questionable."[8] This is a blatant misrepresentation. Counsel never said that he had "little to no involvement *in this case*," as Standard represents.[9] Counsel stated that he "had had little to no involvement with the *discovery phase of this case*".[10] This is absolutely true. Standard knows full well that discovery has been handled primarily by the Greens' former counsel Marcus Mumford and Elaine Monson. Unlike them, undersigned counsel has never attended a deposition in this case, and until Elaine Monson withdrew, undersigned counsel was never involved with any written discovery or document productions. Standard also knows full well that undersigned counsel has only appeared once at a hearing in this case, in August 2017. Standard's willingness to blatantly mischaracterize what counsel stated, and then to characterize counsel's statements as "unsupported and questionable" is offensive.

In sum, Standard's Opposition is premised on misrepresentations and mischaracterizations of the Motion to Extend. Standard's Opposition is unpersuasive and should be disregarded.

## II.     Standard Does Not Understand the Law on "Good Cause."

In arguing against "good cause," Standard continues to place mistaken reliance on the unpublished *Utah Republican Party v. Herbert* case.[11] As the Greens have already explained,

---

[7] *See* Docket No. 562 at 5-6, ¶ 15.
[8] Docket No. 563 at 5.
[9] *Id*. (emphasis added).
[10] Docket No. 562 at 2-3, 7.
[11] *See* Docket No. 563 at 4-6, nn.27-34, 36, 38-40.

"the Tenth Circuit's unpublished opinion contains significant legal errors, including that it is now the first opinion in the country of which counsel is aware to declare that 'good cause' under Rule 6 is a more stringent standard than 'excusable neglect.'"[12] Indeed, courts to actually consider the issue have uniformly recognized that "[w]ithout doubt, 'excusable neglect' under Rule 6(b)(1)(B) is a more stringent standard thana 'good cause' under Rule 6(b)(1)."[13] This is the only reasonable reading of Rule 6(b), as Standard's suggested reading of the rule would render the "exclusable neglect" language superfluous. The *Herbert* opinion's legal error is the result of the fact that the opinion did not rely on a single case construing Rule 6, but instead relied on the "good cause" standard from other rules, like Rule 16, which does not refer to excusable neglect in addition to good cause.[14] In any event, the *Herbert* opinion is unpublished and unpersuasive and should not be followed by this Court. Rather, the tried and tested rule is that Rule 6(b)'s "liberal" good cause standard "is met by a mere showing of good faith or lack of prejudice to the adverse party."[15] The Motion to Extend more than satisfies this standard.

### III.   Standard Feigns Prejudice.

Standard claims it "has been and continues to be prejudiced by the Greens (sic) chronic inability to prioritize this case and meet the deadlines imposed on all litigants under the local

---

[12] Docket No. 488 at 7.
[13] *McCann v. Cullian*, 2015 WL 4254226, at *10 n.9 (N.D. Ill. July 14, 2015); *see also Dimmitt v. Ockenfels*, 407 F.3d 21, 24 (1st Cir. 2005) ("good cause…is less stringent" than "excusable neglect"); *Abraham v. WPX Energy Productions, LLC*, 2013 WL 5934415, at *5 (D.N.M. Oct. 21, 2013) ("Excusable neglect…is a higher burden than good cause.")
[14] *See generally Utah Republican Party v. Herbert*, 678 F. App'x 697 (10th Cir. 2017).
[15] *U.S. v. Real Property located in Layton, Utah 84040*, No. 1:07-cv-6-TS, 2010 WL 2787859, at *2 (D. Utah July 14, 2010) (citation omitted).

rules."[16] Standard's argument fails for several reasons.

First, there is no "chronic inability to prioritize this case and meet the deadlines imposed". In this respect, Standard cites to its own filings, which simply circle back to Docket No. 91, which was related to issues over three years ago.[17] Standard's recycled argument was addressed in detail in the Greens' Reply in Support of Motion in Limine, filed September 15, 2017.[18] Those arguments are hereby incorporated by this reference.

It should be noted that three years ago, as now, Standard piled on significant motions and then refused reasonable requests for extensions of time. Specifically, in October 2014, Standard simultaneously filed lengthy motions for summary judgment and to release lis pendens, while also serving the Greens with a Rule 11 safe harbor letter. And, knowing full well that counsel for the Greens was preparing for an 8-week complex criminal trial, Standard filed fierce oppositions when the Greens requested reasonable extensions of time.[19] Fast forward three years. In the past month, Standard has filed the instant motions for sanctions, a motion for partial summary judgment, a motion for leave to supplement the record, a motion for reasonable expenses incurred, a motion for a discovery status conference, and Standard has noticed depositions for January 3-5, even though the scope of remaining discovery is an outstanding issue yet to be determined.[20] And again, in response to the Greens' reasonable requests to enlarge time, Standard has filed fierce oppositions. There is no "chronic inability" by the Greens to comply

---

[16] Docket No. 563 at 6.
[17] *See* Docket No. 563 at 6.
[18] Docket No. 488 at 4-6.
[19] *See id.*
[20] *See* Docket No. 562 at 2-4.

with deadlines. Rather, there is a chronic inability on the part of Standard to adhere to paragraph 14 of the Utah Standards of Professionalism and Civility.

Second, Standard suggests that the Greens have sought to "endlessly delay resolution of this matter"[21] But Standard's Motion for Fees has nothing to do with the merits of the case and an enlargement of time to respond to the Motion for Fees will not "delay resolution of this matter" in any way. Despite the Court's prior order that it would reserve ruling on Standard's motion for fees based on vexatious litigation,[22] Standard persists in trying to litigate this collateral issue in piecemeal fashion. The point is, Standard has not suffered and does not continue to suffer any discernible prejudice by slight delays in its attempts to recover attorney fees separate and apart from the merits of the case.

Standard has not articulated any prejudice, and its suggestion that it does not have to, which is based exclusively on the *Herbert* decision, should be rejected for the reasons explained above.[23]

## CONCLUSION

For the foregoing reasons, as well as those explained the Responding Parties' Motion to Extend, the Motion to Extend should be granted.

DATE: December 27, 2017.

/s/ Joshua S. Ostler
Joshua S. Ostler
*Counsel for Plaintiffs*

---

[21] Docket No. 563 at 7.
[22] Docket No. 421.
[23] *See* Docket No. 563 at 7.

7

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2017, I filed a true and correct copy of the foregoing REPLY IN SUPPORT OF EX PARTE MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO STANDARD PLUMBING SUPPLY COMPANY, INC.'S MOTION FOR COSTS, EXPENSES AND ATTORNEYS' FEES with the Clerk of Court using the CM/ECF system, which sent electronic notification to all counsel of record.

/s/ Joshua S. Ostler
Joshua S. Ostler