JAMES T. BURTON (11875)
*jburton@kmclaw.com*
JOSHUA S. RUPP (12647)
*jrupp@kmclaw.com*
RYAN R. BECKSTROM (14593)
*rbeckstrom@kmclaw.com*
**KIRTON│McCONKIE**
Key Bank Tower
36 South State Street, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

*Counsel for Standard Plumbing
Supply Company, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERS., INC., *et al.*,<br><br>Counterclaim Defendants,<br><br>v.<br><br>RANDALL HARWARD, *et al.*,<br><br>Counterclaim Plaintiffs. | Case No. 2:15-cv-00556-RJS-EJF<br><br>**STANDARD PLUMBING SUPPLY COMPANY, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT THE RECORD**<br><br>Honorable Judge Robert J. Shelby<br>Honorable Magistrate Judge Evelyn J. Furse |

Pursuant to DUCivR 7-1, Standard Plumbing Supply Company, Inc. ("Standard"), by and through undersigned counsel, hereby respectfully files this Reply Memorandum in Support of Standard's Motion for Leave to Supplement the Record (the "Motion").[1]

## STATEMENT OF ADDITIONAL FACTS

1.     After first unsuccessfully advocating their claims and then unsuccessfully seeking

---

[1] Docket no. 549

reconsideration on multiple prior occasions,[2] Plaintiffs Garth O. Green Enterprises, Inc., Garth O. Green, and Michael Green (collectively, the "Greens") again sought reconsideration of the dismissal of each of their claims (one of which their counsel had been sanctioned[3] for filing in the first place) on October 18, 2017 (the "504 Motion").[4]

2.     Immediately after briefing on the 504 Motion concluded on **November 8, 2017**,[5] yet another motion for reconsideration of the above-referenced sanctions order was filed on **November 9, 2017** (the "524 Motion").[6] The 524 Motion—which seeks a subset of the identical relief requested in the 504 Motion—was premised on the same evidence, authority and arguments set forth in the 504 Motion, all of which had previously been rejected by the Court on multiple occasions.[7]

3.     As the Court had already repeatedly rejected the bases for the substantively overlapping, if not identical, 504 and 524 Motions,[8] and the parties had nevertheless already fully briefed the 504 Motion, on November 15, 2017 Standard requested that the 524 Motion be voluntarily withdrawn in order to avoid yet another round of needless briefing.[9]

4.     That same day, purportedly responding solely on behalf of himself and the Greens, the Greens' lead counsel, Mr. Joshua Ostler, disclaimed any responsibility for the 524 Motion but refused to withdraw it.[10] Specifically, responding "on behalf of [himself], personally," Mr. Ostler stated that the 524 Motion "is made on behalf of Marcus, personally[;] My name does not appear in the caption or the signature block[;] Likewise, the [524 M]otion *was*

---

[2] *See* docket nos. 530 at ¶¶ 2-27 & 531 at ¶¶ 2-27 (incorporated herein by this reference) (summarizing the Greens' serial but unsuccessful efforts to advocate the merits of their claims and reconsideration of the Court's denial of those claims); *see also* docket nos. 152, 161, 204, 231, 248, 352 & 412.
[3] *See* docket nos. 161, 204, 248 & 352.
[4] Docket no. 504 (the "504 Motion").
[5] *See* docket nos. 519 & 522.
[6] Docket no. 524 (the "524 Motion").
[7] *See* docket nos. 152, 161, 204, 231, 248, 352 & 412.
[8] *See* n.2, *supra*.
[9] *See* docket no. 549-2 at 2-3.
[10] *See id.* at 1-2.

