Joshua S. Ostler (14277)
NELSON JONES, PLLC
8941 S. 700 E., Ste. 203
Sandy, UT 84070
(801) 981-8779
josh@nelsonjoneslegal.com
*Attorney for Garth O. Green Enterprises, Inc.,
Garth Green and Michael Green*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERPRISES, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>RANDALL HARWARD, et al,<br><br>    Defendants. | **REPLY IN SUPPORT OF MOTION FOR EXTENSION OF TIME TO RESPOND TO STANDARD PLUMBING SUPPLY COMPANY, INC.'S SHORT FORM DISCOVERY MOTION FOR A FINDING OF NO PRIVILEGE [DKT 577]**<br><br>Case No. 2:15-cv-00556-RJS-EJF<br><br>District Judge Robert J. Shelby<br>Magistrate Judge Evelyn J. Furse |

Plaintiffs Garth O. Green Enterprises, Inc., Garth Green and Michael Green (the "Greens"), respectfully submit this reply in support of their Motion for Extension of Time to Respond to Standard Plumbing Supply Company, Inc.'s Short Form Discovery Motion for a Finding of No Privilege (the "Motion").

**<u>INTRODUCTION</u>**

Standard Plumbing Supply Company, Inc.'s ("Standard") 10-page opposition to a request for a 1-day extension of time is in a word, ridiculous. To the extent the Court gives any consideration to Standard's opposition, the following principles should be kept in mind.

First, the Utah Standards of Professionalism and Civility contain the following dictates: (1) "[a] lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms"; (2) "lawyers shall treat all other counsel…in all proceedings in a courteous and dignified manner"; (3) "[l]awyers shall not, without an adequate factual basis, attribute to other counsel…improper motives, purpose, or conduct"; (4) "[l]awyers should avoid hostile, demeaning, or humiliating words in written and oral communications with adversaries"; (5) "[l]awyers shall never knowingly attribute to other counsel a position or claim that counsel has not taken…or otherwise seek to create a 'record' that has not occurred"; (6) "[l]awyers shall not knowingly file or serve motions, pleadings or other papers at a time calculated to unfairly limit other counsel's opportunity to respond or to take other unfair advantage of an opponent, or in a manner intended to take advantage of another lawyer's unavailability"; and (7) "[l]awyers shall agree to reasonable requests for extension of time and waiver of procedural formalities when doing so will not adversely affect their clients' legitimate rights."

Second, "[t]he federal courts do not provide a forum for mudslinging, name calling and 'privileged' defamation."[1]

Standard's opposition runs directly contrary to the foregoing principles. As the Greens have previously noted, Standard's conduct throughout this case mirrors that of defense counsel in *Ahanchian v. Xenon Pictures, Inc.*, in which the Ninth Circuit made the following observations:

> defense counsel disavowed any nod to professional courtesy, instead engaging in hardball tactics designed to avoid resolution of the merits of this case. We feel

---

[1] *Alvarado Morales v. Digital Equipment Corporation,* 669 F.Supp. 1173, 1187 (D.Puerto Rico 1987).

> compelled to address defense counsel's unrelenting opposition to Ahanchian's counsel's reasonable requests. Our adversarial system depends on the principle that all sides to a dispute must be given the opportunity to fully advocate their views of the issues presented in a case. … Here, defense counsel took knowing advantage of the constrained time to respond created by the local rules, the three-day federal holiday, and Ahanchian's lead counsel's prescheduled out-of-state obligation. Defense counsel steadfastly refused to stipulate to an extension of time, and when Ahanchian's counsel sought relief from the court, defense counsel filed fierce oppositions, even accusing Ahanchian's counsel of unethical conduct. Such uncompromising behavior is not only inconsistent with general principles of professional conduct, but also undermines the truth-seeking function of our adversarial system. …
>
> Our adversarial system relies on attorneys to treat each other with a high degree of civility and respect. … Where, as here, there is no indication of bad faith, prejudice, or undue delay, attorneys should not oppose reasonable requests for extensions of time brought by their adversaries.[2]

Standard's perpetual disregard for basic standards of professionalism and civility, as most recently demonstrated in its so-called "Opposition to Second After-the-Fact Motion for Extension of Time," should not be condoned.

