JAMES T. BURTON (11875)
*jburton@kmclaw.com*
JOSHUA S. RUPP (12647)
*jrupp@kmclaw.com*
RYAN R. BECKSTROM (14593)
*rbeckstrom@kmclaw.com*
**KIRTON │ McCONKIE**
Key Bank Tower
36 South State Street, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

*Counsel for Standard Plumbing*
*Supply Company, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERS., INC., *et al.*,<br><br>        Counterclaim Defendants,<br><br>    v.<br><br>RANDALL HARWARD, *et al.*,<br><br>        Counterclaim Plaintiffs. | Case No. 2:15-cv-00556-RJS-EJF<br><br>**STANDARD'S REPLY IN SUPPORT OF MOTION FOR COSTS, EXPENSES AND ATTORNEYS' FEES**<br><br>Honorable Judge Robert J. Shelby<br>Honorable Magistrate Judge Evelyn J. Furse |

Pursuant to, *inter alia*, DUCivR 7-1, Standard,[1] by and through counsel, hereby respectfully files this reply in further support of Standard's Motion[2] for costs, expenses, and fees against the Greens and their Counsel.

## RESPONSE RE: FACTS

As a threshold matter, the Greens' opposition to the Motion neglects to respond to or otherwise address *any* of the factual statements set forth in the Motion.[3] While a point-by-point

---

[1] Capitalized terms used herein have the definitions set forth in Standard's opening memorandum.
[2] Docket no. 531.

response is not necessarily required, it is troubling that the Greens' arguments ignore Standard's undisputed factual assertions. For example, Standard's Motion enumerates in detail the Greens' vexatious and bad faith Reconsideration Motions for which fees are sought.[4] Nevertheless, the Greens unaccountably suggest that "Standard has failed to specifically identify the specific documents" at issue.[5] Likewise, the Greens seize on a prior order referring to "past conduct" while ignoring the current and ongoing conduct accused in the Motion and otherwise of record.[6] The Greens' willful, blind-eye approach, however, does not render the salient facts set forth in the Motion a nullity. On the contrary, such facts—which are undisputed—demonstrate the need for relief, i.e., to dissuade the Greens (and similarly situated litigants) from "persist[ing] in a hopeless cause long after it should have been clear to [them], as [] reasonable person[s], that [their] position was groundless…."[7]

## ARGUMENT

## I.    THE GREENS' OPPOSITION YET AGAIN ADVANCES UNFOUNDED RECONSIDERATION ARGUMENTS

Notwithstanding the fact that the appropriate reconsideration standard has been briefed no less than twenty-eight (28) times[8] (seventeen (17) times by the Greens)[9] resulting in no less than six (6) Court Orders,[10] the Greens opposition to the Motion suggests—for the very first time—that the parties and the Court have been applying the wrong standard all along.[11] Indeed, based on a case from 2007, one of the Greens' principal arguments is that "the Court misapplied

---

[3] *See* docket no. 575, *passim*.

[4] *See* docket no. 531, *passim*.

[5] Docket no. 575 at 8-9.

[6] *Compare, e.g.,* docket no. 531 at ¶¶ 28-32, *with* docket no. 575 at 2 (quoting docket no. 421 at 2 n.5); *see also* docket no. 590 (cataloging *some* of the Greens' latest abuses of extension procedures and failures to follow the rules, incorporated herein by this reference); docket no. 595 (warning the Greens that further after-the-fact extension requests are "unlikely to [be] grant[ed]" based on the Greens' litigation conduct).

[7] *See Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993).

[8] *See* docket nos. 60-1, 60-2, 60-3, 68, 97, 108, 113, 115, 167, 182, 191, 195, 211, 214, 229, 340, 341, 370, 379, 391, 395, 504, 509, 519, 520, 524, 530 & 546.

[9] *See* docket nos. 60-2, 97, 108, 167, 182, 195, 214, 229, 340, 341, 391, 395, 504, 519, 520, 524 & 546.

[10] *See* docket nos. 118, 204, 231, 412, 552 & 558.

