IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERPRISES, INC. et al.,<br><br>    Plaintiffs & Counterclaim Defendants,<br><br>v.<br><br>RANDALL HARWARD, et al.,<br><br>    Defendants & Counterclaim Plaintiffs. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION IN LIMINE AND FOR DISCOVERY SANCTIONS (ECF NO. 461)**<br><br>Case No. 2:15-cv-556-RJS-EJF<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

      Counterclaim Defendants Garth O. Green Enterprises, Inc., Garth O. Green, and Michael Green, (the "Greens"), bring their Motion in Limine and for Sanctions Regarding Standard's Deficient Discovery Responses Re: Damages. (Mot. in Limine & for Sanctions Re: Standard's Deficient Disc. Resps. Re: Damages ("Mot."), ECF No. 461.) Specifically, the Greens contend Counterclaim Plaintiff Standard Plumbing Supply Co., Inc., ("Standard"), failed to provide a computation of damages as required by [Federal Rule of Civil Procedure 26](#) and failed to produce documents related to its damages. (Mot. 3, ECF No. 461.) The Greens ask this Court to terminate Standard's claims for damages or exclude any evidence to support its damage claims. (Id. at 1.) In either event, the Greens seek their attorney's fees spent on discovery in the case. (Id.) As evidence of the harm suffered, the Greens argue they had to serve certain Rule 33 interrogatories and Rule 34 document requests aimed at discovering Standard's damages, which Standard should have disclosed under Rule 26(a)(1), and Standard failed to reply fully to them. (Id. at 4-6, 33-44.) The Greens further contend they attempted to take Standard's Rule 30(b)(6) deposition to discover the alleged damages,

1

but Standard failed to prepare its witness for deposition on the issue of damages. (Id. at 7-14.) Additionally the Greens assert Standard improperly instructed its management team not to answer damages questions in their depositions that the Greens noticed in an attempt to determine the damages alleged. (Id. at 14-19.) Having considered the briefing on the motion, the Court[1] finds Standard failed to make its required 26(a)(1) disclosures, causing harm to the Greens. The Court GRANTS the Motion in part and DENIES the Motion in part.[2] Specifically, the Court compels further disclosure to comply with Rule 26, grants further deposition of Standard's 30(b)(6) witness and a few members of the management team at Standard's expense, and awards $5,000 to the Greens to compensate them for the harm caused by Standard's failure to disclose.

## DISCUSSION

### I. Timeliness

Standard asks this Court to deny the Greens' Motion as untimely. (Standard Plumbing Supply Co. Inc.'s Mem. in Opp'n to Defs.' Mot. in Limine & for Sanctions Re: Standard's Deficient Disc. Resps. Re: Damages ("Opp'n") 1, ECF No. 480.) The Court ordered the parties to meet and confer by April 28, 2017 on any discovery issues regarding disclosures, document requests, interrogatories, requests for admission, and deposition occurring before March 31, 2017. (ECF No. 324; Apr. 6, 2017 H'rg Tr. 128-130, ECF No. 461-6.) At the hearing, the Court clarified that if the parties did not intend to contest the completeness of the discovery but rather file a summary judgment based on insufficient evidence or seek a motion in limine for failure to disclose, they did not

---

[1] On February 9, 2017, the District Judge referred this case to Magistrate Judge Evelyn J. Furse under 28 U.S.C. § 636(b)(1)(A). (ECF Nos. 196 & 388.)

[2] The Court has read all of the submissions and finds oral argument unnecessary. DUCivR 7-1(f).

need to meet and confer on those issues. (Apr. 6, 2017 H'rg Tr. 128-130, ECF No. 461-6.) At a subsequent hearing, the Court explicitly stated that it did not include a deadline for filing the proposed motion in limine on damages because it "wanted to leave that open." (June 28, 2017 Hr'g Tr. 17, ECF No. 463.) The Greens sought subsequent extensions of their projected filing date, which the Court granted, but the Court never set a deadline to file a motion in limine on damages. The Greens subsequently filed this Motion in Limine, and the Court considers it timely filed.

## II. Damages Disclosure Requirements Under Rule 26

The Greens contend Standard failed to provide its computation of damages. Under Federal Rule of Civil Procedure ("Rule") 26(a)(1)(A)(iii), parties must, prior to a discovery request, provide other parties with

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii). In its Notes to the 1993 Amendments of Rule 26(a), the Advisory Committee explains that Rule 26(a)

> imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34. A party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such material had been made under Rule 34.

