JAMES T. BURTON (11875)
*jburton@kmclaw.com*
JOSHUA S. RUPP (12647)
*jrupp@kmclaw.com*
**KIRTON │ McCONKIE**
Key Bank Tower
36 South State Street, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

*Counsel for Standard Plumbing*
*Supply Company, Inc.*

---

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARTH O. GREEN ENTERS., INC., *et al.*, <br><br> Counterclaim Defendants, <br><br> v. <br><br> RANDALL HARWARD, *et al.*, <br><br> Counterclaim Plaintiffs. | Case No. 2:15-cv-00556-RJS-EJF <br><br> **STANDARD PLUMBING SUPPLY COMPANY, INC.'S REPLY IN SUPPORT OF MOTION FOR REASONABLE EXPENSES INCURRED IN MAKING OR DEFENDING DISCOVERY MOTIONS** <br><br> Honorable Judge Robert J. Shelby <br> Honorable Magistrate Judge Evelyn J. Furse |

4822-3181-8587

Pursuant to, *inter alia*, DUCivR 7-1, Standard[1] respectfully files this reply in further support of its Motion[2] for reasonable expenses incurred in connection with discovery motions.

## ARGUMENT

As the outset, in view of developments since the filing of Standard's Motion, Standard withdraws its request for fees associated with docket entries 403 and 516. Specifically, Judge Shelby has set the privilege waiver dispute at issue in the 516 motion for further briefing.[3] To this end, Standard withdraws its request for fees related to the 516 motion without prejudice to renewing that request, if appropriate, following Judge Shelby's resolution of the Greens' pending objection.[4] Likewise, Standard withdraws its request for fees associated with docket entry 403 in view of the Court's related 616 Order.[5] In addition, while Standard maintains entitlement to fees associated with docket entries 293, 318, and 350, Standard hereby withdraws its request for such fees as the same are relatively minimal and to streamline resolution of the Motion. Consequently, subsequent use of the term "Discovery Motions" excludes docket entries 293, 318, 350, 403 and 516 relative to how that term was originally defined in Standard's opening memorandum.

## I.   THE DISCOVERY MOTIONS SUBSTANTIVELY FALL SQUARELY WITHIN THE AMBIT OF RULE 37 AND/OR THE COURT'S INHERENT AUTHORITY

While conceding that the 400 and 401 Discovery Motions arose under Federal Rule of Civil Procedure (the "Rule(s)") 37(a)(3), the Greens contend that all of the remaining Discovery Motions are beyond the scope of Rule 37(a)(3).[6] Such an approach quintessentially exalts form over substance and should be rejected irrespective of the inapt and non-binding authority upon which the Greens rely. For example, Standard's 220 Discovery Motion, brought "under the

---

[1] Unless otherwise stated, capitalized terms herein are defined as in Standard's opening memorandum.
[2] Docket no. 559.
[3] Docket no. 607.
[4] Docket no. 534 (objecting to Order at docket no. 526).
[5] Docket no. 616 (Order granting in part and denying in part docket no. 461).
[6] Docket no. 604 at 3-4.

1

Court's discovery dispute procedure" and entitled "discovery motion,"[7] unequivocally resulted in an Order "**allow[ing] further discovery** of Michael Green, GO Green and the Dunn Lawyers concerning … communications [about the Dunn Lawyers' bases for withdrawal from representation] **via deposition testimony and document requests**."[8] It is difficult to conceive of a motion falling more squarely under Rule 37(a)(3) re: "disclosure" or "a discovery response."[9] And this is to say nothing of a Rule 37(a)(3) motion "related to a deposition."[10]