*not made on behalf of the Greens*."[11]

5.     The 524 Motion was not withdrawn.

6.     Forced to respond, Standard filed its opposition to the 524 Motion on **November 22, 2017**.[12]

7.     Six days later, *after* Standard had been forced to respond to the 524 Motion, the Greens' former counsel, Mr. Marcus R. Mumford, withdrew from representation on **November 28, 2017**.[13]

8.     In view of Mr. Ostler's prior representation that the 524 Motion was the sole responsibility of Mr. Mumford and was never filed on behalf of, or otherwise authorized by, the Greens,[14] Standard orally inquired of Mr. Ostler during a meet and confer on December 6, 2017[15] whether the 524 Motion would be voluntarily withdrawn in view of Mr. Mumford's termination.[16] Despite disclaiming the 524 Motion previously, Mr. Ostler demurred, stating that he had not yet decided how to proceed despite the fact that the Greens' reply, if any, was due that same day.[17]

9.     Nevertheless, the 524 Motion was still not withdrawn; instead, at 10:37 pm that night, *on behalf of the Greens*, Mr. Ostler sought an extension of time in which to file a reply memorandum in further support of the previously disclaimed 524 Motion.[18]

10.    Notably, the Greens' eleventh-hour extension request—which was not discussed during the parties' meet and confer earlier that same day—was silent as to any need for

---

[11] *Id.* (emphasis added).
[12] *See* docket no. 530 (incorporated herein by this reference); *see also* docket no. 531 (incorporated herein by this reference).
[13] Docket no. 535.
[14] *See* docket no. 549-2 at 1-2.
[15] *See* docket no. 544 at 4 (while the parties meet and confer concerned another matter, the withdrawal of the 524 motion was discussed during the meet and confer because December 6, 2017 was the Greens' original deadline to file a reply in support of the 524 Motion, if any).
[16] *See* Declaration of James T. Burton in Support of Reply Memorandum in Support of Motion for Leave to Supplement the Record (the "Burton Decl.") at ¶¶ 5-6, attached hereto as **Exhibit "A"**.
[17] *Id.* at ¶ 6.
[18] *See* docket no. 542.

4814-6881-1610

additional time to determine whether to withdraw the 524 Motion; rather, the Greens' extension request sought additional time "in an abundance of caution" despite Mr. Ostler's best "effort[s] to have a reply filed by the December 6th deadline…."[19]

11.     And more importantly, again on behalf of the Greens, Mr. Ostler thereafter substantively defended the 524 Motion via a reply memorandum filed on December 8, 2017.[20]

12.     On December 15, 2017, the Court denied the Greens' 504 Motion.[21] The Court's Order notably mirrors the bases set forth in Standard's request that the Greens voluntarily withdraw the substantively overlapping 524 Motion from the outset.[22] Specifically, the Court denied the 504 Motion as there had been no change in controlling law, no new evidence, and all of the Greens' arguments had already been "presented" and rejected or had otherwise been waived by the Greens' failure to raise them previously.[23]

13.     In view of the Court's denial of the Greens' 504 Motion, on December 18, 2017, Standard yet again requested that Mr. Ostler voluntarily withdraw the substantively overlapping if not identical 524 Motion.[24]

14.     That request was ignored.[25]

15.     The next day, December 19, 2017, the Court denied the 524 Motion on its merits.[26] Again, the Court's Order mirrors Standard's original request that the 524 Motion be voluntarily withdrawn, stating that the Greens had "not pointed to an intervening change in the controlling law," had failed to present any "new evidence that was previously unavailable," and had failed to demonstrate "clear error" by advancing "arguments [that] were already addressed or

---

[19] *See id.* at 2.
[20] *See* docket no. 546; *see also* docket no. 547 (request to submit the 524 Motion).
[21] Docket no. 552.
[22] *Compare* docket no. 549-2 at 2-3, *with* docket no. 552.
[23] Docket no. 552 at 1-2.
[24] *See* email correspondence dated Dec. 15-18, 2017, attached hereto as **Exhibit "B"**.
[25] *See id.*
[26] Docket no. 558

could have been raised in prior briefing."[27]

16.    Despite having multiple opportunities both before and after Mr. Mumford withdrew, Mr. Ostler refused to voluntarily withdraw the 524 Motion, first disclaiming responsibility for the same on behalf of himself and the Greens only to then file a substantive reply in support of the very 524 Motion he had previously disavowed.[28]