### RESPONSE TO STANDARD'S STATEMENT OF RELEVANT FACTS

1. At the January 11, 2018 hearing before Judge Shelby, counsel did discuss upcoming deadlines in open court, and consistent with the Greens' Motion, undersigned counsel recalls that he communicated his belief that the opposition at issue was due on January 12, 2018, or at least some time after January 11, 2018.[3]

2. When the Court initially scheduled a hearing on January 12, 2018, counsel recalls thinking that the Court had scheduled the hearing for the same day that the Greens' response was due. However, because the rules expressly allow the Court to shorten applicable deadlines,

---

[2] *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1262–63 (9th Cir. 2010).
[3] *See* Docket No. 589 at 3, ¶ 7.

3

counsel did not think much of it.[4]

3. There is no "history of missing deadlines and abusing extension requests throughout the entirety of this case" or "habitual failure to abide by the rules of this Court".[5] As the Greens have already explained at length, when Standard's footnotes in support of this recycled argument are more closely examined, they mischaracterize the procedural history of this case and are grossly exaggerated.[6] By simply citing back to its own false recitation of events, Standard is "seek[ing] to create a 'record' that has not occurred", which is prohibited by the Utah Standards of Professionalism and Civility.

4. Undersigned counsel does not have a "penchant for serial delays."[7] No sooner had Mr. Mumford withdrawn from this case than Standard began sending threatening emails about how it would file a motion to compel if the Greens did not produce additional documents, and a motion for attorneys' fees for 16 different filings if the Greens did not make a substantial money offer. Then, Standard filed a motion for partial summary judgment that it had been sitting on for several months, Judge Shelby previously ordering that the motion could be refiled as soon as the Greens answered Standard's counterclaims,[8] which occurred in September 2017. Then, Standard filed two separate motions for attorneys' fees. Standard then noticed 5 depositions for January 3-5, 2018 and filed a motion to supplement the record. It appears that, contrary to the Utah Standards of Professionalism and Civility, Standard knowingly submitted filings "at a time

---

[4] *See* DUCivR 7-1(b)(3) ("[t]he court may order shorter briefing periods"); DUCivR 37-1(a)(6) (allowing "five business days…unless otherwise ordered.")
[5] Docket No. 590 at 3.
[6] *See, e.g.*, Docket No. 488 at 4-8.
[7] Docket No. 590.
[8] *See* Docket No. 422.

calculated to unfairly limit other counsel's opportunity to respond or to take other unfair advantage of an opponent". This is especially true when the Court considers how, essentially every time the Greens have asked for an extension of time, Standard has filed a fierce opposition, causing even more time and resources to be unnecessarily expended. Further, Standard's conduct here mirrors that of its counsel in a separate Florida case in which Messers. Burton and Rupp were chastised for submitting a "Rube Goldberg-like web of papers" and "launching a litigation nuclear arsenal directed at peripheral issues not genuinely intended to advance the case toward resolution".[9] The point is, Standard knows that undersigned counsel is the Greens' sole counsel of record. Standard cannot dump a host of motions and deposition notices on the Greens' counsel during the holiday season and then complain of some "penchant for serial delays" when counsel requests needed extensions of time.

     5.     The Greens' citation to this Court's order referring counsel to The Professionalism Counseling Board,[10] is not misplaced. While Standard attached excerpts of its own side of the story, the Court never stated that the referral "was made to address *the Greens and their counsels' refusal* and/or repeated failure to meet and confer in good faith".[11] Rather, the Court's order refers to all "counsel in this case,"[12] and at the April 11, 2017 hearing, the Court addressed all "folks" and "parties," including Standard and their counsel.[13] And as a matter of common sense, if the problem was one confined to the Greens and their counsel, there would

---

[9] *PPS Data, LLC v. Athenahealth, Inc.*, 2012 WL 601208, at *3 (M.D. Fla. Feb. 23, 2012).
[10] Docket No. 454.
[11] Docket No. 590 at 3 (emphasis added).
[12] Docket No. 454.
[13] Docket 590-2 at 45:24-46:11.

be no need to order Messrs. Burton and Rupp to meet with The Professionalism Counseling Board as well.