[11] *See* docket no. 575 at 3-4.

the applicable standard in denying [the Greens serial Reconsideration Motions]."[12] Setting aside (1) that any such argument has long since been waived by non-assertion[13] only to now be presented in a brief in opposition to fees[14] and (2) that the Greens themselves have repeatedly relied on the very reconsideration standard they now claim is error,[15] the Greens contention is razed by the authority the Greens rely on. Specifically, while "district courts generally remain free to reconsider their earlier interlocutory orders" to the extent such prior rulings are, *inter alia*, "erroneous,"[16] this does not equate to the absence of any standard of review whatsoever. Instead, *Rimbert* (cited in the Greens' opposition)[17] states the standard thusly:

> The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This doctrine is designed to promote finality and prevent re-litigation of previously decided issues, but does not serve to limit a court's power. *When law of the case doctrine applies, three circumstances generally warrant departure from the prior ruling: (1) new and different evidence; (2) intervening controlling authority; or (3) a clearly erroneous prior decision which would work a manifest injustice.*[18]

Contrary to the Greens' assertion,[19] this *is* the controlling standard on reconsideration and, incidentally, the identical standard set forth in *Servants of the Paraclete*.[20]

---

[12] *See id.* (citing *Been v. O.K. Indus.*, 495 F.3d 1217, 1224-25 (10th Cir. 2007) (discussing an entirely different standard for the exceptionally narrow circumstances in which a district court may justifiably "depart from [an otherwise binding] ruling … issued by a higher court," which is wholly inapplicable here)). It is unclear if the Greens contend that the *Been* standard applies here (which it does not) or whether the Greens contend that there is no standard for reconsideration whatsoever. Regardless, either argument fails.

[13] *E.g., Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) (It is not appropriate to advance arguments that could have been raised in prior briefing in arguing for reconsideration).

[14] *See* DUCivR 7-1(b)(1)(A) ("No motion … may be included in a response or reply memorandum. Such motions must be made in a separate document.").

[15] *E.g.,* docket no. 97 at 14 (citing three alternative bases justifying reconsideration set forth in *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)); docket no. 167 at 10-11 (same), docket no. 182 at 4-5 (same); docket no. 504 at 13-14 (citing the same standard in reliance on *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011); *see also* docket no. 60-2 at 4-5 (discussing impropriety of seeking reconsideration).

[16] *See Been*, 495 F.3d at 1224-25.

[17] Docket no. 575 at n.4.

[18] *Rimbert*, 647 F.3d at 1251 (internal quotation marks and citations omitted; emphasis added).

[19] *See* docket no. 575 at 4 ("*Servants of [the] Paraclete* was not a case raising issues under … 'law of the case[]' as asserted in the relevant motions at issue here.").

[20] *Compare Rimbert*, 647 F.3d at 1251, *with Servants of the Paraclete*, 204 F.3d at 1012.

In sum, all of the Greens' serial Reconsideration Motions were denied under the correct standard. The Greens' newly-invented "wrong standard" argument provides no basis for denying Standard an award of its fees unnecessarily incurred in responding to the Greens' multiple, repetitive and unsuccessful Reconsideration Motions.

## II. THE GREENS' REPEATED ATTEMPTS TO SEEK RECONSIDERATION ON THE SAME ARGUMENTS AND EVIDENCE WERE NEITHER PROPER NOR PURSUED IN GOOD FAITH

As a general rule, motions to reconsider are disfavored.[21] When it suited them, the Greens argued this very point, repeatedly: "Motions to reconsider, [sic] the extent such motions are recognized, are disfavored; the Tenth Circuit [has] noted how it had 'admonished counsel' for nearly 20 years 'that the Federal Rules of Civil Procedure do not recognize that creature known all too well as the motion to reconsider or motion for reconsideration.'"[22] The Fourth Circuit eloquently put it this way: to warrant reconsideration, "[a] prior decision [cannot be] … just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish."[23]

Notwithstanding the rigors of such disfavored relief, the Greens have sought reconsideration of the identical issues not once but as many as *six (6) separate times*.[24] Worse, the Greens' successive Reconsideration Motions failed to "point to [a] change in the controlling law or new evidence previously unavailable that would justify reconsideration" or otherwise demonstrate clear error.[25] And this is *after* the Greens' Counsel had been sanctioned, twice, and held in contempt pursuant to Utah Rule of Civil Procedure 11 for bringing the Greens' unfair

---

[21] Docket no. 118 at 4 (Judge Nuffer citing, *inter alia, Whittington v. Taco Bell of Am., Inc.*, No. 10-1884, 2012 WL 3705046, at *2 (D. Colo. Aug. 27, 2012)); *see also Van Skiver*, 952 F.2d at 1243.
[22] Docket 97 at 14 (the Greens citing *Utah Republican Party v. Herbert*, Case No. 2:14-cv-876-DN-DBP, 2015 WL 1954639, at *1 (D. Utah Apr. 29, 2015) and *Warren v. Am. Bankers Ins. of Fla.*, 507 F.3d 1239, 1243 (10th Cir. 2007)); *see also* docket no. 182 at 4 (same); docket no. 60-2 at 4-5 (same).
[23] *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (internal quotation marks and alterations omitted).
[24] *E.g.,* docket no. 531 at ¶¶ 11-32 (summarizing the Greens' serial Reconsideration Motions); *see also* docket nos. 167, 182, 195, 241, 339, 340, 341, 504 & 524.
[25] *E.g.,* docket no. 552 at 2; *see also* docket no. 118, 231, 552 & 558.