Fed. R. Civ. P. 26 Advisory Committee Notes, 1993 Amendments re: subdivision (a), paragraph (1). Additionally, "[a] major purpose of the [rule] is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the result should be applied in a manner to achieve

3

these objectives." Id., 1993 Amendments re: subdivision (a).  Parties must adhere to this Federal Rule of Civil Procedure for discovery to proceed smoothly.

Standard argues it provided what parties typically provide as damage calculations in Rule 26(a)(1) disclosures, has since produced additional damages information, and will supplement with information from its damages experts.  (Opp'n 8, ECF No. 480.)  Standard also reminds the Court it will produce expert discovery when ordered by the Court.  (Id. at xxi-xxii, xxix, 8.)  The Greens respond that the expert discovery cutoff has no relevance to Standard's discovery obligations because Rule 26(a) prevents a party from deferring damage discovery and calculations until it must provide expert discovery.  (Reply in Support of Mot. in Limine & for Sanctions Regarding Standard's Deficient Resps. re: Damages ("Reply") 18, ECF No. 488.)

Standard made its initial disclosures on April 2, 2015, and failed to state an estimated amount of damages or how it calculated its damages.  (Defs. Richard N. Reese & Standard Plumbing Supply Co., Inc.'s Initial Disclosures 5, ECF No. 461-1.) Standard supplemented its disclosures a day later but did not change its damages disclosure.  (Defs. Richard N. Reese & Standard Plumbing Supply Co., Inc.'s 1st Am. Initial Disclosures ("Initial Disclosures") 5, ECF No. 480-3.)  The initial disclosures read as follows:

> Standard Plumbing seeks damages from Plaintiffs for intentional interference with economic relations, defamation, deceptive trade practices, civil conspiracy, unjust enrichment, wrongful lien, abuse of process, breach of contract, and an award of attorneys' fees and costs. Information necessary to compute these amounts is not available at this stage of the litigation.  Therefore, Standard Plumbing cannot presently provide a computation of damages and reserves the right to do so as discovery in this matter continues.

(Id.) Standard also stated that it had provided or would provide all documents in support of its claims at the time of its initial disclosures. (Id.) From the record, Standard does not appear to produce any documents until over a year later on August 15, 2016 when it produced documents bearing document numbers "Standard 00001-0891." (Mot. 6, ECF No. 461.)

On December 30, 2016, Standard further disclosed "a preliminary but finite calculation" from March 20, 2015 of its lis pendens damages equaling $1,449,789.07. (Opp'n xxix, ECF No. 480; Expert Witness Report of Russell K. Booth ("Booth Report") 15, ECF No. 461-32.) On January 30, 2017, Standard disclosed it incurred attorney fees and costs of $496,658.06 through December 30, 2016 as part of a stand-alone motion for attorney fees. (Opp'n xxix, ECF No. 480; Burton Aff. Re: Atty. Fees, ECF Nos. 172-11 & 180.) Notably, Standard could have disclosed the lis pendens number with its initial disclosure without any difficulty and could have easily run its attorney fees expenditures to that date and disclosed them. At this point in the litigation, Standard has remaining claims for intentional interference with economic relations, abuse of process, and two declaratory relief claims. (Ans. to Countercls. 11-14, ECF No. 486.)

On its face Rule 26 requires Standard to provide the Greens both with a computation of each category of damages it claims and with the non-privileged documents on which it bases those calculations. Standard has never asserted a fixed number for damages. The Greens had a right to know from the outset approximately how much Standard thought the Greens had damaged it and how it arrived at that number. Such disclosure does not prevent a party from changing theories as the case proceeds. Thus Standard has no basis to withhold its estimation or calculation.

Standard's failure to provide the Greens with an estimation and calculation of its damages violates Rule 26(a)(1)(A)(iii)'s requirements.