By way of another example, Standard's 274 Discovery Motion, brought under the Court's discovery dispute procedure and related to, *inter alia*, the deposition of Teri Drake,[11] unequivocally resulted in an Order "preclude[ing the Greens] from inquiring as to Standard's financial information unrelated to the Sprinkler World subgroup."[12] That Standard was defending itself against a disproportionate and irrelevant fishing expedition is merely the converse of a Rule 37(a)(3) motion to compel disclosure or a discovery response, i.e., the Greens were demanding disproportionate and irrelevant financial disclosures and discovery responses forcing Standard to affirmatively seek (and obtain) protection.[13] Regardless, discovery disputes resulting in a "protective order" are expressly contemplated under Rule 37(a)(5)'s fee shifting mandate.[14] It is also notable that the Greens refused to participate in a meet and confer "either in person or by telephone"[15] in connection with the 274 Discovery Motion.[16]

As another example, the Greens' motion to quash Standard's subpoena to Adam Dunn in contravention of the Court's 313 Order[17] – which admittedly was <u>not</u> preceded by any effort to

---

[7] Docket no. 220 at 1-2.
[8] Docket no. 313 (both emphases added).
[9] Fed. R. Civ. P. 37(a)(3)(A)-(B) (capitalization omitted).
[10] Fed. R. Civ. P. 37(a)(3)(C) (capitalization omitted).
[11] Docket no. 274.
[12] Docket no. 312.
[13] Fed. R. Civ. P. 37(a)(3)(A)-(B) (capitalization omitted).
[14] Fed. R. Civ. P. 37(a)(5).
[15] DUCivR 37-1(a)(1)(B).
[16] Docket no. 274 at 5.
[17] The 220 Discovery Motion was orally granted on March 13, 2017 even though the Court's 313 Order was not entered until April 6, 2017. *See* docket no. 240.

4822-3181-8587

meet and confer in contravention of DUCivR 37-1[18] – was unequivocally denied.[19] As the motion to quash was denied, resulting in Standard obtaining documents from and deposing Adam Dunn (as previously ordered), the 306 opposition also substantively falls within the ambit of a Rule 37(a)(3) motion to compel disclosure of documents and deposition testimony.[20] Standard's posture as an opponent to the motion does nothing to change this truism.

Similar analyses readily apply to at least the 348, 353, 383, 424, 427 and 465 Discovery Motions. Moreover, DUCivR 37-1—which is far more specific than Rule 37 as it pertains to addressing discovery disputes before the Court[21]—applies to all discovery disputes under Rules "26-37 and 45."[22] As the Court "must guard against interpretations which might defeat the statute's purpose as reflected by its text,"[23] the protections of Rule 37(a)(5) should extend to discovery disputes for which the parties are obligated to meet and confer but which the parties are unable to resolve. Indeed, Rule 37 clearly applies to disputes arising under a litany of Rules which govern discovery (*e.g.,* Rules 26, 30, 33, 34, 36, etc.). Artificially limiting relief under Rule 37(a)(5) solely to motions entitled "motion to compel," for example, would penalize Standard for opposing the Greens' improvident motion to quash discovery to which Standard was entitled by virtue of a prior Court Order. This is grossly inconsistent with the purpose of Rule 37(a)(5). Worse, such an approach will incentivize the deliberate mislabeling of all discovery disputes as "motions to compel" while eviscerating Rule 37 and DUCivR 37-1's meet and confer obligation—if fee shifting is not a risk then the obligation to meet and confer in good

---

[18] Docket no. 306 at 2; *see also* docket no. 295 (violating the formatting requirements of DUCivR 37-1(a)(9) and neglecting to certify a prerequisite meet and confer, which the Greens' counsel later admitted in open Court never occurred).

[19] Docket no. 315.

[20] FED. R. CIV. P. 37(a)(3)(A)-(B) (capitalization omitted).

[21] *E.g., Gooch v. United States*, 297 U.S. 124, 128 (1936) (specific terms ordinarily control over general terms).

[22] DUCivR 37-1(a)(1); *see also* DUCivRs 1-2 & 81-1.

[23] *United States v. Cowan*, 116 F.3d 1360, 1363 (10th Cir. 1997); *see United States v. Alpers*, 338 U.S. 680, 681-82 (1950) ("The language of the statute may not be distorted under the guise of construction, or so limited by construction as to defeat the manifest intent….").