17.    While the 524 Motion has been denied, the Greens / Mr. Ostler's refusal to voluntarily withdraw the 524 Motion on at least three (3) separate occasions[29] remains highly relevant. Frist, as the Court is aware, Standard has requested an award of its attorneys' fees, costs, and expenses for having been forced to respond to the Greens' serial efforts to re-litigate issues that have long-since been resolved in Standard's favor without citing any new evidence, without identifying any change in the law, and without advancing any arguments that have not already been rejected or waived (the "531 Motion").[30] And beyond the 531 Motion—which is limited to compensation solely for the Greens' vexatious and wasteful efforts to consecutively seek reconsideration without a basis in fact or law—Standard intends (at an appropriate time) to renew its motion for a comprehensive compensatory award for all of the Greens' vexatious litigation conduct.[31] Indeed, Standard's claim for abuse of the judicial process itself is premised, in part, on the Greens' abuse of the judicial process from the outset followed by years of vexatious and wasteful litigation conduct. The Greens / Mr. Ostler's repeated refusal to withdraw the 524 Motion—even after Mr. Mumford withdrew *and* the Court had denied the 504 Motion— inform and elucidate the Greens' ongoing abuse of the judicial process, and the record should reflect such conduct.

18.    Second, while the Greens are unquestionably bound by the actions and/or

---

[27] *Id.* at 1-2 (internal quotation marks, ellipses, and citation omitted).
[28] *Compare* docket no. 549-2 at 1-2, *with* docket no. 546.
[29] *See* Exs. A & B; docket no. 549-2,
[30] *See, e.g.,* docket no. 531 (the "531 Motion").
[31] *See* docket no. 172; *see also* docket no. 352 (Judge Nuffer holding that "the injury Mr. Mumford's client has inflicted [on Standard]" still has yet to be remedied).

4814-6881-1610

inactions of their counsel,[32] the Greens have consistently hidden behind the advice and/or actions of their counsel to avoid and disclaim culpability for their abuse of the judicial process and vexatious litigation conduct. For example, in a recent motion for extension of time (Mr. Ostler's sixth such motion in only six weeks of being lead counsel), the Greens seek to blame Mr. Mumford for all of the Greens' "timeliness [problems] and/or missed deadlines in this case…."[33] Indeed, the Greens even continue to blame Mr. Mumford for the Greens / Mr. Ostler's current failure to meet case deadlines based on the unsupported assertion that Mr. Mumford—who has been terminated—was allegedly unavailable to assist in preparing a filing on behalf of the Greens.[34] Nevertheless, Mr. Mumford's penchant for time mismanagement and tactical delays are nothing new to Mr. Ostler (a former associate at Mumford, P.C. involved with this case behind the scenes for multiple years)[35] or the Greens themselves. Indeed, unsurprised about Mr. Mumford's failure to timely oppose Standard's motion for Utah Rule of Civil Procedure 11

---

[32] *E.g., Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *Gripe v. City of Enid, Okl.*, 312 F.3d 1184, 1189–90 (10th Cir. 2002) ("Those who act through agents are customarily bound by their agents' mistakes. It is no different when the agent is an attorney."); *see also Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666–67 (2d Cir. 1980) ("the client is not excused from the consequences of his attorney's nonfeasance."); *see also Universal Film Exchanges, Inc. v. Lust*, 479 F.2d 573, 577 (4th Cir. 1973) ("Where damages are inflicted upon innocent clients by other professionals, such as doctors or dentists, the remedy is a suit for malpractice. The same is true where damage is inflicted upon a client through an attorney's professional negligence."); *Ozeroglu v. Hershewe Law Firm, P.C.*, 451 F. App'x 620, 621 (8th Cir. 2012) ("litigants who are truly misled and victimized by their attorneys have recourse in malpractice actions").

[33] *See* docket no. 578 at ¶¶ 11-13.