6. Without any basis for doing so, Standard continues to assert that undersigned counsel was previously far more involved in this case than he actually was. The Court should be aware that at the recent deposition of Wendy Green, counsel for Standard posed the following question, without any good faith basis for asking it: "Isn't it true for the last three or four years, if not longer, that Mr. Ostler has done most of the heavy lifting on this case behind the scenes?" Obviously Standard was looking for something to bolster its oppositions to recent requests for extensions of time. Standard's wishful thinking aside, undersigned counsel has not done "most of the heavy lifting" behind the scenes. And while counsel appeared for a telephonic hearing in February 2017, he was not appearing as counsel of record. It does not appear that there is a transcript of the hearing, but counsel recalls making a record that he was only appearing on a limited basis, filling in for Mr. Mumford who was unavailable that day. Counsel's statement that he first appeared as counsel of record in September 2017 remains true.

7. Standard tries to attribute some nefarious motive to the Greens' requesting extensions of many months or until the litigation has ended.[14] But what Standard omits is that those requests were entirely consistent with prior orders of the Court, including where Judge Parrish granted an extension of time to oppose summary judgment until after the deposition of Richard Reese,[15] and where Judge Shelby dismissed Standard's motion for attorneys' fees

---

[14] Docket No. 590.
[15] Docket No. 366.

without prejudice to refiling until after the litigation has ended.[16] Standard should not be heard to complain where the Greens are simply asking for the same extensions of time that were previously granted by the Court.

8. Standard's remaining allegations about Mr. Mumford, his law firm, and his associates, of which Mr. Ostler was previously one, are petty and baseless. Mr. Burton obviously has unresolved issues with Mr. Mumford, especially given the fact that a large bulk of the four depositions taken from January 3-4, 2018 were spent asking irrelevant questions about Mr. Mumford.[17] But "[t]he federal courts do not provide a forum for mudslinging, name calling and 'privileged' defamation."[18] Mr. Burton needs to air his petty grievances somewhere else, and quit dwelling on Mr. Mumford in this case.

9. The Greens' extension requests are not "self-perpetuating."[19] Counsel for the Greens has had to "find time" to prepare lengthy extension requests and replies precisely because of Standard's refusal to abide by the Standards of Professionalism and Civility: "Lawyers shall agree to reasonable requests for extension of time and wavier of procedural formalities when doing so will not adversely affect their clients' legitimate rights." In all of its oppositions to the Greens' extension requests, including the instant one, not once has Standard identified an actual adverse effect to its legitimate rights. Standard cannot disregard standards of professionalism and civility and then try to use the consequences of its own bad behavior to bolster its oppositions.

---

[16] Docket No. 421.
[17] The indices to the Wendy Green and Bradley Green depositions alone reveal over 250 citations to Mr. Mumford.
[18] *Alvarado Morales,* 669 F.Supp. at 1187.
[19] Docket No. 590-91.

**REPLY ARGUMENT**

I. **Standard Disregards the Supreme Court's Binding *Pioneer* Decision.**

Standard claims that the Greens are required to show circumstances beyond their control.[20] Standard misstates the law.[21] The Supreme Court's decision in *Pioneer Investment Services* is binding, and Standard completely ignores it. In *Pioneer Investment Services*, the petitioner argued, as Standard does here, "that the Bankruptcy Court was correct when it first interpreted Rule 9006(b)(1) to require a showing that the movant's failure to comply with the court's deadline was caused by circumstances beyond its reasonable control."[22] The Court rejected the argument: "We think that petitioner's interpretation is not consonant with either the language of the Rule or the evident purposes underlying it."[23] And while *Pioneer* spoke specifically in terms of Rule 9006(b)(1), which is Fed. R. Civ. P. 6(b)(1)'s counterpart, the Tenth Circuit applies *Pioneer* to Rule 6(b).[24] Simply stated, the Greens are not required to demonstrate circumstances beyond their control. And even if they were, they have shown how it was beyond their control that Standard would pile on motion after motion, including three short form discovery motions at a time they knew the Greens' deadlines to oppose summary judgment and a second motion for attorneys' fees were fast approaching.