4817-9730-9530

competition claim—a claim squarely and fundamentally at issue in *all* of the Greens' Reconsideration Motions—to begin with.[26] Adding insult to injury, Standard's request that even one of the Greens' duplicative Reconsideration Motions be voluntarily withdrawn on the same bases on which the motion was ultimately denied[27] was met first with a disavowal of the motion followed by contempt.[28]

This approach to litigation cannot be squared with good faith, particularly where one of the claims central to all of the Reconsideration Motions was already recognized as frivolous and devoid of merit by Judges Sam and Nuffer after thorough briefing and oral argument.[29] To this end, the Tenth Circuit has aptly observed:

> Back in 1937 the drafters of the Federal Rules promised that their project would help ensure "the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. To date, that promise remains elusive, more aspirational than descriptive. But it is surely the case that if court orders can be repeatedly flouted we will only retreat further from the goal. When a party feels at liberty to disobey … court orders …, weeks or months (as in this case) pass without progress in the litigation. Hours, days, weeks of lawyers' time are consumed at great expense. Focus shifts from the merits to the collateral and needless. This is not speedy, inexpensive, or just. Just the opposite. And no doubt tolerating such behavior would encourage only more of it.[30]

Along these same lines, the Seventh Circuit has "cautioned that if a litigant … persists in a hopeless cause long after it should have been clear to him, as a reasonable person, that his position was groundless, sanctions should be imposed."[31]

Simply stated, despite thorough briefing and oral argument, the Greens' claims were all

---

[26] *See* docket nos. 161, 204, 248 & 352.

[27] *Compare* docket no. 531-2 at 2-3, *with* docket no. 558.

[28] *E.g.,* docket no. 531-2 at 1-3; *see also* docket nos. 546, 549, 561 & 583 (docket nos. 549 and 583, including all of their supporting exhibits, are incorporated herein by this reference in their entirety). Notably, Standard even invited the Greens' Counsel to withdraw the 524 Motion on two additional occasions, once after Mr. Mumford withdrew as counsel of record and again after the Greens' companion 504 Motion had been denied on the merits. (*See* docket no. 583 at ¶¶ 5-14.) Those requests were either rejected or ignored. (*See id.*)

[29] *E.g.,* docket no. 531 at ¶¶ 6-23.

[30] *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011).

[31] *Perry*, 16 F.3d at 140 .

4817-9730-9550

dismissed under Rule 12(b)(6), and the Greens' Counsel was sanctioned for filing one of those claims. Nevertheless, the Greens insist on endlessly re-litigating these "previously decided issues,"[32] not merely once but at least six (6) times. Tolerating such behavior will "no doubt" only "encourage more of it."[33] Thus, in order to effectively dissuade the Greens (and other similarly situated litigants) from persisting in such a hopeless cause long after it should be clear that their position is groundless, an award of Standard's costs, expenses and attorneys' fees is both warranted and appropriate.[34] And this is true irrespective of the fact that the Greens may elect to appeal to the Tenth Circuit or seek reconsideration "on the basis of [an actual] change in controlling law," etc.[35] Neither of these options permit the Greens to endlessly re-litigate the same issues before this Court, least of all on law that is static or arguments which have been waived. Standard is entitled to its fees for having to respond to such efforts.

A.      **This Court's Inherent Authority is Unassailable**

The Greens' opposition to the Motion seems to suggest that this Court's inherent authority to sanction litigants and counsel alike is limited *solely* to narrow instances in which a fraud has been perpetrated on the Court.[36] This inaccuracy seeks to undermine both the potency and the breadth of this Court's unassailable inherent authority to control the causes on its docket. First, after describing the litany of the Court's broad inherent powers at some length, *Chambers* states that, "*[o]f particular relevance here*, the inherent power *also* allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court."[37] That the Court may "also" address a fraud upon the Court does <u>not</u> operate to the exclusion of the Court's other implied powers. On the contrary, the propriety of "an appropriate sanction for conduct