On July 1, 2016, the Greens requested all documents relating to Standard's damages. (Pls.' 1st Request for Prod. of Docs. From Defs & Countercl. Pls. Standard Plumbing Supply Co., Inc. & Richard Reese Req. # 7, ECF No. 461-2.) On August 3, 2016, Standard responded that "documents generated or made in the regular course of business which are responsive to this Request, if any, and not otherwise privileged, have been or will be produced." (Standard Plumbing Supply Co., Inc., & Richard N. Reese's Resp. to Green's 1st Request for Prod. of Docs., ECF No. 461-3.) Standard produced approximately 900 documents to the Greens on August 15, 2016 and made further productions in October 2016, November 2016, and January 2017 of approximately 300 more documents. (Mot. 6, ECF No. 461.) Not until May 2017 did Standard produce its annual profit and loss statements for the five locations at issue and a consolidated profit and loss statement for the years 2013-2017. (Id. at 26-27.) At that same time, Standard also offered to make millions of pages of documents containing financial data available in support of its damages. (Id. at 28-29.) The attorney billing records up until April 2015 and the lis pendens expert report, at a minimum, existed at the time of initial disclosures, but Standard did not produce them until two years after the disclosures. This failure clearly violates Rule 26.

Standard also contends that discovery remains open, and the scheduling order does not require supplementation under Rule 26(e) until after the close of discovery. (Opp'n 3, ECF No. 480.) The Court notes that Standard has a duty to supplement its discovery responses and disclosures in a timely manner. Fed. R. Civ. P. 26(e). On

June 30, 2017, the Court made this point explicitly to the parties telling them to review their productions and that supplementation may not wait until the end of the case. (June 30, 2017 H'rg Tr. 81-82, ECF No. 467.) The last day for supplementation under Rule 26(e) does not excuse an initial failure to disclose or a failure to disclose in a timely manner after learning of new information required to make a disclosure or discovery response complete. Under these facts, the Court finds Standard failed to comply with Rule 26(a)(1) damages disclosure requirements.

### III. Standard's Failure was Neither Substantially Justified Nor Harmless

Rule 37 dictates that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Thus whether a district court excludes evidence not produced in compliance with Rule 26(a) turns on whether the violation is justified or harmless. See Jacobsen v. Deseret Book Co., 287 F.3d 936, 952 (10th Cir. 2002) (noting court's authority to admit expert testimony that violates Rule 26(a)).

"'The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court.'" Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) (quoting Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996)). "[T]he court should consider the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the

7

[proffering] party's bad faith or willfulness." Jacobsen, 287 F.3d at 953 (quoting Woodworker's, 170 F.3d at 993). Furthermore,

> where the exclusion of evidence under Rule 37(c)(1) has the necessary effect of a dismissal, . . . , district courts should, in conjunction with the traditional Woodworker's inquiry, carefully explore and consider the efficacy of less drastic alternatives, ordinarily reserving the extreme sanction of dismissal for cases involving bad faith or willfulness or instances where less severe sanctions would obviously prove futile.

HCG Platinum, LLC v. Preferred Prod. Placement Corp., 873 F.3d 1191, 1206 (10th Cir. 2017).

### A. Prejudice or Surprise to the Greens

Standard's failure to provide a computation of its damages impermissibly prejudiced the Greens because the Greens had to proceed through discovery without knowing the basis for the damages claims, making discovery in defense of such claims difficult.

The Greens argue Standard's lacking Rule 26(a) disclosures forced them to request damages information through Interrogatories and Requests for Production of Documents under Rules 33 and 34, to which Standard failed to respond fully. (Mot. 33-34, 55-59, ECF No. 461.) In its Opposition, Standard argues that the Greens failed to meet and confer on the Interrogatories and Requests for Production of Documents regarding damages or to seek a motion to compel, and thus the Court cannot award sanctions. (Opp'n 4-6, ECF No. 480.)

Rule 37(c)(1) does not require a meet and confer prior to seeking to exclude evidence at trial. As a policy matter, omitting the meet and confer requirement makes sense for the context in which a party usually invokes the rule—at trial or on the eve of trial when an opponent attempts to introduce evidence never previously disclosed. In

8

this case, the Court ordered the parties to meet and confer by April 28, 2017 on any discovery issues regarding disclosures, document requests, interrogatories, requests for admission, and deposition occurring before March 31, 2017. (ECF No. 324; Apr. 6, 2017 Hr'g Tr. 128-130, ECF No. 461-6.) With Rule 37(c)(1) in mind, the Court clarified that if the parties did not intend to contest the completeness of the discovery but rather file a summary judgment based on insufficient evidence or seek a motion in limine for failure to disclose, they did not need to meet and confer on those issues. (Apr. 6, 2017 H'rg Tr. 128-130, ECF No. 461-6.) As the Greens seek a motion in limine and not a motion to compel on the issues, the Court finds they had no obligation to meet and confer on these issues prior to bringing this Motion.