3

faith becomes a toothless platitude.[24]

Aside from Rule 37, at least the 353 and 383 Discovery Motions warrant relief under the Court's inherent authority. While it is true that "the court ordinarily should rely on the Rules rather than [its] inherent power," the "court may safely rely on its inherent power … if in [its] informed discretion … the Rules are [not] up to the task."[25] Accordingly, to the extent the Court finds that the 353 and 383 Discovery Motions fall outside the scope of Rule 37—as the Greens explicitly argue[26]—nothing prevents the Court from awarding Standard fees in connection with the 353 and 383 Discovery Motions under its inherent authority.[27] Indeed, while bad faith is not required for fee-shifting under Rule 37,[28] the Greens' bad-faith conduct in artificially opposing an open-ended extension of the discovery period for tactical reasons rather than on the basis of meritorious arguments[29] warrants the imposition of attorneys' fees.[30]

Where "the administration of justice will be gravely jeopardized unless the discovery and disclosure systems are largely self-executing[,] … [the] imposi[tion of] expense shifting sanctions [is necessary] to deter abusive or otherwise unjustifiable resort to the judiciary in the discovery process."[31] Whether under Rule 37 or the Court's inherent authority, Standard is

---

[24] 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.23[1] (3d ed. 2013) (emphasis in original) ("The presumption in favor of imposing expense shifting sanctions against a party who unsuccessfully litigates a motion to compel reflects the importance of using monetary sanctions to deter abusive or otherwise unjustifiable resort to the judiciary in the discovery process. Courts have long understood that the administration of justice will be gravely jeopardized unless the discovery and disclosure systems are largely self-executing."); *see also Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227-28 (10th Cir. 2015) (bad faith is <u>not</u> required for Rule 37(a)(5) sanctions).
[25] *Chambers v. Nasco, Inc.*, 501 U.S. 32, 50 (1991).
[26] Docket no. 604 at 3-4.
[27] *Chambers*, 501 U.S. at 50; *see also Sun River Energy*, 800 F.3d at 1225-28. Contrary to the Greens' assertion, the Court's inherent authority operates independently from Rule 37. Regardless, the Court's inherent authority is not cabined by Rule 37, as set forth in the 616 Order imposing sanctions for discovery issues which were not preceded by a Rule 37 motion to compel or even a good faith meet and confer by the Greens. *See* docket no. 616, *passim*; *see also* docket no. 480 (incorporated herein by this reference in its entirety).
[28] *Sun River Energy*, 800 F.3d at 1227-28.
[29] *See* docket no. 383 (incorporated herein by this reference in its entirety); *see also* docket nos. 353 & 389.
[30] *E.g., Chambers*, 501 U.S. at 50 ("There is … noting in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law. Resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct.").
[31] 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.23[1] (3d ed. 2013).

4822-3181-8587

entitled to reimbursement of its fees for the Discovery Motions necessitated by the Greens; the Motion should be granted.

## II.   STANDARD'S INSTANT MOTION WAS NOT UNREASONABLY DELAYED

The touchstone for evaluating "delay" in bringing a motion for fees is reasonableness.[32] Here, Standard's Motion was not unreasonably delayed. To begin with, neither Rule 37 nor any Court Order imposes a deadline for the Motion. Regardless, piecemeal litigation is discouraged.[33] Given the large number of discovery disputes that have arisen over the past several months—some of which are still not yet resolved[34]—filing an independent motion for fees immediately on the heels of each and every predicate Discovery Motion would be inefficient and unnecessarily burden the Court (and the Greens) with multiple, likely duplicative, motions. Such an approach would be particularly unnecessary where fact discovery presently remains open, expert discovery has yet to begin, and trial has yet to be scheduled.[35]

Finally, any "delay" is largely attributable to the Greens themselves. For example, while the 220 Discovery Motion was filed on March 1, 2017[36] and orally granted on March 13, 2017,[37] the Greens refused to cooperate concerning preparation of the order[38] such that an Order was only entered following an April 6, 2017 hearing.[39] And even then, the Greens objected to the 313 Order, moved to quash the Adam Dunn subpoena during the interim, and objected to the 315 Order denying that motion as well.[40] Those objections were not resolved until more than three

---

[32] *Lancaster v. Independent School Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998) (even after final judgment had been entered, finding a four month delay in bringing a motion for fees after the judge indicated he would entertain such a motion not unreasonable_.