[34] *Id.* at 6-10. Mr. Ostler's sixth request for an extension of time was necessitated by Mr. Ostler's failure to timely file an opposition brief despite receiving two prior extensions of time totaling a six (6) week opposition period. *See* docket nos. 536, 538, 562 & 567. While Mr. Ostler is content to blame Mr. Mumford—his former boss and mentor at Mumford P.C.—for the Greens' historical abuse of extension procedures and missed deadlines, such conduct, learned from Mr. Mumford, continues unabated. *See also, e.g., Utah Republican Party v. Herbert*, 678 Fed. Appx. 697, 698 (10th Cir. Feb. 3, 2017) (unpublished); *In re Marcus R. Mumford*, Appellate Case No. 17-801 (10th Cir. Feb. 3, 2017), Doc. 01019760477, attached as **Exhibit "C"**; *Utah Republican Party v. Cox*, Appellate Case No. 16-4091 (10th Cir. Dec. 16, 2016), Doc. 01019737065, attached as **Exhibit "D"**; In re Marcus R. Mumford, Case No. 3:17-mc-348-JCC (Dist. Or. 2018), docket attached as **Exhibit "E"** (collectively cataloguing some of Mr. Mumford's history of disregard for rules, orders, and deadlines resulting in discipline).

[35] *See* n.34, *supra*; Jan. 4, 2018 rough depo. tr. for Brad Green at 120:5-13, excerpts attached as **Exhibit "F"**; docket no. 564 at 4 (Mr. Ostler asserting his prior involvement in this case despite a limited role with respect to deposition discovery); docket no. 206 (minute order for proceedings held on Feb. 15, 2017 at which Mr. Ostler appeared on behalf of the Greens).

sanctions for example, Brad Green simply responded: "That sounds like Marcus."[36] Elsewhere, Mr. Green unequivocally affirmed that he was "aware that Mr. Mumford repeatedly missed deadlines" and "repeatedly asked for extensions of deadlines…."[37]

19.    Further to the overlap between the Greens and Mr. Mumford's litigation misconduct, the very sanctions orders sought to be overturned pursuant to the failed 524 Motion repeatedly ordered Mr. Mumford to *personally* pay Standard $34,082.84 as a deterrent for Mr. Mumford's conduct.[38] Nevertheless, Garth Green apparently paid Mr. Mumford's sanctions irrespective of the Court's sanctions orders and in contravention of the intended deterrent effect of the sanctions orders on similarly situated attorneys in the future.[39]

## ARGUMENT

### I.    The Motion is Not Moot

The Greens assert that the Court's denial of the 524 Motion moots the instant Motion.[40] But, as set forth in the Statement of Additional Facts (the "Facts"), *supra*, the Greens / Mr. Ostler's refusal to voluntarily withdraw the 524 Motion despite three (3) separate opportunities to do so, is highly relevant to Standard's pending motion for fees, costs, and expenses, anticipated future motions for other fees, costs and expenses, and Standard's abuse of process claim as a whole.[41] Simply stated, the "other matters pending before the Court" referred to in Standard's Motion render the Motion as relevant now as it was before the 524 Motion was denied, perhaps even more so and the 524 Motion was summarily denied. This is equally true of

---

[36] Ex. F at 144:4-12.
[37] *Id.* at 34:21 – 35:4; *see also id.* at 31:22 – 36:21.
[38] *E.g.,* docket nos. 161 at 14-16 ("counsel alone should be sanctioned" and "[s]anctions against the Greens' attorney, Marcus Mumford, are appropriate"); 204 at 4-6 ("By requiring Mr. Mumford to pay those fees and costs, Mr. Mumford and others will be deterred from engaging in this kind of behavior in the future."); 248 at 3-6 ("the sanction should impact the sanctioned party" thus "Mr. Mumford was … solely responsible to pay sanctions"); 352 at 2-13 ("Mr. Mumford is responsible to pay Standard's additional fees and is barred from further action or appearance in this case until he has paid the sanctions amount").
[39] *See* Ex. F at 23:2 – 24:23, 40:8-14, 191:7 – 192:8.
[40] *See* docket no. 561 at 5.
[41] *See* Facts, *supra*, at ¶¶ 17-19.