II. **The Greens' Request Is Not Based on Lack of Diligence.**

Standard first claims that it "strains credulity" that undersigned counsel miscalendared

---

[20] *See* Docket No. 590.
[21] The *Utah Republican Party* case, upon which Standard relies, is unpublished and not binding on this Court.
[22] *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 388 (1993).
[23] *Id.*
[24] *See, e.g.*, *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1494 (10th Cir. 1995).

8

the January 11, 2018 deadline due to the fact that the Court set a hearing for that same day. But as explained above, the rules specifically allow for the Court to "order shorter briefing periods".[25] Counsel believed that this is what the Court had done and so did not think anything of his belief that the hearing was scheduled for the same day that the Greens' opposition would have normally been due.

Standard next claims that "it appears Mr. Ostler did not even begin to prepare the Greens' memorandum in opposition…until the day *after* it was due."[26] In support of this claim, Standard relies on a statement that counsel "gave priority to responding to Standard's motion for partial summary judgment."[27] While counsel certainly gave priority to the 40-page opposition to summary judgment that was timely filed on January 12, 2018,[28] this does not mean that the instant opposition was neglected until January 12, 2018. This is not what happened and Standard's suggestion to the contrary is pure conjecture.

Elsewhere, Standard claims that "despite preparing a 1,639 word, after-the-fact Seventh Extension Request, the Greens still have not filed on (sic) opposition to the 577 Motion limited to only 500 words."[29] The 1,639 word extension request was necessitated by the fact that Standard filed a request to submit for decision at 2:00 a.m. in the morning and was clearly determined to oppose any requested extension, as it has done throughout this litigation. And while Standard's opposition preceded the Greens' opposition to the 577 Motion, the Greens filed

---

[25] DUCivR 7-1(b)(3).
[26] Docket No. 590.
[27] Docket No. 589 at 3.
[28] Docket No. 592.
[29] Docket No. 590 at 3.

9

their opposition on January 12, 2018 as they said they would. And they also timely filed a substantial 40-page opposition to summary judgment.

Finally, Standard claims that undersigned counsel failed "to plan ahead and diligently prepare".[30] What a shameful statement. Standard filed its 577 Motion on January 4, 2018 knowing that the Greens' deadline to oppose summary judgment was January 12, 2018, that a hearing had been scheduled for January 11, 2018, and that the Greens' opposition to yet another motion for attorneys' fees was due on January 16, 2018. Standard also knew full well that undersigned counsel was not involved in the prior discovery phases of this case, or the majority of the motions underlying Standard's motion for expenses incurred, thus requiring additional time for counsel to familiarize himself with the underlying issues and evidence. It is shameful that Standard would, contrary to the Utah Standards of Professionalism and Civility, "file or serve motions…at a time calculated to unfairly limit other counsel's opportunity to respond" and then subsequently accuse counsel of some failure to be diligent or plan ahead.

## CONCLUSION

For the foregoing reasons, and those articulated in the Greens' Motion the Greens' Motion should be granted and the Greens allowed an extension of time until January 12, 2018 by which to oppose Standard's Motion for a Finding of No Privilege.

DATE: January 15, 2018.

/s/ Joshua S. Ostler
Joshua S. Ostler
*Counsel for Plaintiffs*

---

[30] Docket No. 590.

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2018, I filed a true and correct copy of the foregoing REPLY IN SUPPORT OF MOTION FOR EXTENSION OF TIME TO RESPOND TO STANDARD PLUMBING SUPPLY COMPANY, INC.'S SHORT FORM DISCOVERY MOTION FOR A FINDING OF NO PRIVILEGE [DKT 577] with the Clerk of Court using the CM/ECF system, which sent electronic notification to all counsel of record.

/s/ Joshua S. Ostler
Joshua S. Ostler