---

[32] *See Rimbert*, 647 F.3d at 1251.
[33] *Lee*, 638 F.3d at 1321.
[34] *See Perry*, 16 F.3d at 140.
[35] *See* docket no. 575 at 3.
[36] *See id.* at 4-7.
[37] *Chambers v. Nasco, Inc.*, 501 U.S. 32, 42-44 (1991) (all emphases added).

which abuses the judicial process"—including the severe sanction of dismissal and the less-severe sanction of an award of attorneys' fees—is inviolate irrespective of the singular, extreme circumstances of a fraud on the Court.[38]

Indeed, notwithstanding the non-binding or inapposite authority set forth in the Greens' opposition, the Tenth Circuit affirmed an award of attorneys' fees in *Farmer* "for abuse of the judicial process" in the absence of any evidence of fraud.[39] This is also true of the Tenth Circuit's *Dabney* opinion.[40] Simply stated, far from the Greens' suggestion of narrow, almost non-existent, inherent power, the Supreme Court has recognized the "unquestionabl[e] assertions of inherent power in the courts to allow attorneys' fees in particular situations[,]" including, *inter alia*, an "assess[ment of] attorneys' fees … when the losing party has acted in bad faith, vexatiously, wantonly, <u>or</u> for oppressive reasons."[41] And the Greens' non-binding authority also supports this truism: "federal courts possess the inherent power and constitutional obligation to prevent abuse of the judicial process by a litigant who engages in a pattern of frivolous litigation."[42] Simply put, parties control their exposure to sanctions by "how the parties conduct themselves during the litigation."[43] The Greens' Reconsideration Motions and refusal to withdraw even one of them in the face of certain failure warrants fee shifting sanctions here. And while this is also true irrespective of a finding of bad faith,[44] an award of Standard's fees as requested is premised specifically on the Greens' bad faith conduct, i.e., filing serial frivolous

---

[38] *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255-57 (10th Cir. 2015).

[39] *See id.* at 1256; *see also id.*, *passim*.

[40] *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 265-270 (10th Cir. 1995).

[41] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975) (emphasis added).

[42] *See Perry*, 16 F.3d at 140; *see also, e.g., Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986).

[43] *Farmer*, 791 F.3d at 1255.

[44] As an afterthought corollary to "fraud," the Greens' opposition seems to also conceded that "bad faith" may warrant monetary sanctions. (*See* docket no. 575 at 5-7.) While bad faith alone is potentially sufficient, it is not always necessary, as evidenced by the Supreme Court's recognition of, *inter alia*, vexatious, wanton, or oppressive conduct. *See Alyeska Pipeline*, 421 U.S. at 258–59. The Tenth Circuit also affirmed an award of attorneys' fees without a prerequisite finding of bad faith, *see Dabney*, 73 F.3d at 265-270, as has the Utah Court of Appeals, *see Maxwell v. Woodall*, 328 F.3d 869, 871-71 (Utah Ct. App. 2014) (neither bad faith nor frivolity is necessary to the Court's inherent power to assess and award of attorneys' fees as a sanction).

Reconsideration Motions which were duplicative and devoid of merit.

### B.    28 U.S.C. § 1927 Independently Authorizes the Relief Sought Irrespective of a Finding of Bad Faith

As they have before, the Greens' opposition to the Motion cites Moore's for the general proposition that "bad faith" must be shown to warrant fee shifting under Section 1927. Even if this were true in other jurisdictions, the Tenth Circuit has explicitly rejected that very position:

> We have held that § 1927 does not require a finding of bad faith: Although subjective good faith on the part of a non-attorney party appellant may in some instances excuse otherwise unreasonable conduct, we are entitled to demand that an attorney exhibit some judgment. To excuse objectively unreasonable conduct by an attorney would be to state that one who acts with an empty head and a pure heart is not responsible for the consequences. So any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable.[45]

Regardless, contrary to the Greens' unsubstantiated assertions, Standard has demonstrated the Greens' objective lack of good faith in serially seeking reconsideration, including specifically identifying and enumerating the unreasonable and vexatious filings which have multiplied these proceedings unnecessarily. To this end, Standard deserves to be compensated for having to defend against the Reconsideration Motions.

### C.    Utah Code Ann. § 78B-5-825 Also Independently Authorizes and Award

For the same reasons previously articulated, Standard is entitled to an award of attorneys' fees under Utah Code Ann. § 78B-5-825 alone. First, there can be no dispute that Standard prevailed on each of the Greens' Reconsideration Motions.[46] Second, while unnecessary for an award of fees pursuant to the Court's inherent authority or under Section 1927, Standard has demonstrated that the Greens' Reconsideration Motions—particularly as they relate to the Greens' sanctionable unfair competition claim—were brought in bad faith and without merit.