Standard further contends the Greens have not suffered any prejudice because discovery remains open, and it has produced relevant financial information. (Opp'n 3, ECF No. 480.) The attorney fees numbers previously provided are now a year out of date. While Standard stated in court that it only intends to claim these two types of damages, (Apr. 6, 2017 H'rg Tr. 5-6, ECF No. 461-6), it never amended its Rule 26(a)(1) disclosures to reflect that or otherwise made its statements binding. Notably, at the hearing Standard's counsel said as to damages categories, "Now there may be others, but these are the two general buckets." (Id.) Additionally Standard alleged numerous categories of damages in its 30(b)(6) deposition not covered by either attorney fees or the lis pendens report, e.g. reputational damages, damages to the business profits, and loss of time of employees and owners. (Standard 30(b)(6) Dep. 15-19, ECF No. 480-12). For these reasons, Standard has not produced all of the relevant damages estimates and calculations.

As to documents, on May 10, 2017, Standard finally offered to produce for inspection what appears to include all its financial records. (E-mail from Burton to Monson, May 10, 2017, 3, ECF No. 461-7.) In providing these documents for inspection, the Greens would have to pay for any copying and submit the documents chosen for copying to Standard for approval, among other requirements. (Id.) This wholesale turning over of financial information does not comply with Rule 26(a)(1)'s requirement to produce documents supporting the damage calculations. If Standard's experts intend to review any of the materials Standard offers for inspection, Standard should have produced those documents already. Shifting the burden to pay for the search and production to the Greens does not qualify as compliance with Rule 26(a)(1). Standard offers that it produced summaries of its financial information that contain all of the information the Greens need. (Id.) Of course, Rule 1006 of the Federal Rules of Evidence clearly requires the proponent of any summary to make available the original documents used in preparation of that summary. Standard's offer appears by its own account to include far more documents than just those used to produce the summaries. (Id.) Therefore, the offer fails to satisfy Rule 26(a)(1).

As further evidence of the prejudice the Greens have suffered, they point to the 30(b)(6) deposition and the depositions of management witnesses, which they took only to find the individuals had no knowledge about damages or Standard had instructed them not to answer the questions. (Mot. 54-55, ECF No. 461.) Standard contends the Greens took those depositions knowing the deponents had no relevant damages information. (Opp'n x-xiii, xxiv-xxvi, 8-9, ECF No. 480.) Standard's initial disclosures do not state that any of the deposed individuals had knowledge of its damages. (Suppl.

Initial Disclosures 2-5, ECF No. 480-3.) Furthermore, Standard tried to dissuade the Greens from taking a number of these depositions by explaining the witnesses had no relevant information after dismissal of the Greens' claims. (E-mail from Burton to Mumford & Monson, Jan. 12, 2017, 1, ECF No. 480-11; Opp'n xxv, ECF No. 480.) The Greens deposed these individuals nonetheless. Mathew Larsen appears to have knowledge about damages and Standard's financial positions given his decision to follow his attorney's advice to refuse to testify about the financial performance of the Sprinkler World stores at issue. (Larsen Dep. 34-35, 38-40, 47-48 ECF No. 461-36.) The same is true of Mathew Freeman, Standard's director of sales and distribution. (Freeman Dep. 13, 63-65, ECF No. 461-37.) As to Ms. Drake's and Standard's 30(b)(6) deposition, Standard has tacitly acknowledged the problems with those depositions through its offer to reopen both depositions. (E-mail from Burton to Monson, May 10, 2017, 3, ECF No. 461-7.) The Court does find Standard's actions in these depositions further harmed the Greens in their attempt to determine the damages information Standard should have disclosed in its initial disclosures.

### B. The Ability of Standard to Cure the Prejudice

Further disclosure of the damages categories and calculations, the documents supporting these, the reopening of the depositions, and an award of fees and costs may ameliorate the prejudice the Greens have suffered.

The Greens first and foremost seek dismissal of the two causes of action seeking damages against them and all discovery costs. Alternatively, they seek amended written discovery responses, productions of damages documents not previously produced, a computation of each category of damages, and identification of the

11

documents supporting each category, and redeposition of Standard and their management team, along with costs and fees previously expended. (Mot. 58-59, ECF No. 461.)