[33] *E.g., Mattson v. Montelongo*, No. 2:14-cv-157-DN, 2015 WL 1886858, at *2 (D. Utah Apr. 24, 2015) (unpublished) (referring to "the desirability of avoiding piecemeal litigation" citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)).

[34] *See, e.g.,* docket no. 534.

[35] Docket no. 605.

[36] Docket no. 220.

[37] Docket no. 240.

[38] *See id.* ("plaintiff's counsel to prepare an order and share with defense counsel….").

[39] Docket no. 313; *see also* docket no. 324.

[40] Docket nos. 316-317 (staying 313 and 315 Orders pending objection); 337 (Greens' objection).

(3) months later.[41] Even still, the Greens then moved for reconsideration of Judge Shelby's 458 Order and moved to stay the same.[42] And those motions were not resolved until August 8, 2017.[43] Standard is not responsible for any of these delays; rather, the Greens alone delayed final resolution of the 220 Discovery Motion as well as related downstream Discovery Motions.

As to "prejudice" now alleged,[44] the Greens' penchant for objecting to and serially seeking reconsideration of multiple orders resulting in the delays described above razes any claim of prejudice. Moreover, Standard is certainly not responsible for—and indeed could not have foreseen nor impacted—the Greens' decision to terminate Elaine Monson, Steve Call, and Marcus Mumford mid-case. Regardless, the Greens' decision to do so is immaterial. The Greens are bound by the conduct of their existing and prior attorneys.[45] And, to the extent the Greens now blame their former counsel for bad advice, the Court's authority to sanction the Greens' former counsel, if appropriate, exceeds the "confines of court."[46] Indeed, under the rubric of Rule 37(a)(5), "the party *or attorney advising that conduct*, or both"[47] can be sanctioned. This remains true even if the "attorney[s] advising" the conduct at issue are no longer counsel of record.[48] While the Greens' former counsel may not be obligated to "defend the Greens here,"[49] they are nevertheless officers of this Court and are still subject to this Court's control.

Regardless, as any delays are neither unreasonable nor within Standard's control, the Greens' untimeliness argument should be rejected and the Motion should be granted.

---

[41] Docket no. 458.
[42] Docket nos. 470 & 471.
[43] Docket no. 474.
[44] Docket no. 604 at 5-6.
[45] *E.g., Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *Gripe v. City of Enid, Okl.*, 312 F.3d 1184, 1189–90 (10th Cir. 2002) ("Those who act through agents are customarily bound by their agents' mistakes. It is no different when the agent is an attorney.").
[46] *Chambers*, 501 U.S. at 44.
[47] FED. R. CIV. P. 37(a)(5)(A) (emphasis added).
[48] *E.g., Chambers*, 501 U.S. at 44.
[49] Docket no. 604 at 6.

## III.   STANDARD PREVAILED ON EACH OF THE REMAINING DISCOVERY MOTIONS, EITHER IN FULL OR IN PART

The Greens contend—without explanation—that Standard did not prevail on "several" of the Discovery Motions.[50] This is belied by even a cursory review of the resulting Orders. For example, the 220 Discovery Motion resulted in the finding of a privilege waiver and affording Standard discovery of Michael Green, Garth O. Green Enterprises, Inc., and the Dunn Law Firm.[51] The 274 Discovery Motion resulted in a protective order limiting financial discovery to the Sprinkler World subgroup.[52] The Greens' objections to the 313, 315 and 449 orders were overruled in Standard's favor and the Greens' subsequent motion for reconsideration was denied.[53] Indeed, not only did Standard prevail on the 424 Discovery Motion, the Greens' objection was overruled.[54] And the 427 Discovery Motion resulted in an Order precluding any submission of, reference to, or reliance on the Greens' surreptitious recording of a confidential settlement conference absent subsequent Court approval, which recording the Greens had previously utilized multiple times.[55] And even if these victories are determined to be only "partial," Rule 37(a)(5)(C) explicitly accounts for such circumstances.[56] There is no requirement to win each Discovery Motion "in full" in order to be awarded expenses.[57]