Mr. Ostler's efforts to disclaim the 524 Motion followed by a memorandum in further support thereof.[42]

It is also worth noting that, despite vehemently opposing the instant Motion and even asking that Standard be sanctioned,[43] nowhere do the Greens or Mr. Ostler explain why the 524 Motion was first disclaimed by the Greens as Mr. Mumford's "personal" motion only to then be supported by the Greens.[44] Indeed, the Greens' opposition is silent on this central issue while continuing to characterize the 524 Motion as "specific to the Greens' prior counsel, Marcus Mumford."[45] In lieu of providing any such explanation for why the Greens filed a reply in support of the 524 Motion rather than simply withdrawing it, the Greens blame the confusion as to who is responsible for the 524 Motion on Standard and suggest that the "Greens were forced to submit a reply…."[46] Surely, if the 524 Motion were not authorized and filed on behalf of the Greens from the outset, the way to definitively demonstrate that assertion would have been to voluntarily withdraw the 524 Motion upon Mr. Mumford's termination. But that is not what the Greens did; the Greens instead elected to vigorously champion the merits of the now-failed 524 Motion. Simply put, the Greens were not "forced" to support a motion they never authorized in the first place. To this end, the Greens' disavowal of the 524 Motion follow by a reply memorandum in support of the same continues to be relevant to the Greens' ongoing pattern of vexatious and improper litigation conduct.

## II. The Court's Authority Cannot Seriously be Questioned

The Greens next contend that the Court lacks authority to grant the Motion. This argument fails from inception. First, Standard's citation to and reliance on DUCivR 7-1(b)(2)**(B)** is merely a typo resulting from amendment to the local rules, which went into effect only days

---

[42] *See id.* at ¶¶ 2-16.
[43] *See* docket no. 561 at 7-10.
[44] *See* docket no. 561, *passim*.
[45] *See id.* at ¶ 2.
[46] *See id.* at ¶ 7; *see also id.* at ¶¶ 5-9.

before the Motion was filed. Even in view of this inadvertent mistake, it is clear from the context of the Motion that it refers to and relies on DUCivR 7-1(b)(2)**(C)**—the very next subsection of the rule—which authorizes "additional memoranda" with leave of Court, the precise relief Standard's Motion requests.[47]

Regardless, this Court's inherent authority clearly authorizes "control [over] the disposition of the causes on its docket…."[48] While *one facet* of that control—the power to stay—was specifically addressed in *Landis*, the Court's inherent authority to allow further briefing and supplementation of the record cannot be credibly gainsaid. Indeed, this Court even possesses the inherent power to sanction litigants to, *inter alia*, protect the integrity of existing Court Orders, to deter frivolous filings, to promote judicial economy, to regulate the matters pending on its docket, and to achieve the orderly and expeditious disposition of this case.[49] As the 524 Motion represents an ill-advised attempt to repeatedly re-litigate issues already resolved, the authority to grant Standard's Motion so as to deter such frivolous filings is absolute. The Greens' arguments to the contrary should be flatly disregarded.

## III.   The Greens' Request for Sanctions Should be Denied

Contending that the Motion is moot, that this Court lacks authority to regulate this case, accusing Standard of causing confusion as to whether the 524 Motion is the Greens' motion or Mr. Mumford's, and characterizing the Motion as "lack[ing] any relevant basis whatsoever," the Greens request that Standard "be sanctioned…."[50] Each of these so-called bases for this reqeust has been addressed above. Sanctions are not appropriate for the identical reasons already discussed, *supra*. Moreover, the Greens fail to cite any authority for the proposition that Standard's Motion warrants sanctions. Accordingly, the Greens' request for sanctions should be

---

[47] *See* DUCivR 7-1(b)(2)(C) (2017); *compare id.*, *with* DUCivR 7-1(b)(2)(B) (2016).
[48] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).
[49] *E.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991); *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255-57 (10th Cir. 2015); *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995).
[50] *See* docket no. 561 at 7-10.

denied.

## CONCLUSION

For all of the foregoing reasons, Standard's Motion should be granted. Not only should Mr. Oster's disavowal of the 524 Motion be made of record, the subsequent development of this issue as reflected in the exhibits attached hereto should also be a part of the entire record.

DATED this 9th day of January, 2018.

Respectfully submitted,
**KIRTON | McCONKIE**

By: */s/ James T. Burton*
    James T. Burton
    Joshua S. Rupp
    Ryan R. Beckstrom
*Counsel for Standard Plumbing Supply*
*Company, Inc.*

4814-6881-1610

### CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January, 2018, I caused a copy of the foregoing to be filed using the Court's CM/ECF electronic filing system, which provides service to all counsel of record.

/s/ James T. Burton

4814-6881-1610, v. 1