---

[45] *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1202 (10th Cir. 2008) (internal quotation marks and citations omitted).
[46] *See* docket nos. 118, 231, 412, 552 & 558.

4817-9730-9530

Indeed, the Greens neglect to respond to any of the facts set forth in the Motion establishing this very issue. And finally, Standard's Motion has specifically identified the filings for which fees are sought while requesting leave to brief the appropriate amount of costs, expenses and fees upon resolution of the Motion. Accordingly, an award of fees is independently authorized under Utah Code Ann. § 78B-5-825.

## III.      THE COURT'S PRIOR ORDER DOES NOT PRECLUDE THE MOTION

Finally, the Greens suggest that this Court's prior denial, without prejudice (the "421 Order"),[47] of Standard's motion seeking a comprehensive award of "all" of its attorneys' fees incurred in connection with this entire litigation[48] somehow precludes the instant Motion.[49] This argument is unavailing for several reasons. First, the 421 Order did not dispose of Standard's claim for a comprehensive award of "all" attorneys' fees *on the merits* but rather dismissed that specific issue without prejudice, reserving the same for "the conclusion of the litigation."[50] As such, no "reconsideration" of the merits of Standard's comprehensive fee motion is at issue. And even if it were, Standard's instant Motion does not seek a comprehensive award of fees; rather, in compliance with the Court's 421 Order, such relief will be sought at the conclusion of litigation.

Further, the instant Motion is limited solely to the Greens' Reconsideration Motions, on which Standard unequivocally prevailed, not Standard's comprehensive litigation fees. Simply stated, the relief sought is limited to discrete vexatious Reconsideration Motions that are fully resolved and do not, in and of themselves, provide grounds for an appeal. Indeed, the 421 Order refers to the Tenth Circuit weighing "in on the propriety of the Plaintiffs' now-dismissed claims," not the Greens serial failed efforts to seek reconsideration before this Court.[51] Put

---

[47] Docket no. 421.
[48] Docket no. 172.
[49] *See* docket no. 575 at 1-2.
[50] Docket no. 421 at 1-2.
[51] *Id.* at 2.

otherwise, it would be nonsensical for the Greens to allege appealable error limited solely to the denial of reconsideration; rather, if an appeal is ultimately filed, the Greens must appeal the actual merits of their dismissed claims. And as Standard's instant Motion is only aimed at compensation for the Greens' Reconsideration Motions, the merits of the Greens' dismissed claims can be appealed irrespective of an award of fees tailored solely to the Greens' vexatious and unreasonable reconsideration attempts.

Finally, consistent with the Greens' "prematurity" argument, the Greens initially sought an extension of time to oppose the Motion, in the alternative, until after "the litigation on the merits has concluded."[52] That relief, and the arguments made in support thereof (which are repeated essentially verbatim in opposition to the Motion),[53] were rejected.[54] Indeed, even without opposition from Standard, Judge Furse denied the Greens' alternative relief, instead ordering the Greens to oppose the Motion by December 27, 2017.[55] To this end, the Greens' prematurity arguments have already been considered and denied.

## CONCLUSION

While the Greens have repetitively filed meritless motions for reconsideration, the Greens cannot avoid the consequences of their conduct. Such efforts have resulted in weeks and months of delay and laid waste to hundreds of attorney hours as well as the resources of this Court. Under such circumstances, Standard is entitled to be compensated for the time necessary to respond to the Greens' Reconsideration Motions under the Court's inherent authority, Section 1927, and Utah Code Ann. § 78B-5-825. To this end, Standard respectfully requests that the Motion be granted awarding Standard its fees and setting a briefing schedule to determine the appropriate amount.

---

[52] *E.g.,* Docket no. 536 at 2.
[53] *Compare* docket no. 575 at 1-2, *with* docket no. 536 at ¶¶ 10-13 & § I.
[54] *See* docket no. 538.
[55] *Id.*

4817-9730-9530

DATED this 17th day of January, 2018.

Respectfully submitted,
**KIRTON | McCONKIE**

By: */s/ James T. Burton*
    James T. Burton
    Joshua S. Rupp
    Ryan R. Beckstrom
*Counsel for Standard Plumbing Supply
Company, Inc.*

4817-9730-9530

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of January, 2018, I caused a copy of the foregoing to be filed using the Court's CM/ECF electronic filing system, which provides service to all counsel of record.

/s/ James T. Burton

4817-9730-9530