Standard argues that it offered, more or less, exactly this compromise on May 10, 2017. (Opp'n xxi, ECF No. 480.) With respect to the 30(b)(6) deposition, Standard offered to allow the redeposition of Mr. Reese both as an individual and corporate representative for eight hours, two of which Standard would pay for. (E-mail from Burton to Monson, May 10, 2017, 3, ECF No. 461-7.) As to Ms. Drake's deposition, Standard offered to allow her redeposition for two hours at Standard's expense. (Id.)

If the Greens could take these redepositions, and those of Mr. Larsen and Mr. Freeman at Standard's expense, following an appropriate 26(a)(1) disclosure, then that would cure much of the prejudice from the failure to disclose.

### C. The Extent of Disruption to the Trial

The Court has not set a trial date in this matter. Because sufficient time still exists prior to trial for Standard to provide the Greens with this information, testimony on its damages should not disrupt trial once litigation reaches that stage.

### D. Standard's Bad Faith or Willfulness

Finally, each party accuses the other of bad faith withholding of information in discovery. Standard raises the Greens' noncompliance with discovery as an apparent excuse for its own noncompliance. (Opp'n xxx-xxxi, ECF No. 480.) Noncompliance with discovery by one party does not excuse the other party from its discovery obligations. [Jacobsen, 287 F.3d at 954](#) (noting that one party's noncompliance with Rule 26 should not excuse the other party's noncompliance). The Greens' failure to

comply with their discovery obligations does not impair Standard's ability to calculate and disclose its own damages.

As to Standard's bad faith or willfulness, Standard's actions cause this Court concern. In particular, the Court has repeatedly sanctioned parties for refusing to produce a damage disclosure prior to its expert report. The continued attempt to delay damages discovery until late in the case runs expressly counter to Rule 1 and Rule 26. This Court will continue to sanction parties who take this position. Further, the Rules expressly prohibit instructions not to answer in a deposition except in three circumstances, none of them present here. Counsel for Standard has no excuse for giving instructions not to answer based on the confidentiality of financial information. (See Mot. 13, ECF No. 461; 30(b)(6) Dep. 77:3-80:23, ECF No. 461-35.) Without question, the confidentiality of financial information does not supply a basis upon which an attorney can instruct a witness not to answer or a witness can refuse to answer. The Court finds Standard attempted to block discovery of its financial information without a basis to do so under the law. The Court understands Standard's reluctance to provide financial information to a competitor, but avenues exist to ameliorate that problem. Rather than attempting to address the issue directly, Standard engaged in willful conduct.

The Court's order allowing some narrowing of the inquiry into Standard's finances by no means reflects any legitimacy in the wholesale refusal to produce information or testify about finances. On March 24, 2017, Standard sought an order limiting the Greens "from inquiring as to Standard's financial information unrelated to the Sprinkler World transaction and acquisition." (Proposed Order, ECF No. 274-1.) This

13

Court rejected such a narrowing of discovery.  Nevertheless, Standard did finally bring the motion for a protective order, (ECF No. 274), and did begin to try to address its deficiencies prior to the Greens bringing this motion.  (E-mail from Burton to Monson, May 10, 2017, 3, ECF No. 461-7.)

## IV.     Conclusion

Under the Woodworker's factors, the Court finds Standard's violation harmful and not justified but will allow Standard to cure its Rule 26(a) disclosure deficiencies now with additional disclosure.  The Court ORDERS Standard to provide a damages estimate and calculation for each category of damages it intends to claim at trial within fourteen (14) days of this Order.  The Court ORDERS Standard to identify with specificity each document on which its bases its damages calculation and provide a copy of those documents to the Greens within fourteen (14) days of this Order at its own expense.  Further, after Standard completes this production within fourteen (14) days of this Order, the Court, pursuant to Rules 26 and 37, bars Standard from using documents to prove its damages that it had in its possession, custody, or control prior to making this supplemental production, but failed to produce to the Greens in compliance with this Order.  The Court also ORDERS the redeposition of Standard's 30(b)(6) witness, Mr. Larsen, Mr. Freeman, and Ms. Drake on the issue of damages.  Standard will bear the costs of the redepositions and pay the attorney fees for the depositions. The Court further ORDERS Standard to pay the Greens $5,000 to compensate for the delay in the receipt of this information and the need to bring a Motion to obtain it.  The Court does not award more money because the Greens could have addressed these issues earlier and in a less expensive manner through a short form discovery motion(s).

SO ORDERED this 29th day of January 2018.

        BY THE COURT:

        _____
        Evelyn J. Furse
        United States Magistrate Judge