## IV.   STANDARD UNEQUIVOCALLY MET AND CONFERRED WITH RESPECT TO EACH OF THE REMAINING DISCOVERY MOTIONS

With respect to the remaining Discovery Motions, the Greens only challenge the meet and confer with respect to docket entries 348, 424, and 465.[58] 348 and 465 concern *the Greens' objections* to the Court's 313, 315 and 449 Orders as well as *the Greens' motion* for

---

[50] Docket no. 604 at 6.
[51] Docket no. 313.
[52] Docket no. 312 (which the 274 Discovery Motion was only granted in part, this was because the deposition of Teri Drake had already occurred during the interim).
[53] Docket nos. 458, 474 & 475.
[54] Docket no. 475.
[55] Docket no. 442.
[56] FED. R. CIV. P. 37(a)(5)(C).
[57] *Id.*
[58] Docket no. 604 at 7.

reconsideration of the 458 Order.[59] As such, the meet and confer at issue pertains to the predicate discovery motions, namely the 220, 306, and 424 Discovery Motions. With respect to 306, this was responsive to *the Greens' motion* to quash the Adam Dunn subpoena.[60] And while the Greens did, in fact, fail to comply with Rule 37-1 in its entirety, including the obligation to meet and confer,[61] Standard cannot be charged with that failure. Moreover, the Greens never disputed Standard's meet and confer certification with respect to the 220 Discovery Motion.[62] On the contrary, the Greens' opposition itself refers to "the meet and confer with Standard's counsel on February 28, 2016…."[63] Finally, the 424 Discovery Motion specifically references meet and confer conferences that occurred on at least April 28th and May 5th, 2017.[64] The Greens' opposition says nothing to the contrary.[65] Simply stated, to the extent the Greens have even challenged Standard's meet and confer efforts, Standard routinely complied with its obligations while the Greens did not.[66] This only further warrants an award of Standard's fees.[67] Indeed, the Court has previously warned "that a failure to properly meet and confer may result in sanctions" and has awarded that very relief in other contexts.[68] The same result should inhere here.

## V.   THE GREENS' POSITIONS AND CONDUCT WERE NOT SUBSTANTIALLY JUSTIFIED BY VIRTUE OF NOVEL FACTS OR NEW LEGAL QUESTIONS

The Greens suggest that their positions / conduct in relation to the Discovery Motions was substantially justified.[69] But not every argument—even if made in good faith—constitutes

---

[59] Docket nos. 337, 455, 470 & 471.
[60] Docket no. 295.
[61] Docket no. 306.
[62] Docket no. 220 at 2.
[63] Docket no. 233 at ¶ 10.
[64] Docket no. 424 at 5.
[65] Docket no. 433
[66] *See* docket nos. 220, 274, 295, 306, 400, 401, 424, 433 & 427.
[67] *E.g.,* docket nos. 606 & 619.
[68] *See id.*
[69] Docket no. 604 at 7-11.

4822-3181-8587

substantial justification.[70] Where it otherwise the exception would swallow the rule. Here, the Greens have not met their burden to prove the exception to Rule 37's mandate.[71] First, in opposing the 220 Discovery Motion, the Greens argued that "the communications at issue are not privileged."[72] After nevertheless refusing to turn over the relevant discovery, the Court held that "the Dunn Lawyers' bases for withdrawal … do[] not appear to [be] … subject to the attorney-client privilege."[73] The Greens cannot assert substantial justification when their own argument was adopted by the Court in granting the 220 Discovery Motion. And regardless, the Court held that "Michael Green's February 14, 2017 deposition testimony waived any such privilege…."[74] A voluntary waiver of the attorney-client privilege is not a novel or new legal question.[75] Not only were the Greens' positions in opposition to the 220 Discovery Motion unjustified from the outset, the Greens' subsequent (1) motion to quash the Dunn Subpoena, (2) objection to the 313 / 315 Orders, and (3) motion for reconsideration of Judge Shelby's order overruling the objection were even less justified. Standard deserves to be compensated for having to litigate and re-litigate the 220 Discovery Motion.

Likewise, the Greens' opposition memoranda to the 400 and 401 Discovery Motions are not justified at all, let alone substantially so. In connection with the 400 Discovery Motion, the Greens argued that an explicitly defined term set forth in Standard's discovery requests excluded entities or persons enumerated in that very definition.[76] Not only was this facially belied, the Greens themselves had previously responded to discovery using the same defined term.[77] And the Greens refused to provide the discovery at issue in the 401 Discovery Motion irrespective of

---

[70] *E.g., Sun River Energy*, 800 F.3d at 1227-28; *see also Cont'l Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 531-32 (E.D. Cal. 2010) (requiring "novel facts and new legal questions" to support substantial justification).
[71] *E.g.,* 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.23[1] (3d ed. 2013).
[72] Docket no. 235 at 2.
[73] Docket no. 313 at 3.
[74] *Id.*
[75] *See, e.g.,* docket no. 235 (the Greens' opposition citing extensive waiver law).
[76] *See* docket nos. 400 (incorporated herein by this reference) & 439.
[77] *See id.*

specific authority from this very Court (among other incontrovertible authorities) showing that Standard was entitled to the same.[78] This is not substantial justification, particularly where the Greens failed to cite any countervailing authority.

Similarly, the 274, 424 and 465 Discovery Motions concerned (1) non-Sprinkler World financial information that is wholly irrelevant and disproportionate to the needs of this case and (2) the fundamental protections afforded to confidential and sensitive business information under the Standard Protective Order.[79] Neither of these presents novel facts or new questions of law necessary to demonstrate substantial justification.

With respect to the 427 Discovery Motion, it concerned a surreptitious recording of a confidential Court-mandated settlement conference.[80] There is no credible basis for even making such a recording (which is antithetical to open and frank discussions and in direct contravention of DUCivR 16-3) let alone the Greens' repeated use of the recording in Court filings and refusal to voluntary abandon such use. This cannot possibly be substantial justification.

And finally, as discussed at length above, the Greens' tactical and non-meritorious positions on the 353 and 383 Discovery Motions—premised on nothing more than unilateral attempts to artificially limit open and ongoing discovery—did not involve any novel facts, new legal questions, or any other grounds comprising substantial justification.[81] While the Greens level conclusory allegations of a lack of diligence at Standard,[82] these "allegations" are both insufficient to meet the Greens' burden of proof and belied by the significant record in this case, as evidence by the Court's Order granting Standard's 353 Discovery Motion over the Greens' objection and summarily denying the Greens' counter-motion without further comment.[83]

For all of the foregoing reasons, Standard's Motion should be granted.

---

[78] *See* docket nos. 401 (incorporated herein by this reference) & 438.
[79] *See* docket nos. 274, 312, 424, 449, 465 & 475 (each of which is incorporated herein by this reference).
[80] *See* docket no. 427 (incorporated herein by this reference).
[81] *See* docket nos. 353 & 383 (each of which is incorporated herein by this reference).
[82] Docket no. 604 at 9-10.
[83] Docket no. 389.

DATED this 1st day of February, 2018.

Respectfully submitted,
**KIRTON | McCONKIE**

By: */s/ James T. Burton*
    James T. Burton
    Joshua S. Rupp
*Counsel for Standard Plumbing Supply
Company, Inc.*

4822-3181-8587

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of February, 2018, I caused a copy of the foregoing to be filed using the Court's CM/ECF electronic filing system, which provides service to all counsel of record.

/s/ James T. Burton

4822-3181-8587, v. 2

4822-3181-8587